## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x
In re:                             : Chapter 11
                                :
PENNSYLVANIA REAL ESTATE INVESTMENT : Case No. 20-_____ (___)
Trust, *et al.*,[1]                    :
                                : (Joint Administration Requested)
         Debtors.                 :
------------------------------------------------------------- x

### MOTION OF THE DEBTORS FOR APPROVAL OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Pennsylvania Real Estate Investment Trust ("PREIT") and certain of its affiliates as debtors and debtors in possession (collectively, the "Debtors"), by and through their proposed counsel, DLA Piper LLP (US), hereby submit this motion (the "Motion") for entry of an interim order (the "Interim Order"), substantially in the form attached hereto as **Exhibit A**, and a final order (the "Final Order," and collectively with the Interim Order, the "Orders"), (i) authorizing the Debtors to use cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"); (ii) providing adequate protection to the Debtors' prepetition secured lenders to the extent set forth herein; (iii) modifying the automatic stay imposed by section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent necessary to implement and effectuate the terms and provisions of the Orders; and (iv) scheduling a final hearing (the "Final Hearing") to consider the entry of an order granting the relief requested in the Motion on a final basis.  In support of this Motion, the Debtors rely upon the *Declaration of Mario C. Ventresca, Jr. in Support of First Day*

---

[1]      A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as **Schedule 1**.  The corporate headquarters and the mailing address for the Debtors is 2005 Market Street, Suite 1000, Philadelphia, PA 19103.

*Pleadings* (the "First Day Declaration"), filed today with this Motion, and respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Chapter 11 Cases, the Debtors, property of the Debtors' estates and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  In accordance with Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue of these cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Motion are sections 105, 361, 362, 363 and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1(b), 4001-2 and 9013-1(m).

## BACKGROUND

4.      On the date hereof (the "Petition Date"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing its case (collectively, the "Chapter 11 Cases").

5.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the

date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed

in the Debtors' Chapter 11 Cases.  No date has been set for a meeting pursuant to section 341 of

the Bankruptcy Code.

6.      Additional factual background regarding the Debtors, including their business

operations, capital and debt structures, and the events leading to the filing of these Chapter 11

Cases, is set forth in detail in the First Day Declaration, which is fully incorporated in this Motion

by reference.

## SUMMARY OF RELIEF REQUESTED

7.      By this Motion, the Debtors respectfully request entry of the Orders: (i) authorizing

the Debtors to use Cash Collateral on the terms set forth in the Orders; (ii) providing adequate

protection to the Debtors' prepetition secured lenders; modifying the Automatic Stay to the extent

necessary to implement and effectuate the terms and provisions of the Orders; and (iv) scheduling

a Final Hearing.

## SUMMARY OF PRINCIPAL TERMS

8.      In accordance with Bankruptcy Rule 4001(b)(1)(B) and Local Rule 4001-2(a)(ii),

the material provisions of the proposed Interim Order are as follows:

| Required Disclosure | Summary of Material Terms[2] | Location in Interim Order |
|---|---|---|
| **Parties with an Interest in Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(i)* | Wells Fargo Bank, National Association, as administrative agent and the financial institutions party to the Credit Agreement. | ¶ D (1) |
| **Purposes for the Use of Cash Collateral** | To provide access to funds necessary for the Debtors to pay the administrative expenses incurred to administer the Debtors' chapter 11 | ¶ E |

---

[2]      Capitalized terms used in this section not otherwise defined herein shall have the meanings ascribed to them in the Interim Order.

| | | |
|---|---|---|
| *Bankruptcy Rule 4001(b)(1)(B)(ii)*<br><br>*Local Bankruptcy Rule 4001-2(a)(ii)* | cases and working capital necessary to continue ordinary course operations, subject to the Budget. | |
| **Material Terms of the Use of Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii)*<br><br>*Local Bankruptcy Rule 4001-2(a)(ii)* | Subject to the terms and conditions of the Interim Order and Final Order, at the times and for the purposes set forth in the Budget, the Debtors seek authority to use Cash Collateral until the earlier of (a) the date that is 28 calendar days after the Petition Date, if the Final Order has not been entered by the Court on or before such date (as such period may be extended with the consent of the Bridge Agent); (b) the effective date of a confirmed chapter 11 plan of any of the Debtors; (c) the date of the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors; and (d) the delivery of a Default Notice or a Termination Notice following a Termination Event, unless such Termination Event is cured or waived by the Bridge Agent within five (5) business days (or such later date as may be agreed to in writing by the Bridge Agent). | ¶ 12 |
| **Adequate Protection**<br><br>*Bankruptcy Rules 4001(b)(1)(B)(iv)*<br><br>*Local Bankruptcy Rule 4001-2(a)(ii)* | Subject to the terms and conditions of the Interim Order and Final Order, the proposed Interim Order grants to the Bridge Facility Secured Parties and/or the Bridge Agent, as applicable, as adequate protection for the use of their Cash Collateral:<br><br>(a) subject and subordinate only to the Carve-Out, allowed superpriority administrative expense claims against the Debtors and their estates to the extent of any Collateral Diminution (as defined in the Interim Order)[3];<br><br>(b) subject and subordinate only to the Carve-Out and Prior Permitted Liens, to the extent of any Collateral Diminution, valid, binding, continuing, enforceable, fully-perfected, non-avoidable (i) first-priority additional replacement liens on, and security interests in, Previously Unencumbered Property; (ii) first-priority additional and replacement liens on, and security interests in, the Bridge Facility Collateral; and (iii) second-priority additional and replacement liens on, and security interests in, any property of the Debtors subject to Permitted Prior Liens;<br><br>(c) the Debtors' compliance with the milestones set forth on the schedule attached as Exhibit 2 to the Interim Order;<br><br>(d) authority and direction for the Debtors to pay, in cash, on the terms set forth in the Interim Order and the Final Order, all reasonable and documented fees, expenses, disbursements, and other charges incurred by, and payable to, professionals retained by the Bridge Facility Secured Parties, provided that an objection is not asserted by the Debtors or the U.S. Trustee within ten (10) calendar days; | ¶¶ 6-9 |

---

[3]     As set forth in the Interim Order, each dollar of cash withdrawn from the Cash Collateral Account shall be deemed to constitute Collateral Diminution for all purposes of the Interim Order, which, for the avoidance of doubt, shall entitle the Bridge Facility Secured Parties to the benefits of the Adequate Protection Superpriority Claims and Adequate Protection Liens.

| | | |
|---|---|---|
| | (e) the Debtors provision of all financial and other information required under the Bridge Credit Documents, as applicable, along with any other reports provided by the Debtors to the U.S. Trustee in these cases;<br><br>(f) upon reasonable notice and at reasonable times during normal business hours, (i) access and the right to inspect the Debtors' properties; (ii) authorization to examine the Debtors' books and records; and (iii) the right to discuss (no less than twice per calendar month) the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors; and<br><br>(g) upon entry of the Final Order providing for such relief, without prejudice to the holders of any Permitted Prior Liens, and subject to the challenge rights of parties in interest in paragraph 20 of the Interim Order, in any sale of all or any portion of the Prepetition Collateral and/or Adequate Protection Collateral, the right to credit bid in the Bridge Facility Collateral on a dollar-for-dollar basis (A) up to the full amount of the outstanding Bridge Facility Secured Obligations and (B) the Adequate Protection Superpriority Claim. | |
| **Professional Expense Carve-Out**<br><br>*Local Bankruptcy Rule 4001-2(a)(ii)* | The proposed Interim Order provides for a Carve-Out, defined as: the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code (in such amounts as determined in agreement with the United States Trustee or by final order of the Court) plus interest at the statutory rate (without regard to the Carve-Out Trigger Notice (as defined below)); (ii) all reasonable fees and expenses up to $25,000 incurred under section 726(b) of the Bankruptcy Code by a trustee appointed in any chapter 7 cases of the Debtors (without regard to the Carve-Out Trigger Notice); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid monthly or hourly fees and expenses on account of services performed in connection with the Chapter 11 Cases by Estate Professionals, incurred at any time before or on the first business day following delivery by the Bridge Agent of a Carve-Out Trigger Notice as described below whether allowed by the Court prior to or after the delivery of a Carve-Out Trigger Notice; and (iv) to the extent allowed by interim order, procedural order, or otherwise, all unpaid monthly or hourly fees and expenses on account of services performed by the Estate Professionals in connection with the Chapter 11 Cases at any time after the first business day following delivery by the Bridge Agent of a Carve-Out Trigger Notice incurred by Estate Professionals in an aggregate amount not to exceed $1,000,000; provided, that, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described in clauses (iii) and (iv) above on any grounds. | ¶ 11 |
| **Events of Default**<br><br>*Local Bankruptcy Rule 4001-2(a)(ii)* | Events of Default under the proposed Interim Order include the following:<br><br>• the Interim Order shall cease to be in full force and effect for any reason or shall be modified or amended;<br><br>• the Debtors' failure to comply with or perform in any material respect the terms, provisions, covenants, agreements, obligations, | ¶ 12 |

and/or any of the Milestones set forth on <u>Exhibit 2</u> to the Interim Order;

- the Debtors' failure to comply with the Budget (excluding amounts attributable to the fees and expenses of the Debtors' or the Bridge Facility Secured Parties' legal, financial, and other professional advisors), subject to permitted variances;

- an application, motion, or other pleading shall have been filed by any Debtor seeking to reverse, amend, stay, supplement, vacate, extend, terminate, or modify in any manner the Interim Order, or an order shall have been entered reversing, amending, supplementing, staying, extending, vacating, terminating, or otherwise materially modifying the Interim Order in a manner adverse to the Bridge Facilities Secured Parties (other than a modification or supplementation as a result of the entry of the Final Order);

- the Court shall have entered an order dismissing any of the Debtors' Chapter 11 Cases, or any Debtor shall have filed (or failed to object to) a motion or other pleading seeking such dismissal;

- the Court shall have entered an order converting any of the Debtors' Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or any Debtor shall have filed (or failed to object to) a motion or other pleading seeking such relief;

- any Debtor (or any direct or indirect non-debtor affiliate or subsidiary of a Debtor) commences (or supports) any action, including by filing any motion, application, or other pleading, against any of the Bridge Facility Secured Parties or otherwise challenging the Bridge Facility Secured Obligations (including challenging the validity, enforceability, perfection, or priority of any lien securing any such obligation), the Bridge Facility Liens and/or the Bridge Facility Collateral;

- the Court shall have entered an order invalidating, avoiding, disallowing, subordinating, limiting, or recharacterizing, in any respect, any claim, lien, or interest of any Bridge Facility Secured Party arising under the Bridge Credit Documents;

- the Court shall have entered an order authorizing the appointment or election of a trustee (including a chapter 11 trustee), responsible officer, examiner (other than a fee examiner), or any other representative with expanded powers relating to the operation of the Debtors' businesses in any of the Debtors' Chapter 11 Cases, or any Debtor applies for, consents to, or acquiesces in (or fails to object to), any such appointment or election (as applicable);

- any Debtor shall have filed a motion or application for the approval of any superpriority claim or any lien in any of the Debtors' Chapter 11 Cases (other than such claim or lien granted or permitted pursuant to the Interim Order or a Final Order), that

|  | is *pari passu* with or senior to any of the Adequate Protection Liens, Adequate Protection Superpriority Claims, or Bridge Facility Liens; |  |
|  | • other than with respect to the Carve-Out, any Debtor shall create or incur, or the Court enters an order granting, any claim or lien that is *pari passu* with or senior to any of the Bridge Facility Liens, Bridge Facility Secured Obligations, the Adequate Protection Liens, or Adequate Protection Superpriority Claims (other than any such claim or lien granted or permitted pursuant to the Interim Order); |  |
|  | • the Debtors shall file (or the Court shall grant) any application, motion, or borrowing request seeking to use Cash Collateral on a nonconsensual basis; |  |
|  | • the termination of the Restructuring Support Agreement; |  |
|  | • any Debtor shall make any material payment (including "adequate protection" payments) with respect to any prepetition indebtedness, other than as contemplated or permitted by the Interim Order and any other "first day" orders entered by the Court; and |  |
|  | • any Debtor shall have filed a motion for the sale or disposition of any material asset of any of the Debtors outside of the ordinary course of business. |  |

## HIGHLIGHTED TERMS PURSUANT TO LOCAL RULE 4001-2(a)(i)

9.     The Interim Order includes certain terms that constitute material provisions requiring explicit disclosure under the Local Rules. The provisions described in Rule 4001-2(a)(i) of the Local Rules, to the extent applicable, are set forth at the following sections of the Interim Order:

a.   **Local Rule 4001-2(a)(i)(A) – Cross Collateralization.**  Not applicable.

b.   **Local Rule 4001-2(a)(i)(B) – Validity, Perfection, and Amount of Prepetition Liens.**  The Orders contain provisions or findings of fact that bind the estates with respect to the validity, perfection or amount of the Bridge Facility Secured Parties' claims.  The Interim Order provides, in pertinent part, that the stipulations and admissions contained in the Interim Order, including, without limitation, the Debtors' Stipulations, shall be binding upon the Debtors and their respective representatives, successors, and assigns in all circumstances.  The stipulations and admissions contained in the Interim Order, including, without limitation, the Debtors' Stipulations, also shall be binding upon the Debtors' estates and all other

parties-in-interest, including any statutory committee appointed in the Chapter 11 Cases or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors, for all purposes unless and to the extent (a) such party has, as appropriate, filed a motion or objection or, after obtaining standing to file an adversary proceeding (provided that any motion seeking such standing shall include any applicable adversary complaint), has commenced an adversary proceeding by no later than the earlier of (A) the date that is the deadline for objecting to confirmation of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Pennsylvania Real Estate Investment Trust and Certain of Its Direct and Indirect Subsidiaries*, and (B) with respect to a statutory committee, if any, sixty (60) days from the date of its formation, and, with respect to any other party in interest, seventy-five (75) days from the date of entry of the Interim Order (the "Challenge Period") (i) challenging the amount, validity, enforceability, priority, or extent of the Bridge Facility Secured Obligations or the Bridge Facility Secured Liens, or (ii) otherwise asserting any other claims, counterclaims, causes of action, objections, contests, or defenses against any Bridge Facility Secured Party on behalf of the Debtors' estates ((i) and (ii), collectively, the "Claims and Defenses"); and (b) the Court has entered an order (which becomes final and non-appealable) in favor of such party sustaining any such challenge or claim. The Interim Order also provides that, notwithstanding the foregoing, if a party in interest files a motion prior to the expiration of the Challenge Period that seeks standing to pursue an adversary complaint appended to the standing motion, then the Challenge Period for such party in interest with respect to such challenge shall be tolled during the pendency of entry of an order by the Court on the standing motion. Interim Order ¶ 20.

c.   **Local Rule 4001-2(a)(i)(C) – Section 506(c) Waiver.** Upon entry of a Final Order providing for such relief, the Debtors propose to waive their right to "surcharge" the Bridge Facility Secured Parties' Prepetition Collateral under section 506(c) of the Bankruptcy Code. The Bridge Facility Secured Parties required that the Debtors waive their rights under Bankruptcy Code section 506(c) as a condition to the consensual use of Cash Collateral. Interim Order ¶ 14. Moreover, the Bridge Facility Secured Parties extended valuable concessions to the Debtors in exchange for the proposed section 506(c) waiver, including the Carve-Out.

d.   **Local Rule 4001-2(a)(i)(D) – Liens on Avoidance Actions.** Not applicable.

e.   **Local Rule 4001-2(a)(i)(E) – Provisions Deeming Prepetition Debt to be Post-petition Debt**. The Interim Order provides for adequate protection to the Bridge Facility Secured Parties to the extent of the aggregate postpetition diminution of Prepetition Collateral, including Cash Collateral (as more fully defined in the Interim Order, the "Collateral Diminution"). The Interim Order further provides that each dollar of cash withdrawn from the Cash Collateral Account shall be deemed to constitute Collateral Diminution for all purposes of the Interim Order, which, for the avoidance of doubt, shall entitle the Bridge Facility Secured Parties the benefits of the Adequate Protection Superpriority Claims and Adequate Protection Liens. Interim Order ¶ 6. The Bridge Facility Secured Parties required

the provision of adequate protection as set forth in the Interim Order as a condition to the consensual use of Cash Collateral.

f.  **Local Rule 4001-2(a)(i)(F) – Disparate Treatment of Professionals Retained by the Committee.**  Not applicable.

g.  **Local Rule 4001-2(a)(i)(G) – Non-Consensual Priming.**  Not applicable.

h.  **Local Rule 4001-2(a)(i)(H) – Provisions Affecting the Court's Power to Consider Equities of the Case.**  The "equities of the case" provision of section 552(b) of the Bankruptcy Code is an equitable exception to the general rule that a secured creditor's prepetition security interests extend to property of the debtor acquired after the petition date that constitutes proceeds of prepetition collateral. The proposed Interim Order provides that, upon entry of a Final Order providing for such relief, the Bridge Facility Secured Parties shall each be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply.  Interim Order ¶ 16.  The Bridge Facility Secured Parties required a waiver of the "equities of the case" exception as a condition to the consensual use of Cash Collateral.

## THE DEBTORS' PREPETITION SECURED INDEBTEDNESS

10.  On August 11, 2020, PREIT, PREIT Associates, L.P. ("PREIT Associates") and PREIT-Rubin, Inc. ("PRI" and, collectively with PREIT and PREIT Associates, the "Borrowers") entered into a Credit Agreement with Wells Fargo Bank, National Association, as administrative agent (the "Bridge Agent") and the financial institutions party thereto (the "Bridge Lenders" and, collectively with the Bridge Lenders, the "Bridge Facility Secured Parties") for a secured term loan facility allowing for borrowings up to $30 million (the "Bridge Loan Credit Agreement"). The Borrowers' obligations under the Bridge Loan Credit Agreement (the "Bridge Facility Secured Obligations") are guaranteed by certain of PREIT's subsidiaries, as set forth on a Guaranty (the "Guaranty") executed in connection with the Bridge Loan Credit Agreement.  The Borrowers' and the guarantors' obligations under the Bridge Loan Credit Agreement and the Guaranty are secured by mortgages and deeds of trust (collectively, the "Mortgages") on a portfolio of 12 of PREIT's subsidiaries' properties, including nine malls and three additional parcels.  The obligations are further secured by a pledge of substantially all of the personal property of the

Borrowers and the guarantors under a Collateral Agreement (the "Collateral Agreement"), as well as a pledge of substantially all of the equity interests of PREIT Associates, PRI and the guarantors (subject to limited exceptions) under a Pledge Agreement (the "Pledge Agreement" and, collectively with the Bridge Loan Credit Agreement, the Guaranty, the Mortgages and the Collateral Agreement, the "Bridge Credit Documents").  In addition, on October 16, 2020, the Borrowers executed an amendment to the Bridge Loan Credit Agreement, which was acknowledged by the guarantors, allowing for an additional borrowing of $25 million.  As of the Petition Date, approximately $55 million was owing under the Bridge Loan Credit Agreement.

11.     The Debtors believe that the Bridge Facility Secured Obligations constitute valid and binding obligations that are not subject to avoidance, recharacterization, counterclaim, defense, offset, subordination, or other possible challenge.

12.     As more fully set forth in the Bridge Credit Documents, prior to the Petition Date, the Borrowers and the guarantors granted to the Bridge Agent, for its benefit and the benefit of the Bridge Lenders, a security interest in and continuing lien (the "Bridge Facility Liens") on certain of their assets and property, including, without limitation, a first-priority security interest in and continuing lien on all Prepetition Collateral (as defined below, including Cash Collateral) that does not constitute Excluded Property (as defined in the Bridge Credit Documents) and all proceeds and products of any of the foregoing, in each case, whether then owned or existing, thereafter acquired, or arising (collectively, the "Bridge Facility Collateral").

13.     The Debtors believe that the Bridge Facility Liens (a) constitute valid, perfected and enforceable first-priority liens on and security interests in the Bridge Facility Collateral to secure the Bridge Facility Secured Obligations;  (b) are not subject to avoidance, recharacterization, offset, or subordination or other challenge; and (c) are subject and subordinate

only to any valid and unavoidable liens properly perfected prior to the Petition Date (or perfected

after the Petition Date, to the extent permitted by section 546(b) of the Bankruptcy Code), solely

to the extent such liens are permitted under the Bridge Credit Documents to be senior to the Bridge

Facility Liens (collectively, the "Permitted Prior Liens" and, the collateral subject to the Permitted

Prior Liens, together with the Bridge Facility Collateral, the "Prepetition Collateral").

14.    All of the Debtors' cash and all cash proceeds held at any time in any of the

Debtors' banking, checking, or other deposit accounts, including all funds comprising the Cash

Collateral Account (as defined in the Bridge Credit Agreement) and all deposits at any time

contained therein (excluding, for the avoidance of doubt, the Excluded Deposit Account (as

defined in the Collateral Agreement)) constitute Cash Collateral of the Bridge Facility Secured

Parties within the meaning of section 363(a) of the Bankruptcy Code.

## **RELIEF REQUESTED**

15.    The Debtors request the entry of the Interim Order, substantially in the form

attached as **Exhibit A**,  (a) authorizing the Debtors' use of Cash Collateral; (b) providing adequate

protection to the Bridge Facility Secured Parties to the extent set forth herein; (c) modifying the

Automatic Stay to the extent necessary to implement and effectuate the terms and provisions of

the Interim Order; and (d) scheduling the Final Hearing and thereafter entering a Final Order

granting the Motion.  Following arm's-length negotiations, the parties have reached an agreement

with respect to the Debtors' use of Cash Collateral and the additional relief requested herein, on

the terms and conditions specified in the Interim Order.

16.    The Debtors cannot meet their ongoing obligations without the continued use of

Cash Collateral, as contemplated in the Interim Order.  Other than the Cash Collateral, the Debtors

do not have access to funds.  The Debtors continue to generate new revenue, which constitutes

collateral under the Bridge Credit Documents under section 552(b)(1) of the Bankruptcy Code.

The Debtors' ongoing obligations include obligations to vendors, suppliers and other trade parties required to continue the Debtors' business operations postpetition and obligations existing under state and federal law.

17.     For the foregoing reasons, the Debtors' continued use of Cash Collateral is necessary to preserve the value of their estates and maximize value for the benefit of all stakeholders.  Under the Interim Order and Final Order, the Debtors' use of Cash Collateral is subject to certain limitations, including that the Debtors may only use Cash Collateral in accordance with the budget attached as Exhibit 1 to the Interim Order, as may be modified from time to time upon agreement of the Debtors and the Bridge Agent (the "Budget").

**BASIS FOR RELIEF**

18.     The Debtors submit that the relief requested herein is appropriate under the circumstances and in the best interests of the Debtors and their estates.  Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell or lease cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section."  11 U.S.C. §363(c)(2).  The Bridge Facility Secured Parties are the only entities that possess an interest in the Cash Collateral and consent to its use in accordance with the Interim Order and Budget.

19.     The Debtors further submit that the adequate protection provided to the Bridge Facility Secured Parties under the Interim Order is appropriate and sufficient.  Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property … proposed to be used, sold or leased, by the trustee, the court…shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. §363(e). Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to: (a) a lump sum or periodic cash payments to the extent that such use will

result in a decrease in value of such entity's interest in the property; (b) "additional or replacement lien[s]" to the extent that the use of cash collateral will cause a "decrease in the value of such entity's interest in such property;" and (c) "granting such other relief…as will results in the realization by [the] entity of the indubitable equivalent of such entity's interest in the property." 11 U.S.C §361; *see also Resolution Tr. Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 522, 564 (3d Cir. 1994) ("a determination of whether there is adequate protection is made on a case by case basis.").

20.     The principal purpose of adequate protection is to safeguard the interest of the secured creditor in the particular collateral against diminution in the value of such interest. *See Swedeland*, 16 F.3d at 564 ("[T]he whole purpose of adequate protection for a creditor is to insure [sic] that the creditor receives the value for which he bargained prebankruptcy.") (quoting *Mbank Dallas N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10 Cir. 1987); *Del. Tr. Co. v. Wilmington Tr., N.A. (In re Energy Future Holdings Corp.)*, 546 B.R. 566, 581 (Bankr. D. Del. 2016) ("The purpose of adequate protection 'is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use by the debtor.'")(quoting *In re Satcon Tech Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012)).

21.     As adequate protection for the Debtors' use of Cash Collateral, the Debtors propose to grant to the Bridge Agent, for the benefit of itself and the Bridge Facility Secured Parties, (a) subject and subordinate only to the Carve-Out, allowed superpriority administrative expense claims (the "Adequate Protection Superpriority Claims") against the Debtors and their estates to the extent of any Collateral Diminution, as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors now existing or hereafter arising in these Chapter 11 Cases, including all claims

of the kinds specified or ordered under any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 546, 726, 1113, and 1114; and (b) subject and subordinate only to (i) the Carve-Out and (ii) the Permitted Prior Liens, the Bridge Agent, for its benefit and for the benefit of the Bridge Facility Secured Parties, shall be granted, as of the Petition Date, to the extent of any Collateral Diminution, and, in each case, perfected without the necessity of the execution by the Debtors (or recordation or other filing) of any security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, or the possession or control by the Bridge Facility Secured Parties of any Adequate Protection Collateral, valid, binding, continuing, enforceable, fully-perfected, non-avoidable (x) first-priority additional and replacement liens on, and security interest in, all tangible and intangible prepetition and postpetition property in which any of the Debtors or their respective estates have an interest of any kind or nature, whether existing on or as of the Petition Date or thereafter acquired or created and wherever located that is not subject to a Permitted Prior Lien (the "Previously Unencumbered Property"); (y) first-priority additional and replacement liens on, and security interest in, the Bridge Facility Collateral; and (z) second-priority additional and replacement liens on, and security interest in, any property of the Debtors subject to Permitted Prior Liens  (all of the foregoing property in the foregoing clauses (x) through (z) collectively is referred to herein as the "Adequate Protection Collateral," and the liens and security interests therein, the "Adequate Protection Liens"); provided, that, the Adequate Protection Collateral shall not include any commercial tort or avoidance actions (or the proceeds thereof) brought under chapter 5 of the Bankruptcy Code or section 724(a) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable state law equivalents, or the proceeds thereof.

22.     The terms and conditions on which the Debtors may use Cash Collateral have been carefully designed to meet the dual goals of sections 361 and 363 of the Bankruptcy Code. If the Interim Order is entered, the Debtors will have working capital sufficient to fulfill their near-term obligations and continue its efforts to reorganize.  At the same time, Bridge Agent, for the benefit of itself and the Bridge Facility Secured Parties, will be adequately protected in a manner that it has agreed in exchange for consenting to the Debtors' use of Cash Collateral. Therefore, the Debtors respectfully submit that the proposed Interim Order adequately protects the Bridge Facility Secured Parties, is in the best interests of the Debtors, their estates, creditors and all parties in interest and should be authorized by the Court.

### MODIFICATION OF THE AUTOMATIC STAY

23.     The proposed Interim Order contemplates the modification of the Automatic Stay to the extent necessary to implement the provisions of the Interim Order, thereby permitting the Debtors to grant the Adequate Protection Liens described herein.

24.     Stay modifications of this kind are ordinary and standard features for the use of cash collateral, and in the Debtors' business judgment, are reasonable and fair under the present circumstances.   Accordingly, the Debtors respectfully request that this Court authorize the modification of the Automatic Stay in accordance with the terms set forth in the Interim Order.

25.     The Debtors request a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3).  Bankruptcy Rule 4001(a)(3) provides, "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 4001(a)(3).  The use of Cash Collateral is essential to prevent irreparable damage to the Debtors' operations.  Accordingly, ample cause exists to justify the

waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

## REQUEST FOR INTERIM AND FINAL HEARINGS

26.    Pursuant to Rule 4001(b) of the Bankruptcy Rules, the Debtors request that the Court conduct an interim hearing and authorize the Debtors to use, on an interim basis, the Cash Collateral in accordance with the Budget (including any permitted variance) and the terms and provisions of the Interim Order. If the Debtors are unable to obtain immediate use of Cash Collateral, they would likely be unable to comply with their post-petition obligations or reorganize, causing irreparable harm to the estates and creditors, including the Bridge Facility Secured Parties. In accordance with Rule 4001(b)(2) of the Bankruptcy Rules, the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable and fix the date and time prior to the Final Hearing for parties in interest to file objections to the relief requested by this Motion.

## NOTICE

27.    Notice of this Motion will be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Office of the United States Attorney for the District of Delaware; (c) each of the parties included on the Debtors' consolidated list of thirty largest unsecured creditors; (d) the Internal Revenue Service; (e) the U.S. Securities and Exchange Commission; (f) the swap counterparties; (g) counsel to the Agent under the Revolver/TL Credit Agreement, Seven Year Term Loan Agreement and Bridge Loan Credit Agreement; (h) counsel to the Consenting Lenders; (i) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (j) any other party in interest entitled to notice of this Motion.  As this Motion is seeking "first day" relief, notice of this Motion and any order entered in connection with this Motion will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the

circumstances surrounding this Motion and the nature of the relief in it, the Debtors respectfully submit that no further notice of this Motion is required.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the proposed Interim Order, substantially in the form attached hereto as **Exhibit A**, (i) granting the relief requested in this Motion, (ii) schedule a final hearing on the Motion, and (iii) grant such other and further relief as the Court may deem proper.

Dated:  November 1, 2020
        Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

 _/s/  R. Craig Martin_____
R. Craig Martin (DE 5032)
Stuart M. Brown (DE 4050)
Aaron S. Applebaum (DE 5587)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone:(302) 468-5700
Facsimile:(302) 394-2341
Email:  craig.martin@us.dlapiper.com
        stuart.brown@us.dlapiper.com
        aaron.applebaum@us.dlapiper.com

 -and-

Richard A. Chesley (*pro hac vice* pending)
Daniel M. Simon (*pro hac vice* pending)
Oksana Koltko Rosaluk (*pro hac vice* pending)
David E. Avraham (*pro hac vice* pending)
Tara Nair (*pro hac vice* pending)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email:  richard.chesley@us.dlapiper.com
        daniel.simon@us.dlapiper.com
        oksana.koltkorosaluk@us.dlapiper.com
        david.avraham@us.dlapiper.com
        tara.nair@us.dlapiper.com

*Proposed Counsel for the Debtors*