## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x
In re:                                          :          Chapter 11
                                                :
PENNSYLVANIA REAL ESTATE INVESTMENT :          Case No. 20-_____ (___)
TRUST, *et al.*,[1]                             :
                                                :          (Joint Administration Requested)
              Debtors.                          x
------------------------------------------------------------- x

### MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) SCHEDULING THE COMBINED HEARING ON ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PREPACKAGED PLAN, (II) ESTABLISHING DEADLINES TO OBJECT TO THE DISCLOSURE STATEMENT AND PREPACKAGED PLAN, (III) APPROVING THE PREPETITION SOLICITATION PROCEDURES, (IV) APPROVING THE FORM AND MANNER OF THE COMBINED HEARING NOTICES, (V) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (VI) WAIVING THE REQUIREMENT OF FILING SCHEDULES, STATEMENTS OF FIANNCIAL AFFAIRS AND RULE 2015.3 REPORTS AND (VII) GRANTING RELATED RELIEF

Pennsylvania Real Estate Investment Trust ("<u>PREIT</u>") and certain of its affiliates as debtors

and debtors in possession (collectively, the "<u>Debtors</u>"), by and through their proposed counsel,

DLA Piper LLP (US), hereby submit this motion (the "<u>Motion</u>") for entry of an order, substantially

in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Proposed Order</u>"):

    i.        scheduling a combined hearing (the "<u>Combined Hearing</u>") on or before November 24, 2020, to consider (a) the adequacy of the *Disclosure Statement Relating to the Joint Prepackaged Chapter 11 Plan of Reorganization of Pennsylvania Real Estate Investment Trust and Certain of Its Direct and Indirect Subsidiaries* (as amended, supplemented or otherwise modified from time to time, the "<u>Disclosure Statement</u>"), and (b) confirmation of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Pennsylvania Real Estate Investment Trust and Certain of Its Direct and Indirect Subsidiaries* (as amended, supplemented or otherwise modified from time to time, the "<u>Plan</u>")[2];

---

[1]      A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as **<u>Schedule 1</u>**.  The corporate headquarters and the mailing address for the Debtors is 2005 Market Street, Suite 1000, Philadelphia, PA 19103.

[2]      Capitalized terms used but not defined in this Motion have the meanings given to them in the Plan.

ii. establishing a deadline for objections to the adequacy of the Disclosure Statement and confirmation of the Plan (the "Objection Deadline") and approving related procedures and deadlines;

iii. approving the prepetition solicitation procedures regarding votes to accept or reject the Plan, including the forms of ballots (the "Solicitation Procedures");

iv. approving the procedures and standard assumptions used for tabulating Ballots (as defined below) (the "Tabulation Procedures");

v. approving the form and manner of notice of the Combined Hearing and the Objection Deadline (the "Combined Hearing Notice") and the form and manner of the publication of the Combined Hearing (the "Publication Notice");

vi. approving the notice and objection procedures, including the applicable objection deadline, for the assumption of executory contracts and unexpired leases under the Plan (the "Executory Contract Procedures");

vii. conditionally directing the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") not to convene a meeting of creditors pursuant to section 341 of the Bankruptcy Code within forty-five days of the Petition Date (as defined below);

viii. conditionally waiving the requirement that the Debtors file schedules of assets and liabilities (the "Schedules"), the statements of financial affairs ("SOFAs"), and the initial reports of financial information in respect of entities which their chapter 11 estates hold a controlling interest, as set forth in Bankruptcy Rule 2015.3 (the "2015.3 Reports"), in each case; and

ix. granting related relief.

In support of this Motion, the Debtors rely upon the *Declaration of Mario C. Ventresca, Jr. in Support of First Day Pleadings* (the "First Day Declaration"), filed contemporaneously with this Motion, and respectfully state as follows:

## PRELIMINARY STATEMENT

1. The global outbreak of the novel COVID-19 pandemic has negatively impacted the entire retail industry, and unfortunately, the Debtors are no exception. Consequently, the Debtors' financial condition, liquidity and operating results have suffered, as have the businesses of the Debtors' tenants. This unanticipated hurdle to an already challenging retail environment brought about great uncertainty to the Debtors' positioning as a leading publicly traded REIT specializing

in the ownership and management of differentiated shopping malls.  Nevertheless, with extraordinary dedication and cooperation among the Debtors and their lenders, the Debtors will persist, by effectuating a prepackaged chapter 11 plan addressing the nearly $1 billion in funded debt obligations, primarily comprising approximately: (a) $244,545,454.54 million in unsecured debt under that certain Seven-Year Term Loan Agreement, dated as of January 8, 2014 (as amended, the "7-Year Term Loan Agreement"); (b) 668,454,545.46 million in unsecured debt under that certain Amended and Restated Credit Agreement, dated as of May 24, 2018 (as amended, the "Revolver/TL Credit Agreement," and together with the 7-Year Term Loan Agreement, the "Unsecured Credit Agreements," and the credit facilities thereunder, the "Unsecured Credit Facilities"); and (c) $55 million in secured debt under that certain Credit Agreement, dated as of August 11, 2020 (as amended, the "Bridge Credit Agreement," and the credit facility thereunder, the "Bridge Credit Facility").

2.      The Debtors' Plan and Disclosure Statement were solicited to voting creditors prior to the filing of these Chapter 11 Cases, and the votes were tabulated prepetition.  The Debtors are pleased to report that all Voting Classes (as defined below) have overwhelmingly voted to accept the Plan.  In fact, nearly 95% of the Debtors' lenders have voted to support the Plan; leaving one holder, who recently bought in at a steep discount, that will almost certainly seek to delay or derail this unprecedented success in a turbulent retail market.  As such, the Debtors anticipate a swift and value-maximizing chapter 11 process and expect that they can exit chapter 11 within weeks of the filing of these Chapter 11 Cases, within the timeframe imposed by the terms of the Restructuring Support Agreement (as defined below).  In fact, it is critical that the Debtors confirm their Plan prior to Thanksgiving, so the Debtors' sole focus is on maximizing their revenues during the holiday season.

3.     To accomplish these objectives, in the weeks prior to the Petition Date and after extensive, arms'-length, good-faith negotiations with (a) the Revolver/TL Lenders, (b) the Seven-Year Term Lenders, and (c) the Bridge Lenders, the Debtors reached an agreement over the terms of a consensual restructuring with certain of its prepetition lenders collectively, the "Consenting Lenders"), which terms are memorialized in the Restructuring Support Agreement, dated as of October 7, 2020 (as amended, the "Restructuring Support Agreement").  While the Restructuring Support Agreement contemplated an out-of-court restructuring, it also provided for an alternative in-court restructuring if the Debtors were unable to obtain support of their entire lender group. While the Debtors obtained broad consensus from their lender group to effectuate the transactions contemplated under the Restructuring Support Agreement, unfortunately, they did not receive 100% approval, which would have allowed the restructuring to be consummated on an out-of-court basis.  One hold-out lender, comprising various affiliates of Strategic Value Partners, LLC— who recently purchased a 5% interest in the credit facility at a substantial discount—would not consent to effectuate the transaction out of court.  As a result, in order to complete their restructuring, the Debtors pivoted to effectuating a restructuring through a prepackaged reorganization under chapter 11 of the Bankruptcy Code, the purpose of which is to implement the restructuring that already has the support of over 95% of the Debtors' lender group.  The Debtors anticipate that this prepackaged reorganization process should be expedited, with no impact on their shareholders, trade creditors, landlords, tenants, business partners or other stakeholders. Indeed, any material delay in confirming a plan that leaves all stakeholders unimpaired, and which has the support of every impaired creditor, save one, in a chaotic retail real estate market, threatens to imperil a successful restructuring that has been many months in the making.

4.      The prepackaged plan contemplates a restructuring of the Debtors' certain aspects of the balance sheet as well as access to working capital to fund the Debtors' ongoing operations during these Chapter 11 Cases and upon emergence, while reinstating all allowed General Unsecured Claims and maintaining critical business relationships with tenants and vendors, all as more fully set forth in the Plan.  In addition, PREIT's existing equity holders will retain (without reissuance) their equity interests without any modifications.  Accordingly, the Plan impairs only two classes of claims (i.e., Class 2 Specified Derivatives Claims and Class 5 Unsecured Credit Facilities Claims), both of which have overwhelmingly voted to accept the Plan.  Ultimately, the Plan will allow the Debtors to minimize disruptions to their go-forward operations while effectuating a value-maximizing, largely refinancing transaction through this expedited chapter 11 process.

5.      Specifically, under the terms of the Plan, the Debtors seek to refinance approximately $913 million in Funded Debt and to have access to $150 million in new capital. This will strengthen the Debtors' businesses and provide financial flexibility to weather the current public health crisis and related period of economic uncertainty.  Thus, upon the consummation of the Plan, the capital structure of the Reorganized Debtors will comprise of (a)  approximately $150 million first lien senior secured revolving credit facility (the "Revolving Exit Facility"); (b) approximately $600 million first lien senior secured term loan facility (the "Senior Term Loan Facility," and together with the Revolving Exit Facility, the "Senior Facilities"); (c) approximately $313 million second lien secured term loan facility (the "Second Lien Term Loan Facility," and together with the Senior Facilities, the "Secured Facilities"); (d) reinstated Secured Property-Level Debt (including any guaranties provided by the Debtors in connection with such Secured Property-Level Debt); (e) assumed (or reinstated, as the case may be) general unsecured debt payable in the

ordinary course of business of the Reorganized Debtors; (f) reinstated swap agreements (referred

to as the Specified Derivatives), unless the non-Consenting Lenders elect to terminate their swap

arrangements with the Debtors, in which case the resulting allowed claims will receive incremental

loans under the Second Lien Term Loan Facility equal to the termination value of such swaps; and

(g) retained equity in reorganized PREIT.  The proceeds of the Revolving Exit Facility will be

used to refinance the Bridge Credit Facility and to fund working capital.

6.      On October 9, 2020, the Debtors launched the solicitation of the Plan, establishing

October 18, 2020, as the deadline to cast the votes to accept or reject the Plan (the "Voting

Deadline").  As of the Voting Deadline, approximately 100% of Holders of Class 2 Claims and

75% of Holders of Class 5 Claims by number and 95% in amount voted.  100 % of these Voting

Classes (as defined below) accepted the Plan.

7.      In sum, the goal of this prepackaged restructuring is to maximize the value of the

Debtors' businesses in order to provide much needed flexibility during this period of financial

uncertainty.  To achieve this goal, it is critical that the Debtors emerge from chapter 11 as

expeditiously as possible and in compliance with the terms of the Restructuring Support

Agreement.

## JURISDICTION AND VENUE

8.      The United States Bankruptcy Court for the District of Delaware (the "Court") has

jurisdiction over these Chapter 11 Cases, the Debtors, property of the Debtors' estates and this

matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the

United States District Court for the District of Delaware*, dated as of February 29, 2012.  This is

a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

9.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"),

the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

10.     Venue of these cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

11.     The statutory bases for the relief requested herein are sections 105, 1102, 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 3017-1 and 9006-1.

## BACKGROUND

12.     On the Petition Date, each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing its case (collectively, the "Chapter 11 Cases").

13.     The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in the Debtors' Chapter 11 Cases.  No date has been set for a meeting pursuant to section 341 of the Bankruptcy Code.

14.     Additional factual background regarding the Debtors, including their business operations, capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the First Day Declaration, which is fully incorporated in this Motion by reference.

## RELIEF REQUESTED

15.     By this Motion, the Debtors seek entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**:

(a)      scheduling the Combined Hearing to (i) approve the adequacy of the Disclosure Statement and (ii) consider confirmation of the Plan;

(b)      establishing the Objection Deadline and approving related procedures;

(c)      establishing a deadline to file a combined pleading in support of confirmation of the Plan and replying to any objections to the Disclosure Statement or Plan (the "Reply Deadline");

(d)      approving the Solicitation Procedures;

(e)      establishing the Tabulation Procedures;

(f)      approving the form and manner of the Combined Hearing Notice and the Publication Notice;

(g)      approving the notice and objection procedures, including the Treatment Objection Deadline and the Executory Contract Procedures;

(h)      conditionally directing the U.S. Trustee not to convene a meeting of creditors pursuant to section 341 of the Bankruptcy Code within forty-five days of the Petition Date;

(i)      conditionally waiving the requirement that the Debtors file Schedules, SOFAs and the 2015.3 Reports; and

(j)      granting related relief.

16.      In connection with the foregoing, the Debtors respectfully request that the Court approve the following schedule of proposed dates (the "Proposed Confirmation Schedule"), subject to the Court's availability:

| Event | Date |
| --- | --- |
| Voting Record Date[3] | October 7, 2020 |
| Commencement of Solicitation | October 9, 2020 |
| Voting Deadline | October 18, 2020, at 5:00 p.m. (Eastern Daylight Time) |
| Petition Date | November 1, 2020 |

---

[3]      The "Voting Record Date" is the date as of which a holder of record of a claim entitled to vote on the Plan must have held such claim to cast a vote to accept or reject the Plan.

| Event | Date |
|---|---|
| Combined Hearing Notice and Publication Notice | One business day after entry of the Proposed Order, or as soon as practicable thereafter |
| Plan Supplement Deadline[4] | November 9, 2020, at 12:00 p.m. (Eastern Standard Time) or seven days prior to the Objection Deadline |
| Objection Deadline and Treatment Objection Deadline | November 16, 2020, at 12:00 p.m. (Eastern Standard Time) |
| Confirmation Order, Confirmation Brief and Reply Deadline | November 20, 2020 at 12:00 p.m. (Eastern Standard Time), or the deadline to file the agenda |
| Combined Hearing | November 24, 2020 at ____:__ _.m (Eastern Standard Time) |

## BASIS FOR RELIEF

**1.      Notice and Scheduling of the Combined Hearing and the Objection Deadline.**

17.     The Debtors seek a Combined Hearing to consider approval of the Disclosure Statement and confirmation of the Plan to be held, subject to the Court's availability, on November 24, 2020.  This request is consistent with the practice for prepackaged cases and will facilitate an expeditious reorganization on a schedule in compliance with the terms of the Restructuring Support Agreement and in an effort to maximize the revenues during the upcoming holiday season.

18.     Bankruptcy Rules 2002(b) and 3017(a) require that the twenty-eight-day notice be given by mail to all creditors, equity security holders and other parties in interest of the time fixed for filing objections to approval of a disclosure statement or confirmation of a plan of reorganization, subject to this Court's discretion to shorten such period under Bankruptcy Rule 9006(c)(1).  Section 1128(a) of the Bankruptcy Code further provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."  Local Rule 3017-1 provides that "the hearing date [to consider approval of the disclosure statement] shall be at least thirty-five days following the service of the disclosure statement and the objection deadline shall be at least twenty-eight (28)

---

[4]      The Debtors have been working in good faith with counsel to the Consenting Lenders to prepare the documents that will be filed as part of the Plan Supplement.

days from service of the disclosure statement." DEL. BANKR. L.R. 3017-1. Section 105(d)(2)(B)(vi) permits the Court to combine the hearing on the adequacy of a disclosure statement with the hearing on confirmation of the related plan. *See* 11 U.S.C. § 105(d)(2)(B)(vi).

19.     It is appropriate to set the Combined Hearing on November 24, 2020 (or as soon as possible thereafter).  Indeed, the most sensitive and difficult task required to effectuate a successful reorganization—the negotiation of consensual agreements with critical lender constituencies—concluded in advance of the Petition Date.  Likewise, the Debtors already have completed another significant and complex task required to effectuate a successful reorganization—the negotiation, formulation, and solicitation of a chapter 11 plan of reorganization, which is supported by Holders of approximately 95% in the aggregate outstanding principal amount of the Unsecured Credit Facilities and 100% in the aggregate outstanding principal amount of the Bridge Credit Facility.

20.     Specifically, the Debtors caused their proposed solicitation agent Prime Clerk LLC (the "Solicitation Agent") to distribute the Solicitation Packages to the Voting Classes on October 9, 2020.  The Disclosure Statement contained in the Solicitation Package notified parties of a projected hearing date, which was prior to the date requested in this Motion, to consider the adequacy of the information in the Disclosure Statement and confirmation of the Plan once the Chapter 11 Cases are commenced.  Therefore, each Holder of Impaired Claims received approximately forty-six days' notice of the Combined Hearing.  Significantly, each Holder of Claims that is entitled to vote actually submitted a ballot, reflecting sufficient notice was received by all impacted stakeholders.  To that end, the Debtors have already received sufficient votes in favor of the Plan from the Voting Classes, consistent with section 1126(c) of the Bankruptcy Code. Furthermore, the Debtors have engaged in productive discussions with certain lender group constituents prompted by the service of the Solicitation Package.

21.     Importantly, the Debtors request that the Court schedule the Combined Hearing on November 24, 2020 (twenty-three days after the Petition Date) not only to ensure compliance with the milestones set forth in the Restructuring Support Agreement[5] and Cash Collateral Order, but also to enable the Debtors to focus, during the critically important period from Thanksgiving through the holiday season, solely on ensuring a safe, customer-focused retail shopping experience.  Amidst all of the uncertainty to the mall-based retail industry posed by the acceleration of COVID-19 cases in recent weeks, it is incumbent on the Debtors—for the benefit of all of their stakeholders—that their retail properties are not incrementally impacted any further by the overhang and uncertainty of their restructuring efforts during the upcoming holiday season.

22.     Further, pursuant to the Proposed Confirmation Schedule, all other holders of claims and interest, all of which are Unimpaired, (collectively, the "Remaining Holders") will receive approximately twenty-two days' notice of the Combined Hearing.  Although the notice of the Combined Hearing is shorter than required under Local Rule 3017-1 and Bankruptcy Rules 2002(b) and 3017(a), shortening the notice period is appropriate under the circumstances because all of the Remaining Holders are Unimpaired.[6]  In addition to the reasons described above, the request is particularly appropriate given the support of the Plan by approximately 95% of the Debtors' key stakeholders and the fact that the only Classes entitled to vote under the Plan

---

[5]     As further described in the Restructuring Support Agreement, the Debtors must confirm the Plan by December 1, 2020 and achieve the effectiveness of the Plan (the "Effective Date") by December 6, 2020. Under the Plan, one of the conditions precedent to the confirmation of the Plan (and the Effective Date thereafter) is the Court having entered a non-appealable order approving the Plan. Therefore, in order for the Debtors to achieve these key milestones embedded in the Restructuring Agreement, the Debtors must schedule the Combined Hearing no later than November 24, 2020.

[6]     As more fully set forth in Section 3.4 of the Plan, although Article VII of the Plan contains certain releases and injunctions, such releases and injunctions become applicable the Holders of Unimpaired Claims only upon an Unimpaired Claim being either (a) paid in full (i) on terms agreed to between the Holder of such Unimpaired Claim and the Debtors or the Reorganized Debtors, as applicable, (ii) in the Allowed amount of such Unimpaired Claim as determined by applicable law or (iii) in accordance with the terms and conditions of the applicable documentation or laws giving rise to such Unimpaired Claim or (b) otherwise satisfied or disposed of as determined by a court of competent jurisdiction.

extensively negotiated the terms of the Plan with the Debtors and have cast their votes in favor of the Plan prior to commencement of these Chapter 11 Cases. Accordingly, no party should require additional time and there is no reason to delay consideration of the adequacy of the Disclosure Statement and confirmation of the Plan.

23.     In fact, any significant delay in this negotiated Proposed Confirmation Schedule presents a real and consequential risk to the Debtors' restructuring efforts. First, fallout in the shopping center environment during the COVID-19 pandemic has been near catastrophic. After months of negotiations toward a consensual agreement to restructure their balance sheet, while leaving all stakeholders, including equity holders, Unimpaired, the uncertainty created by further delay while under the protection of the Bankruptcy Court will be de-stabilizing. Further, the Debtors have countless non-Debtor affiliates, many of whom have contractual arrangements that trigger a default upon the bankruptcy of one of the Debtors.[7] The Debtors believe that protracted bankruptcy proceedings will significantly and detrimentally impact the Debtors' relationship with their landlords, tenants, customers, vendors, financing counterparties and will have other ripple effects on the entire enterprise, especially the property-level Debtor and non-Debtor affiliates.

24.     Accordingly, a combined hearing on the Disclosure Statement and Plan will allow the Debtors to effectuate their restructuring expeditiously, thereby not only preserving, but also maximizing, their value during the fast-approaching holiday season. It will also ensure minimal disruption to the Debtors' businesses, which the Debtors believe is critical and which they envisaged when they agreed to the outside date of December 1, 2020 for confirmation in the Restructuring Support Agreement, especially as this is effectively a "full pay case" (assuming the

---

[7]     Contemporaneously with the filing of this Motion, the Debtors filed the *Motion of the Debtors For Entry of an Order Extending the Automatic Stay to Certain Non-Debtor Affiliates to the Extent Necessary to Preserve the Debtors' Reorganization Efforts*, seeking to extend the automatic stay of section 362(a) of the Bankruptcy Code to certain non-Debtor affiliates, solely to the extent necessary to preserve the Debtors' reorganization efforts.

Plan is consummated as designed). Aside from protecting the entire enterprise, the proposed schedule will serve to minimize administrative expenses—thereby benefiting parties in interest in these Chapter 11 Cases—which is the hallmark of a prepackaged plan of reorganization. Therefore, the Debtors hereby respectfully request entry of the Proposed Order setting November 24, 2020, as the date for the Combined Hearing to consider the adequacy of the Disclosure Statement and confirmation of the Plan.

25.    Courts in this and other districts have routinely permitted combined hearings in similar fashion in other prepackaged chapter 11 cases. *See, e.g.*, *In re Anna Holdings*, Inc., Case No. 19-12551 (CSS) [D.I. 98] (Bankr. D. Del. Dec. 3, 2019) (scheduling a combined hearing 15 days from petition date); *In re Joerns Woundco Holdings, Inc.*, 19-11401 (JTD) [D.I. 66] (Bankr. D. Del. June 26, 2019) (scheduling combined hearing 31 days from petition date); *In re Arsenal Energy Holdings LLC*, Case No. 19-10226 (BLS) [D.I. 30] (Bankr. D. Del. Feb. 6, 2019) (scheduling combined hearing 9 days from petition date); *In re Rand Logistics, Inc.*, Case No. 18-10175 (BLS) [D.I. 47] (Bankr. D. Del. Jan. 31, 2018) (scheduling combined hearing 29 days from petition date).[8]

26.    The Debtors also request that the Court set 12:00 p.m. (Eastern Standard Time) on November 16, 2020, as the Objection Deadline for filing responses or objections to the adequacy of the information contained in the Disclosure Statement or confirmation of the Plan. The proposed Objection Deadline will provide creditors and equity interest holders with sufficient notice of the deadline for filing objections to the Disclosure Statement and Plan, while still

---

[8]    The referenced orders in this Motion voluminous in nature and, therefore, are not attached to this Motion; however, in accordance with Local Rule 7007-2, the Debtors' proposed counsel has copies of each order and will make them available to this Court or to any party that requests them. Additionally, the orders are available on this Court's CM/ECF PACER site at the cited docket numbers and on the dates specified above.

affording the Debtors and any parties in interest time to file a reply brief and resolve consensually as many of those objections as possible.

27.    The Debtors further request that the Court require any responses or objections to the adequacy of the information contained in the Disclosure Statement or confirmation of the Plan must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Court with proof of service thereof and served on the following parties (the "Notice Parties") so as to be actually received by the Objection Deadline: (a) proposed counsel for the Debtors, DLA Piper LLP (US), 1201 N. Market Street, Suite 2100, Wilmington, Delaware 19801 (Attn.: R. Craig Martin, Esq. [craig.martin@us.dlapiper.com], Stuart M. Brown, Esq. [stuart.brown@us.dlapiper.com] and Aaron S. Applebaum, Esq [aaron.applebaum@us.dlapiper.com]) and 444 West Lake Street, Suite 900, Chicago, Illinois 60606 (Attn.: Richard A. Chesley, Esq. [richard.chesley@us.dlapiper.com], Daniel M. Simon, Esq. [daniel.simon@us.dlapiper.com], Oksana Koltko Rosaluk, Esq. [oksana.koltkorosaluk@us.dlapiper.com], David E. Avraham, Esq. [david.avraham@us.dlapiper.com] and Tara Nair, Esq. [tara.nair@us.dlapiper.com]); (b) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, DE 19801 (Attn.: Joseph J. McMahon, Jr. [joseph.mcmahon@usdoj.gov]); (c) counsel to the Agent under the Revolver/TL Credit Agreement, Seven Year Term Loan Agreement and Bridge Loan Credit Agreement, and the Consenting Lenders, (i) Jones Day, 250 Vesey Street, New York, New York 10281 (Attn.: Benjamin Rosenblum, Esq. [brosenblum@jonesday.com],

Stacey L. Corr-Irvine, Esq. [scooirvine@jonesday.com], and Danielle D. Donovan, Esq. [ddonovan@jonesday.com]) and (ii) Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801 (<u>Attn.</u>: Matthew P. Ward, Esq. [matthew.ward@wbd-us.com]); and (d) any other party entitled to notice under Bankruptcy Rule 2002.

28.     In addition, the Debtors request that they (and other parties in support of the Plan) be permitted to file a combined brief in support of confirmation of the Plan and replies to any objections or responses to confirmation of the Plan received by the Objection Deadline on or before 12:00 p.m. (Eastern Standard Time) on November 20, 2020.

29.     Given the circumstances of these Chapter 11 Cases, the relief requested here is appropriate and consistent with Bankruptcy Rule 9006(c)(1).  The relief requested will assist the Debtors in moving toward expeditious confirmation of the prepackaged plan with the least possible disruption or harm to their businesses.

**2.     Approval of the Solicitation Procedures.**

30.     The Debtors commenced solicitation of Holders of Claims entitled to vote on the Plan prior to the Petition Date in accordance with the Solicitation Procedures described herein, consistent with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

31.     Specifically, on October 9, 2020, the Debtors caused their Solicitation Agent to distribute solicitation packages via e-mail or mail, where applicable (the "<u>Solicitation Packages</u>") to Holders of Class 2 Specified Derivatives Claims and Holders of Class 5 Unsecured Credit Facility Claims (each a "<u>Voting Class</u>," and collectively, the "<u>Voting Classes</u>").  To the extent a Holder holds a claim in multiple Voting Classes, such Holder only received one Solicitation Package, which included the relevant Ballot (as defined herein) for each applicable Voting Class. Each Solicitation Package included (i) a cover letter, (ii) the Disclosure Statement with the exhibits

thereto, including the Plan, the Restructuring Support Agreement (and all exhibits thereto), the Restructuring Term Sheet, the Financial Projections, the Liquidation Analysis, and the Debtors' corporate organizational structure; as well as the relevant ballot, in the form of **Exhibit 3** or **Exhibit 4** attached to the Proposed Order, as applicable (collectively, the "Ballots").

32.     The Solicitation Packages clearly disclose the Debtors' expectation and intention to:  (a) commence these Chapter 11 Cases; (b) request that the Court approve the Solicitation Procedures as set forth in the Disclosure Statement, including setting October 18, 2020, at 5:00 p.m. (Eastern Daylight Time) as the Voting Deadline; (c) request that the Court set an Objection Deadline; and (d) request that the Court set a Combined Hearing.

33.     Holders in the Voting Classes that received the Solicitation Package were directed in the Disclosure Statement and Ballot to follow the instructions contained therein (and described in the Disclosure Statement) to complete and submit their Ballots to cast a vote to accept or reject the Plan.  Each Holder was explicitly informed in the Disclosure Statement and Ballot that such Holder needed to submit its Ballot so that it was *actually received* by the Solicitation Agent on or before the Voting Deadline, October 18, 2020, in order to be counted.  Certain Holders of Claims and Interests were not provided a Solicitation Package because such Holders were conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code because such Holders are Unimpaired.  Additionally, each document comprising the Solicitation Package, the Ballots, and this Motion were subject to extensive review and comment by representatives of the lender parties to the Restructuring Support Agreement.

34.     The Tabulation Procedures include:[9]

---

[9]     The Solicitation Agent will file a declaration regarding the solicitation of votes and tabulation of ballots cast with respect to the Plan as soon as reasonably practicable.

| | |
|---|---|
| **Votes Not Counted** | • Any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim. <br><br> • Any improperly submitted Ballot. <br><br> • Any Ballot actually received by the Solicitation Agent after the Voting Deadline (unless the Debtors determine otherwise or as permitted by the Court). <br><br> • Any Ballot submitted electronically except Ballots submitted through E-Ballot. <br><br> • Any unsigned Ballot or Ballot that does not contain an original signature (provided that an electronic signature collected through E-Ballot will be deemed to be an original signature). <br><br> • Any Ballot sent to the Debtors or the Debtors' agents (other than the Solicitation Agent). <br><br> • Any Ballot submitted by a Holder not entitled to vote pursuant to the Plan. <br><br> • Any Ballot that partially rejects and partially accepts the Plan. <br><br> • Any Ballot not marked to either accept or reject the Plan or marked to both accept and reject the Plan. <br><br> • Any Ballot superseded by a later, timely submitted valid Ballot. |
| **No Vote Splitting** | • Holders are required to vote all of their Claims within a particular Class either to accept or reject the Plan and are not permitted to split any votes. |

35.     As described above, the Debtors distributed the Solicitation Packages and solicited votes to accept or reject the Plan prior to the Petition Date in accordance with sections 1125 and 1126 of the Bankruptcy Code.  *See* 11 U.S.C. § 1125(g) (debtors may commence solicitation prior to filing chapter 11 petitions); 11 U.S.C. § 1126(b) (holders of claims or interests that accepted or rejected a plan before the commencement of a chapter 11 case are deemed to accept or reject the plan so long as the solicitation provided adequate information).

36.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and interests for the purpose of soliciting their votes to accept or reject a plan of reorganization.  Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by Bankruptcy Rule 3017(d) to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of the procedures, and enter any orders the court deems appropriate."  As set forth herein, the Solicitation

Procedures comply with the Bankruptcy Code, the Bankruptcy Rules, and the Debtors seek approval of the Solicitation Procedures, the Ballots, and the Tabulation Procedures.

37.     Indeed, similar procedures have been approved in other chapter 11 cases in this District.  *See, e.g., In re TNT Crane & Rigging, Inc.*, Case. No. 20-11882 (BLS) [D.I. 71] (Bankr. D. Del. Aug. 25, 2020) (approving voting deadlines substantially similar to the procedures utilized here); *In re Pace Industries,* Case No. 20-10927 (MFW) [D.I. 79] (Bankr. D. Del. Apr. 15, 2020) (same); *In re Elk Petroleum, Inc.*, Case No. 19-11157 (LSS) [D.I. 61] (Bankr. D. Del. May 24, 2019) (same); *In re EV Energy Partners, L.P.,* Case No. 18-10814 (CSS) [D.I. 49] (Bankr. D. Del. Apr. 4, 2018) (same).

> a.     *Voting Record Date.*

38.     Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the holders of record of the applicable claims against and interests in a debtor entitled to receive ballots and related solicitation materials are to be determined "on the date specified in the solicitation."  FED. R. BANKR. P. 3018(b).  The Disclosure Statement and the Ballots clearly identified October 7, 2020, as the Voting Record Date, or the date for determining which Holders of Claims in the Voting Classes were entitled to vote to accept or reject the Plan.  The Ballots also require each Holder completing a Ballot to certify the amount of its Claim as of the Voting Record Date.

> b.     *Plan Distribution and Voting Deadline.*

39.     Bankruptcy Rule 3018(b) provides that prepetition acceptances and rejections of a plan are valid only if the plan was transmitted to substantially all the holders of claims or interests in the same voting class, the time for voting was not unreasonably short, and the solicitation complied with section 1126(b) of the Bankruptcy Code.  Further, there is no applicable federal securities law governing the time period for solicitation of votes on the Plan.  The Solicitation Packages were distributed to all Holders of Claims in the Voting Classes on October 9, 2020.  As

clearly set forth in the Disclosure Statement and the Ballots, the Voting Deadline was set as October 18, 2020, at 5:00 p.m. (Eastern Daylight Time), a period which provided nine calendar days to consider and return votes with respect to the Plan. This period of time accords with applicable non-bankruptcy law as there is no provision in any applicable law that requires a set period of time for voting on the Plan.

40.    The Debtors respectfully submit that the Holders of Claims in the Voting Classes had adequate time to consider the Plan and the Disclosure Statement and submit a Ballot before the applicable Voting Deadline. Indeed, this period of time is consistent with, or substantially longer than, the solicitation period in other prepackaged chapter 11 cases. *See, e.g., In re Skillsoft Corporation*, Case No. 20-11532 (MFW) [D.I. 82] (Bankr. D. Del. June 16, 2020) (approving procedures for solicitation that included a 12-day voting period); In *re Blackhawk Mining LLC,* Case No. 19-11595 (LSS) [D.I. 75] (Bankr. D. Del. July 22, 2019) (approving procedures for solicitation that included a 11-day voting period); *In re Elk Petroleum, Inc.*, Case No. 19-11157 (LSS) [D.I. 61] (Bankr. D. Del. May 24, 2019) (approving procedures for solicitation that included a 1-day voting period); *In re Rand Logistics, Inc.*, Case No. 18-10175 (BLS) [D.I. 47] (Bankr. D. Del. Jan. 31, 2018) (approving procedures for solicitation that included a 7-day voting period); *In re Hercules Offshore, Inc.,* Case No. 16-11385 (KJC) (Bankr. D. Del. June 15, 2016) (approving procedures for solicitation that included a 3-day voting period).

41.    The Debtors submit that Holders of Claims in Class 2 and Class 5 are sophisticated market participants and are able to evaluate the merits of the Plan. Further, the transactions proposed in the Plan are the product of extensive arm's-length negotiations among the Debtors, the Consenting Lenders and other parties in interest over many months, and, prior to the commencement of solicitation, the Plan and Disclosure Statement were subject to review and

comment by representatives of the Consenting Lenders. Thus, the Debtors respectfully submit that the voting period in the Solicitation Procedures satisfies the minimum voting period and Holders of Claims in the Voting Classes had adequate time to consider the Plan and Disclosure Statement and to submit a Ballot before the Voting Deadline.

> c.      *The Ballots, Solicitation Package, Additional Materials, and Transmittal.*

42.      Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which substantially conforms to Official Form No. 314, only to "creditors and equity security holders entitled to vote on the plan." Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." FED. R. BANKR. P. 3018(c).

43.      The Debtors caused the Solicitation Packages containing (a) the cover letter, (b) the Disclosure Statement, (c) the Plan, and (d) a Ballot to be transmitted to Holders of Claims in the Voting Classes on October 9, 2020. The Ballots used in the Solicitation Packages are based on Official Form 314, and have been modified, as applicable, to address the particular circumstances of these Chapter 11 Cases to include certain information that the Debtors believe to be relevant and appropriate for Holders of Claims entitled to vote to accept or reject the Plan. *See* FED. R. BANKR. P. 3017(d). The forms of Ballots used in solicitation are attached as **Exhibit 2** and **Exhibit 3** to the Proposed Order. The Debtors respectfully submit that the forms of Ballots comply with the Bankruptcy Rules and, therefore, should be approved.

> d.      *Vote Tabulation.*

44.      As described above, the Debtors are using standard tabulation procedures in tabulating votes. These procedures are consistent with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a). These Tabulation Procedures are also consistent with those

previously used in cases in this District. *See, e.g., Pyxus Int'l, Inc.*, Case No. 20-11570 (LSS) [D.I. 83] (Bankr. D. Del. June 17, 2020) (approving vote tabulation procedures substantially similar to those utilized here); *In re Anna Holdings, Inc.*, Case No. 19-12551 (CSS) [D.I. 98] (Bankr. D. Del. Dec. 3, 2019) (same); *In re Blackhawk Mining LLC,* Case No. 19-11595 (LSS) [D.I. 75] (Bankr. D. Del. July 22, 2019) (same); *In re ATD Corp,* Case No. 18-12221 (KJC) (Bankr. D. Del. Nov. 14, 2018) (same); *In re VER Technologies HoldCo LLC,* Case No. 18-10834 (KG) (Bankr. D. Del. June 4, 2018) (same).

> e.      *The Debtors' Prepetition Solicitation Is Not Subject to (or at a Minimum Is Exempt from Registration and Disclosure Requirements Under) Otherwise Applicable Nonbankruptcy Law.*

45.     Section 1125(g) of the Bankruptcy Code provides:

> [A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.

46.     Section 1126(b) of the Bankruptcy Code provides:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—(1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

47.     Prepetition solicitation must therefore either comply with generally applicable federal or state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited holders must receive "adequate information" under section 1125 of the Bankruptcy Code.

48.     The Debtors respectfully submit that their prepetition solicitation is not subject to, or at a minimum, exempt from the registration requirements of the Securities Act of 1933 (the "Securities Act") under one or more of the exceptions from registration provided thereunder, including section 4(a)(2) and/or Regulation D thereof, exempting the Debtors' prepetition solicitation from the disclosure and registration requirements of the Securities Act, state "Blue Sky" laws, or any similar rules, regulations, or statutes.  Specifically, section 4(a)(2) of the Securities Act and Regulation D thereof create an exemption from registration for transactions not involving a "public offering."  The prepetition solicitation did not constitute a public offering, because (a) the Debtors reasonably believe that all Holders of Claims in the Voting Classes are "accredited investors" as that term is used in the Securities Act and (b) the manner in which the Debtors conducted the solicitation did not otherwise constitute a general solicitation.

49.     Therefore, the requirements of section 1126(b)(1) of the Bankruptcy Code are inapplicable to the Debtors' prepetition solicitation.  As discussed more fully below, the Debtors will seek a determination from the Court at the Combined Hearing that all solicited Holders received "adequate information" as defined by section 1125(a) of the Bankruptcy Code in accordance with section 1126(b)(2) of the Bankruptcy Code.

**3.     Approval of the Disclosure Statement at the Combined Hearing.**

50.     By this Motion, the Debtors request that, at the Combined Hearing, the Court find that the Disclosure Statement contains "adequate information" as defined in section 1125(a) of the Bankruptcy Code.  *See* 11 U.S.C. §§ 1125(a)(1), 1126(b)(2) (because there is no non-bankruptcy law governing the solicitation of Holders of Claims prior to the Debtors commencing these Chapter 11 Cases, such solicitation must have been based on the Debtors providing such Holders "adequate information").

51.     The Disclosure Statement contains adequate information, because it is extensive and comprehensive and includes sufficient detail for a Holder of a Claim evaluating the Plan to make an informed decision concerning whether to vote to accept or reject the Plan.  What constitutes "adequate information" is based on the facts and circumstances of each case, but the focus is on whether sufficient information is provided to enable parties to vote in an informed way. That standard is easily met here.[10]  Here, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including, without limitation:

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Debtors' Corporate History, Structure, and Business Overview | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | Article IV |
| Prepetition Restructuring Efforts | An overview of the Debtors' liquidity issues and efforts in response to work constructively with their existing term loan lenders to develop a long-term solution to properly capitalize the Debtors and enable them to focus on implementing their business plan and growth initiatives. | Article V |
| Liquidation Analysis | An analysis of the liquidation value of the Debtors. | Articles XI. Exhibit E |
| Financial Projections | An overview of the Debtors' financial projections. | Article XI; Exhibit D |
| Risk Factors | Certain risks associated with the Debtors' business, as well as certain risks associated with forward-looking statements, and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. | Article IX |
| Solicitation and Voting Procedures | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | Article X |
| Confirmation of the Plan | Confirmation procedures and statutory requirements for confirmation and consummation of the Plan. | Article XI |

---

[10]     *See* 11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . ."); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5907 ("The information required will necessarily be governed by the circumstances of the case.").

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Certain Securities Laws Matters | A description of the applicability of section 1145 of the Bankruptcy Code and the retention of Existing Equity Interests | Article XII |
| Certain United States Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax law consequences of the Plan. | Article XIII |
| Recommendation | A recommendation by the Debtors that Holders of Claims in the Voting Classes should vote to accept the Plan. | Article XIV |

52.     In addition, and as noted above, the Disclosure Statement and the Plan were subject to extensive review and comment by the Consenting Lenders (consisting of certain members in the Voting Classes) and their respective advisors.   Accordingly, the Debtors submit that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code and should be approved.

**4.     Waiver of Certain Solicitation Package Mailing Requirements.**

53.     The Plan provides that specific Classes of Claims against, or Equity Interests in, the Debtors are presumed to accept the Plan (collectively, the "Non-Voting Holders"). Specifically, the Plan provides that Holders of Claims or Equity Interests in the following Classes are Unimpaired (collectively, the "Unimpaired Classes"): Classes 1, 3, 4, 6, 7, 8 and 9.   Pursuant to section 1126(f) of the Bankruptcy Code, each holder of a claim or interest in an unimpaired class is "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required."   11 U.S.C. § 1126(f).   Accordingly, Holders of Claims and Equity Interests in each of the Unimpaired Classes are conclusively presumed to accept the Plan and were not solicited.

54.     The Debtors respectfully request that the Court waive the requirement that they mail a copy of the Solicitation Package to Non-Voting Holders.   *See* FED. R. BANKR. P. 3017(d)

(requiring transmission of a court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders unless the court orders otherwise). Bankruptcy Rule 3017(d) applies, in relevant part, "[u]pon approval of a disclosure statement." Accordingly, Bankruptcy Rule 3017 may be deemed not to apply here considering the prepetition solicitation process employed. *See also* 11 U.S.C. § 1126(f)–(g) (providing that solicitation of parties either presumed to accept or deemed to reject is unnecessary). Nevertheless, the Debtors are making this request out of an abundance of caution. Distributing the Solicitation Packages to non-voting creditors or equity holders is costly and administratively burdensome. The Debtors submit that their resources should be preserved for the benefit of all stakeholders and that their resources should not be distracted by having to satisfy this mailing requirement.

55.     In lieu of furnishing each of the Non-Voting Holders with a copy of the Plan and Disclosure Statement, the Debtors propose to serve such Non-Voting Holders the Combined Hearing Notice, which sets forth, among other things, a summary of the Plan and the treatment of such Non-Voting Holders' Claims or Equity Interests, as well as the manner in which a copy of the Plan and the Disclosure Statement may be obtained. The Debtors also made the Solicitation Package (excluding the Ballots) publicly available to all parties at no cost on their restructuring website: https://cases.primeclerk.com/preitballots.

56.     Similar waivers have been granted in other chapter 11 cases in this District. *See, e.g., Pyxus Int'l, Inc.*, Case No. 20-11570 (LSS) [D.I. 83] (Bankr. D. Del. June 17, 2020); *In re Skillsoft Corporation*, Case No. 20-11532 (MFW) [D.I. 82] (Bankr. D. Del. June 16, 2020); *In re Anna Holdings, Inc.*, Case No. 19-12551 (CSS) [D.I. 98] (Bankr. D. Del. Dec. 3, 2019); *In re Blackhawk Mining LLC*, Case No. 19-11595 (LSS) [D.I. 75] (Bankr. D. Del. July 22, 2019); *In re*

*Elk Petroleum, Inc.*, Case No. 19-11157 (LSS) [D.I. 61] (Bankr. D. Del. May 24, 2019); *In re EV Energy Partners, L.P.,* Case No. 18-10814 (CSS) (Bankr. D. Del. Apr. 4, 2018) (same).

57.     The Solicitation Procedures undertaken by the Debtors and described herein with respect to the Non-Voting Holders comply with the Bankruptcy Code and should be approved. Accordingly, the Debtors respectfully request that the Court approve the Solicitation Procedures with respect to these Non-Voting Classes.

**5.      Approval of the Form and Manner of the Combined Hearing Notice and the Publication Notice.**

58.     The Debtors request approval of the Combined Hearing Notice, substantially in the form attached to the Proposed Order as **Exhibit 1** and the Publication Notice, substantially in the form attached to the Proposed Order as **Exhibit 2**.

59.     In accordance with Bankruptcy Rules 2002 and 3017(d), the Combined Hearing Notice will:  (a) provide notice of the commencement of these Chapter 11 Cases; (b) provide a brief summary of the Plan; (c) disclose the date and time of the Confirmation Hearing; (d) disclose the date and time of the Objection Deadline and the procedures for objecting to the Disclosure Statement and the Plan; and (e) provide instructions for obtaining copies of the Disclosure Statement and Plan.

60.     Bankruptcy Rule 2002(f)(1) provides that notice of "the order for relief" shall be sent by mail to all creditors.  Bankruptcy Rule 2002(d) similarly provides that, unless otherwise ordered by the court, notice of the "order for relief" shall be given to all of the Debtors' equity security holders.

61.     The Combined Hearing Notice will be served upon all known Holders of Claims against or Interests in the Debtors, which service will occur no later than one business day following entry of the Proposed Order, or as soon as reasonably practicable thereafter.  The

Combined Hearing Notice likewise will be served upon the Voting Classes and Non-Voting Classes.

62.     In addition, Bankruptcy Rule 2002(1) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  The Debtors request that the Court authorize them, in their sole discretion, to provide a supplemental publication notice (the "Publication Notice") of the Combined Hearing as soon as reasonably practicable following the entry of the Proposed Order in the national edition of the *New York Times National Edition* or another nationally-circulated newspaper and/or regional newspapers to inform (a) those creditors who are unknown to, or not reasonably ascertainable by, the Debtors and (b) those creditors with potential claims unknown by the Debtors.  FED. R. BANKR. P. 2002(1).  In addition, the Debtors will cause the Combined Hearing Notice to be posted electronically on the case website maintained by the Solicitation Agent: http://cases.primeclerk.com/PREIT.  Further, the Debtors will also cause the Combined Hearing Notice filed publicly as part of a form Form 8-K.

63.     To provide another layer of notice to parties in interest in the Chapter 11 Cases, the Debtors will post to the Solicitation Agent's website various chapter 11 documents, including the following: (i) the Plan; (ii) the Disclosure Statement; (iii) this Motion and any orders entered in connection with this Motion; and (iv) the Combined Hearing Notice.

64.     Therefore, the Debtors respectfully submit that the proposed service of the Combined Hearing Notice will provide sufficient notice to all parties in interest in the Chapter 11 Cases of the commencement of such cases, the date, time and place of the Combined Hearing and the procedures for objecting to the adequacy of the Disclosure Statement or the confirmation of the Plan.

**6.      Procedures in Respect of the Assumption of Executory Contracts or Unexpired Leases Pursuant to the Plan.**

65.      The Plan provides that  as of the Effective Date the Debtors shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Court.  The exceptions to this deemed assumption are: (a) the Plan provides otherwise or (b) such Executory Contract or Unexpired Lease (i) was previously assumed or rejected by a Debtor, pursuant to final order of the Court; (ii) previously expired or terminated pursuant to its own terms; or (iii) is the subject of a motion to reject filed on or before the Effective Date.  The assumption of Executory Contracts and Unexpired Leases under the Plan may include the assignment of contracts with one or more Reorganized Debtors.   The order confirming the Plan will constitute an order of the Court approving the above-described assumptions and assignments.

66.      Through various first day pleadings, the Debtors are seeking relief to pay General Unsecured Claims of the Debtors in the ordinary course of business.  Moreover, the Plan provides that the Reorganized Debtors shall satisfy any monetary defaults under any Executory Contract or Unexpired Lease to be assumed under the Plan, to the extent required by section 365(b)(1) of the Bankruptcy Code, upon assumption thereof.  The Debtors intend to honor their obligations and continue to perform under their Executory Contracts and Unexpired Leases in the ordinary course of business.  Accordingly, the Debtors do not believe there are any defaults under their Executory Contracts and Unexpired Leases and, therefore, do not intend to file a cure schedule.  Rather, the Debtors request Court approval of the following Executory Contract Procedures:

(a)      The Combined Hearing Notice will notify all counterparties to Executory Contracts and Unexpired Leases with the Debtors that such Executory Contracts and Unexpired Leases will be assumed by the Debtors under the Plan, and that any

monetary defaults thereunder will be satisfied upon assumption thereof as of the Effective Date.

(b)     If a counterparty to any Executory Contract or Unexpired Lease believes any amounts are due as a result of such Debtor's monetary default thereunder or objects to the assumption of an Executory Contract or Unexpired Lease under the Plan, including an objection regarding the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), (each, a "Treatment Objection"), it may assert a Treatment Objection against the Debtors, subject to all defenses the Debtors may have with respect to such Treatment Objection.

(c)     The Debtors or the Reorganized Debtors, as applicable, may settle any Treatment Objections without any further notice to or action, order, or approval of the Court.

(d)     Any Treatment Objection must be filed with the Court on or before 12:00 p.m. (Eastern Daylight Time) on November 16, 2020 (the "Treatment Objection Deadline"), or such other deadline as may be established by the Court.

(e)     The Debtors reserve the right at any time prior to the Effective Date to move to reject any Executory Contract or Unexpired Lease if the Debtors are not able to reach a resolution on a Treatment Objection.

(f)     The Debtors request that the Court authorize the Debtors to file replies to any timely-filed objections or responses by 12:00 p.m. (Eastern Standard Time) on November 20, 2020.

Any counterparty to an Executory Contract or Unexpired Lease that did not timely file a Treatment Objection will be deemed to have consented to such assumption. Any proof of claim filed with respect to an Executory Contract or Unexpired Lease that is assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Court.

67.     The Debtors respectfully submit that the Executory Contract Procedures are appropriate under the circumstances. Pursuant to the Executory Contract Procedures, the Debtors' Solicitation Agent will serve the Combined Hearing Notice on all known counterparties to Executory Contracts and Unexpired Leases by the next business day following the entry of the Proposed Order (or as soon as reasonably possible). The Combined Hearing Notice will alert such counterparties that all Executory Contracts and Unexpired Leases with the Debtors will be

assumed under the Plan and that any monetary defaults thereunder will be satisfied upon assumption thereof in the ordinary course of business.  The Combined Hearing Notice will be provided to such counterparties promptly following the entry of the Proposed Order, providing such parties with at least fourteen days' notice of the deadline to object to the proposed treatment of the applicable Executory Contract or Unexpired Lease.  This process is designed to facilitate a prompt and efficient completion of the restructuring while also affording counterparties adequate time to voice any concerns regarding the assumption of their Executory Contracts and Unexpired Leases.

**7.      Cause Exists for the U.S. Trustee Not to Form a Creditors' Committee and Not to Convene a Meeting of Creditors or Equity Holders and for the Creditors Not to File SOFAs and Schedules.**

68.      Section 1102(a)(1) provides that, "... as soon as practicable after the order for relief under chapter 11 of this title, the United States Trustee shall appoint a committee  of creditors holding unsecured claims and may appoint additional  committees of creditors or of equity security holders as the United States Trustee deems appropriate."   In addition, section 341 of the Bankruptcy Code allows a court to waive the requirement of a meeting of creditors or equity holders if a debtor has filed a plan on the petition date and solicited acceptances of a plan prior to the commencement of a chapter 11 case.  Specifically, section 341(e) of the Bankruptcy Code provides that:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States Trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

69.      In addition, as described further in the First Day Declaration, the Debtors' prepackaged Plan contemplates that virtually all claims—including General Unsecured Claims— are reinstated and Unimpaired under the Plan.  Further, because votes on the Plan were solicited

prior to the Petition Date, and all classes of claims voted overwhelmingly to accept the Plan, the Debtors' expectation is that they will emerge from chapter 11 in a few weeks, just before the Thanksgiving holiday.  In furtherance of these efforts, the Debtors have also filed a motion to pay pre-petition trade creditors in the ordinary course to minimize any disruptions to the Debtors' businesses. As a result, because many of the creditors listed on the Debtors' consolidated list of 30 unsecured creditors will be paid their pre-petition amounts in the ordinary course on a post-petition basis (and, in fact, some or all of such creditors may be paid in full shortly after the commencement of these Chapter 11 Cases), empaneling a creditors' committee in this case would not serve its intended purpose as in most traditional chapter 11 cases.  The Debtors, therefore, believe that no party in interest will be prejudiced by the U.S. Trustee's decision not to form a committee of unsecured creditors and lack of a meeting of creditors in these Chapter 11 Cases.

70.     Accordingly, the Debtors submit that the formation of a committee of unsecured creditors under section 1102 of the Bankruptcy Code and the meeting of creditors contemplated by section 341 of the Bankruptcy Code need not to occur if the Debtors obtain confirmation of the Plan within forty-five days of the Petition Date.

71.     The Debtors also request that the requirement to file Schedules, 2015.3 Reports, and SOFAs be waived in the event the Plan is confirmed within forty-five days of the Petition Date.  Pursuant to Local Rule 1007-1(b), the Debtors are already entitled to a 30-day extension of the requirement to file their Schedules and SOFAs because the Debtors have more than 200 creditors.  The Court has authority to grant a further extension "for cause" pursuant to Bankruptcy Rule 1007(c) and Local Rule 1007-l(b).  BANKR. D. DEL. R. 1007-1(b).  Here, cause exists to further extend the deadline, because given the prepackaged and substantially consensual nature of these Chapter 11 Cases, the Schedules, 2015.3 Reports, and SOFAs would be of limited utility to

most parties in interest—the Debtors already have enough support to meet the voting requirements of section 1126(c) of the Bankruptcy Code.  The minimal benefit of requiring the Debtors to prepare the Schedules, 2015.3 Reports, and SOFAs would be significantly outweighed by the substantial expenditure of time and resources the Debtors will be required to devote to the preparation and filing of these documents.  For these reasons, the Court should only conditionally require the Debtors to file Schedules, 2015.3 Reports, and SOFAs if the Plan is not confirmed within forty-five days of the Petition Date.

72.    Courts have frequently waived the requirements for the U.S. Trustee to convene a meeting of creditors and for a debtor to file Schedules, 2015.3 Reports, and SOFAs in other prepackaged chapter 11 cases.  *See, e.g., In re Vivus, Inc.*, Case No. 20-11779 (LSS) [D.I. 73] (Bankr. D. Del. July 10, 2020); *In re Reva Medical, Inc.*, No. 20-10072 (JTD) [D.I. 39] (Bankr. D. Del. Jan. 16, 2020); *In re Anna Holdings, Inc.*, Case No. 19-12551 (CSS) [D.I. 98] (Bankr. D. Del. Dec. 3, 2019); *In re Blackhawk Mining LLC,* Case No. 19-11595 (LSS) [D.I. 75] (Bankr. D. Del. July 22, 2019); *In re Triangle Petroleum Corp.,* Case No. 19-11025 (MFW) [D.I. 27] (Bankr. D. Del. May 8, 2019).  For the reasons discussed above, similar relief is appropriate in these Chapter 11 Cases as well.

73.    The Debtors ask that the requested relief be granted without prejudice to the Debtors' ability to seek further extension or modification of the requirements for the U.S. Trustee to convene a meeting of creditors and for the Debtors to file Schedules, 2015.3 Reports, and SOFAs.  The Debtors also request that the Court authorize the Debtors to further extend the deadline to convene a meeting of creditors and file Schedules, 2015.3 Reports, and SOFAs without filing a supplemental motion, and without further order from the Court, provided that the Debtors obtain the advance consent of the U.S. Trustee.

## NOTICE

74.     Notice of this Motion will be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Office of the United States Attorney for the District of Delaware; (c) each of the parties included on the Debtors' consolidated list of thirty largest unsecured creditors; (d) the Internal Revenue Service; (e) the U.S. Securities and Exchange Commission; (f) the swap counterparties; (g) counsel to the Agent under the Revolver/TL Credit Agreement, Seven Year Term Loan Agreement and Bridge Loan Credit Agreement; (h) counsel to the Consenting Lenders; (i) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (j) any other party in interest entitled to notice of this Motion.  The Debtors respectfully submit that such notice is sufficient, and no further notice of this Motion is required under the circumstances.

## NO PRIOR REQUEST

75.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtors respectfully request that the Court (i) enter the order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion, and (ii) grant such other and further relief to the Debtors as the Court may deem just and proper.

Dated: November 1, 2020
       Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

  */s/  R. Craig Martin*
R. Craig Martin (DE 5032)
Stuart Brown (DE 4050)
Aaron S. Applebaum (DE 5587)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone:(302) 468-5700
Facsimile:(302) 394-2341
Email: craig.martin@us.dlapiper.com
       aaron.applebaum@us.dlapiper.com

 -and-

Richard A. Chesley (*pro hac vice* pending)
Daniel M. Simon (*pro hac vice* pending)
Oksana Koltko Rosaluk (*pro hac vice* pending)
David E. Avraham (*pro hac vice* pending)
Tara Nair (*pro hac vice* pending)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: richard.chesley@us.dlapiper.com
      daniel.simon@us.dlapiper.com
      oksana.koltkorosaluk@us.dlapiper.com
      david.avraham@us.dlapiper.com
      tara.nair@us.dlapiper.com

*Proposed Counsel for the Debtors*