**<u>EXHIBIT A</u>**

**(Proposed Order)**

EAST\176958791

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------- x

In re: : Chapter 11

:

PENNSYLVANIA REAL ESTATE INVESTMENT : Case No. 20-_____ (___)
TRUST, *et al.*,[1] :

: (Jointly Administered)

    Debtors. :

---------------------------------------------------------------- x **Re D.I.: ___**

**ORDER (I) SCHEDULING
THE COMBINED HEARING ON ADEQUACY OF THE DISCLOSURE STATEMENT
AND CONFIRMATION OF THE PREPACKAGED PLAN, (II) ESTABLISHING
DEADLINES TO OBJECT TO THE DISCLOSURE STATEMENT AND PREPACKAGED
PLAN, (III) APPROVING THE PREPETITION SOLICITATION PROCEDURES,
(IV) APPROVING THE FORM AND MANNER OF THE COMBINED HEARING
NOTICE, (V) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE
ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (VI)
CONDITIONALLY DIRECTING THAT A MEETING OF CREDITORS NOT BE
CONVENED, (VII) WAIVING THE REQUIREMENT OF FILING SCHEDULES,
STATEMENTS OF FIANNCIAL AFFAIRS AND RULE 2015.3 REPORTS
AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"), (a) scheduling the Combined

Hearing on the adequacy of the Disclosure Statement and confirmation of the Plan, (b) establishing

the Objection Deadline, the Reply Deadline, and approving related procedures, (c) approving the

Solicitation Procedures, (d) approving the form and manner of the Combined Hearing Notice and

Publication Notice, (e) conditionally, if the Plan is confirmed within forty-five days of the Petition

Date, (i) directing that the U.S. Trustee not to convene a meeting of creditors and (ii) waiving the

requirement to file Schedules, 2015.3 Reports, and SOFAs, all as more fully set forth in the

---

[1]       A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as **Schedule 1**. The corporate headquarters and the mailing address for the Debtors listed above is 2005 Market Street, Suite 1000, Philadelphia, PA 19103.

[2]       Capitalized terms used but not otherwise defined have the meanings given to them in the Motion or the Plan, as applicable.

Motion, and (f) allowing the notice period for the Disclosure Statement and Combined Hearing to run simultaneously having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012, (ii) this Court may enter a final order consistent with Article III of the United States Constitution, (iii) this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (iv) venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409, and (v) the Debtors' notice of the Motion and opportunity for a hearing were adequate and appropriate under the circumstances and no other or further notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested in the Motion at a hearing before this Court (the "Hearing"); and having determined that the legal and factual bases set forth in the Motion and the First Day Declaration establish just cause for the relief granted in this Order; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      The Combined Hearing, at which time this Court will consider, among other things, the adequacy of the Disclosure Statement and confirmation of the Plan, shall be held on **November 24, 2020 at_____:____ ____.m. (Eastern Standard Time)**.  The Combined Hearing may be continued from time to time by this Court without further notice other than adjournments announced in open court or in the filing of a notice or hearing agenda in the Chapter 11 Cases and notice of such adjourned date(s) will be available on the electronic case filing docket.

3.      Any responses or objections to adequacy of the Disclosure Statement or confirmation of the Plan must have been received as set forth in paragraph 4 of this Order by **12:00 p.m. (Eastern Standard Time) on November 16, 2020**.

4.      Any responses or objections to the assumption of Executory Contracts and Unexpired Leases, the adequacy of the Disclosure Statement or confirmation of the Plan must:

a.      be in writing;

b.      comply with the Bankruptcy Rules and the Local Rules;

c.      state the name and address of the objecting party and the amount and nature of the Claim owned by such entity;

d.      state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and

e.      be filed with the Court and served so as to be **actually received no later than 12:00 p.m. (Eastern Standard Time) on November 16, 2020**, by: (a) proposed counsel for the Debtors, DLA Piper LLP (US), 1201 N. Market Street, Suite 2100, Wilmington, Delaware 19801-1147 (Attn.: R. Craig Martin, Esq. [craig.martin@us.dlapiper.com] and Aaron S. Applebaum, Esq. [aaron.applebaum@us.dlapiper.com]) and 444 West Lake Street, Suite 900, Chicago, Illinois 60606 (Attn.: Richard A. Chesley, Esq. [richard.chesley@us.dlapiper.com], Daniel M. Simon [daniel.simon@us.dlapiper.com], Oksana Koltko Rosaluk, Esq. [oksana.koltkorosaluk@us.dlapiper.com], David E. Avraham, Esq. [david.avraham@us.dlapiper.com], and Tara Nair, Esq. [tara.nair@us.dlapiper.com]); (b) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, DE 19801 (Attn.: Joseph J. McMahon, Jr., Esq. [joseph.mcmahon@usdoj.gov]); (c) (i) counsel to the agent under the Revolver/TL Credit Agreement, Seven Year Term Loan Agreement and Bridge Loan Credit Agreement and Consenting Lenders, Jones Day, 250 Vesey Street, New York, New York 10281 (Attn: Benjamin Rosenblum, Esq. [brosenblum@jonesday.com], Stacey L. Corr-Irvine, Esq. [scorrirvine@jonesday.com], and Danielle D. Donovan, Esq. [ddonovan@jonesday.com] and (ii) Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Matthew P. Ward, Esq. [matthew.ward@wbd-us.com] and (d) any other party entitled to notice under Bankruptcy Rule 2002 (collectively, the "Notice Parties").

5.    Any brief in support of confirmation of the Plan or any reply to any objections to the adequacy of the Disclose Statement or to any Treatment Objection must be filed by 12:00 p.m. (Eastern Standard Time) on November 20, 2020.  To the extent applicable, Local Rule 9006-1 is hereby waived in its entirety.

6.    The Proposed Confirmation Schedule, as set forth below, is hereby approved in its entirety.

| Event | Date |
|---|---|
| Voting Record Date[3] | October 7, 2020 |
| Commencement of Solicitation | October 9, 2020 |
| Voting Deadline | October 18, 2020, at 5:00 p.m. (Eastern Daylight Time) |
| Petition Date | November 1, 2020 |
| Combined Hearing Notice and Publication Notice | One business day after entry of the Proposed Order, or as soon as practicable thereafter |
| Plan Supplement Deadline[4] | November 9, 2020, at 12:00 p.m. (Eastern Standard Time) or seven days prior to the Objection Deadline |
| Objection Deadline and Treatment Objection Deadline | November 16, 2020, at 12:00 p.m. (Eastern Standard Time) |
| Confirmation Order, Confirmation Brief and Reply Deadline | November 20, 2020 at 12:00 p.m. (Eastern Standard Time), or the deadline to file the agenda |
| Combined Hearing | November 24, 2020 at ____:__ _.m (Eastern Standard Time) |

7.    The Debtors are authorized to combine the notice of the Combined Hearing and the Objection Deadline (and related procedures) with the notice of commencement of Chapter 11 Cases.

---

[3]    The "Voting Record Date" is the date as of which a holder of record of a claim entitled to vote on the Plan must have held such claim to cast a vote to accept or reject the Plan.

[4]    The Debtors have been working in good faith with counsel to the Consenting Lenders to prepare the documents that will be filed as part of the Plan Supplement.

8.      The Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 1**, and service thereof comply with the requirements of the Bankruptcy Code and the Bankruptcy Rules and are approved as sufficient and appropriate notice of the Combined Hearing under the circumstances.  The Debtors shall cause the Solicitation Agent to serve a copy of the Combined Hearing Notice by no later than one business day, or as soon as reasonably practicable, after entry of this Order.

9.      The Debtors are authorized to e-mail or mail the Combined Hearing Notice to the Non-Voting Holders, in accordance with the terms of this Order, in lieu of sending such Non-Voting Holders a copy of the Plan or the Disclosure Statement and, except to the extent necessary to comply with Local Rule 3017-1(c), the requirements under the Bankruptcy Rules or the Local Rules, including Bankruptcy Rule 3017(d), to transmit a copy of the Plan and the Disclosure Statement to Non-Voting Holders are hereby waived with respect to such Non-Voting Holders; *provided*, *however*, that the Debtors will do so upon request from such parties.

10.     The Debtors are authorized, but not directed, pursuant to Bankruptcy Rule 2002(a), to publish the Publication Notice, substantially in the form attached hereto as **Exhibit 2**, as soon as reasonably practicable following the entry of this Order in the national edition of *New York Times National Edition* or another nationally circulated newspaper and/or regional newspapers and electronically on the Debtors' restructuring website: http://cases.primeclerk.com/PREIT, and file the same on this Court's docket, which Publication Notice shall constitute good and sufficient notice of the Combined Hearing and the Objection Deadline (and related procedures) to persons who do not otherwise receive the Combined Hearing Notice by mail.

11.     For avoidance of doubt, the Debtors shall also serve the Combined Hearing Notice on: (a) the U.S. Trustee, (b) the Office of the United States Attorney for the District of Delaware,

(c) the Internal Revenue Service; (d) the United States Securities and Exchange Commission; (e) any statutory committee appointed in these Chapter 11 Cases; (f) all state and local taxing authorities in the states in which the Debtors have tax liability; (g) all federal, state and local authorities that regulate any portion of the Debtors' business; and (h) all counterparties to executory contracts and unexpired leases.

12.      Subject to entry of the order approving the Plan (the "<u>Confirmation Order</u>") or other order of this Court, the Voting Record Date of October 7, 2020, and the Voting Deadline of October 18, 2020, at 5:00 p.m. (Eastern Daylight Time) with respect to Class 2 Specified Derivatives Claims and Class 5 Unsecured Credit Facility Claims are conditionally approved.

13.      Subject to entry of the Confirmation Order or other order of this Court, the Solicitation Procedures set forth in the Motion that the Debtors used to distribute the Solicitation Packages and to solicit acceptances and rejections of the Plan and to tabulate votes to accept or reject the Plan satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and those Solicitation Procedures are conditionally approved.

14.      Subject to entry of the Confirmation Order or other order of this Court, the Ballots, substantially in the forms attached hereto as **Exhibit 3** and **Exhibit 4**, and the terms and conditions therein, are conditionally approved.

15.      The Executory Contract Procedures are approved; *provided*, *however*, that this Court retains jurisdiction after the Effective Date to address any dispute between the Debtors and a counterparty to an Executory Contract or Unexpired Lease regarding amounts allegedly due as a result of a Debtor's pre-assumption default thereunder, regardless of whether a Treatment Objection is filed by a counterparty.

16.     The Debtors shall serve each non-Debtor party to an Executory Contract or Unexpired Lease that the Debtors propose to assume with the Combined Hearing Notice substantially in the form attached hereto as **Exhibit 1**.

17.     The Debtors are not required to mail a copy of the Plan or the Disclosure Statement to Holders of Claims that are Unimpaired and conclusively presumed to accept the Plan but shall do so upon request from any such Holder of an Unimpaired Claim.

18.     The Debtors shall cause to be posted to their restructuring website, http://cases.primeclerk.com/PREIT, maintained by the Solicitation Agent, various chapter 11 related documents, including the following:  (a) the Plan; (b) the Disclosure Statement; (c) the Motion and any orders entered in connection with the Motion; and (d) the Combined Hearing Notice.

19.     The notice and objection procedures set forth in this Order and the Motion constitute good and sufficient notice of the Combined Hearing; commencement of these Chapter 11 Cases; and the deadline and procedures for objection to approval of the Solicitation Procedures, adequacy of the Disclosure Statement, and confirmation of the Plan, and no other or further notice shall be necessary.

20.     The U.S. Trustee may convene a meeting of creditors pursuant to section 341(e) of the Bankruptcy Code, but shall not be required to do so if the Plan is confirmed within forty-five days of the Petition Date.

21.     The Debtors are not required to file the Schedules, 2015.3 Reports, and SOFAs if the Plan is confirmed within forty-five days after the Petition Date, without prejudice to the Debtors' rights to request further extensions thereof.

22.      Notwithstanding anything in the Motion or this Order to the contrary, the U.S. Trustee may seek formation of a committee of unsecured creditors at any time after the Petition Date.

23.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, including Bankruptcy Rule 6004(h), (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the Debtors are not subject to any stay in the implementation, enforcement or realization of relief granted in this Order; and (c) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

24.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

26.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## <u>EXHIBIT 1</u>

**(Combined Hearing Notice)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------------- x
```
In re:                                      : Chapter 11
                                            :
PENNSYLVANIA REAL ESTATE INVESTMENT : Case No. 20-_____ (___)
TRUST, *et al.*,[1]                         :
                                            : (Jointly Administered)
          Debtors.                          x
```
-------------------------------------------------------------- 
```

**NOTICE OF (I) COMMENCEMENT OF PREPACKAGED CHAPTER 11
BANKRUPTCY CASES, (II) COMBINED HEARING ON THE DISCLOSURE
STATEMENT, CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER
11 PLAN, AND RELATED MATTERS, AND (III) OBJECTION DEADLINE**

**NOTICE IS HEREBY GIVEN** as follows:

1.      On _____, 2020, Pennsylvania Real Estate Investment Trust and its affiliated debtors (collectively, the "Debtors") commenced a solicitation of votes from the Holders of Specified Derivative Claims and Holders of Unsecured Credit Facility Claims pursuant to the *Joint Prepackaged Chapter 11 Plan of Reorganization of Pennsylvania Real Estate Investment Trust and Certain of Its Direct and Indirect Subsidiaries* (as may be amended, supplemented or otherwise modified from time to time, the "Plan")[2], attached as Exhibit A to the *Disclosure Statement Relating to the Joint Prepackaged Chapter 11 Plan of Reorganization of Pennsylvania Real Estate Investment Trust and Certain of Its Direct and Indirect Subsidiaries* (as may be amended, supplemented or otherwise modified from time to time, the "Disclosure Statement").

2.      The Plan was developed in accordance with the terms of that certain Restructuring Support Agreement, dated as of October 7, 2020, among the Debtors and certain prepetition lenders (collectively, the "Consenting Lenders") (as amended from time to time, the "Restructuring Support Agreement"). Among other things, the Restructuring Support Agreement obligates the Consenting Lenders to vote to accept the Plan and support the Debtors' restructuring.

3.      On _____, 2020 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

---

[1]      A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is attached the Plan as **Schedule 1**. The corporate headquarters and the mailing address for the Debtors is 2005 Market Street, Suite 1000, Philadelphia, PA 19103.

[2]      Capitalized terms used but not defined have the meanings given to them in the Plan. The summaries of the Plan and Disclosure Statement in this Notice are not precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. If there is a discrepancy between this Notice and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

"Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

4.      On the Petition Date, the Debtors filed the Plan [Docket No. [•]] and the Disclosure Statement [Docket No. [•]]. Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' notice, claims and solicitation agent, Prime Clerk LLC (the "Solicitation Agent"), at http://cases.primeclerk.com/PREIT or by contacting the Debtors' proposed counsel, DLA Piper LLP (US), 1201 N. Market Street, Suite 2100, Wilmington, Delaware 19801-1147 (Attn.: R. Craig Martin, Esq. [craig.martin@us.dlapiper.com] and Aaron S. Applebaum, Esq. [aaron.applebaum@us.dlapiper.com]) and 444 West Lake Street, Suite 900, Chicago, Illinois 60606 (Attn.: Richard A. Chesley, Esq. [richard.chesley@us.dlapiper.com], Daniel M. Simon [daniel.simon@us.dlapiper.com], Oksana Koltko Rosaluk, Esq. [oksana.koltkorosaluk@us.dlapiper.com], David E. Avraham, Esq. [david.avraham@us.dlapiper.com], and Tara Nair, Esq. [tara.nair@us.dlapiper.com]).

**INFORMATION REGARDING THE PLAN AND DISCLOSURE STATEMENT**

**Voting Record Date**.  The voting record date was **October 7, 2020**, which was the date for determining which Holders of Claims in Class 2 and Class 5 of the Plan were entitled to vote.

**Combined Hearing.**  A combined hearing to consider the adequacy of the Disclosure Statement, confirmation of the Plan and an objections to any of the foregoing, and any other matter that may properly come before the Court, will be held before The Honorable _____, at the Court, 824 North Market Street, __ Floor, Courtroom __, Wilmington, Delaware 19081, on November __, 2020 at _____ .m (Eastern Standard Time) (the "Combined Hearing").  The Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Combined Hearing and will be available on the electronic case filing docket and the Solicitation Agent's website at http://cases.primeclerk.com/PREIT.

**Objections to the Plan and Disclosure Statement**.  Any responses or objections (each, an "Objection") to the Disclosure Statement and/or the Plan must be filed with the Court and served so as to be **actually received** no later than **12:00 p.m. (Eastern Standard Time) on November 16, 2020** by the following parties:  (a) proposed counsel for the Debtors, DLA Piper LLP (US), 1201 N. Market Street, Suite 2100, Wilmington, Delaware 19801-1147 (Attn.: R. Craig Martin, Esq. [craig.martin@us.dlapiper.com] and Aaron S. Applebaum, Esq. [aaron.applebaum@us.dlapiper.com]) and 444 West Lake Street, Suite 900, Chicago, Illinois 60606 (Attn.: Richard A. Chesley, Esq. [richard.chesley@us.dlapiper.com], Daniel M. Simon [daniel.simon@us.dlapiper.com], Oksana Koltko Rosaluk, Esq. [oksana.koltkorosaluk@us.dlapiper.com], David E. Avraham, Esq. [david.avraham@us.dlapiper.com], and Tara Nair, Esq. [tara.nair@us.dlapiper.com]); (b) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, DE 19801 (Attn.: Joseph J. McMahon, Jr., Esq. [joseph.mcmahon@usdoj.gov]); (c) (i) counsel to the agent under the Revolver/TL Credit Agreement, Seven Year Term Loan Agreement and Bridge Loan Credit Agreement and Consenting Lenders, Jones Day, 250 Vesey Street, New York, New York 10281 (Attn: Benjamin Rosenblum, Esq.

[brosenblum@jonesday.com], Stacey L. Corr-Irvine, Esq. [scorrirvine@jonesday.com], and Danielle D. Donovan, Esq. [ddonovan@jonesday.com] and (ii) Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Matthew P. Ward, Esq. [matthew.ward@wbd-us.com] and (d) any other party entitled to notice under Bankruptcy Rule 2002 (the "Notice Parties"). Any such Objection must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such objections; and (e) be filed with the Court with proof of service thereof and served upon the Notice Parties (as defined below) so as to be actually received by the Objection Deadline.

**UNLESS A RESPONSE OR OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### SUMMARY OF PLAN TREATMENT[3]

The table below provides a summary of the classification, description, treatment, and anticipated recovery of Claims and Interests under the Plan. This information is provided in summary form below for illustrative purposes only and is qualified in its entirety by reference to the provisions of the Plan. For a more detailed description of the treatment of Claims and Interests under the Plan and the sources of satisfaction for Claims and Interests, see Section V of the Disclosure Statement, entitled "Summary of the Plan."

| Class | Claim or Interest | Status | Voting Rights | Projected Plan Recovery |
|-------|-------------------|--------|---------------|-------------------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Specified Derivatives Claims | Impaired | Entitled to Vote | 100% |
| 3 | Secured Property-Level Debt Claims | Unimpaired | Deemed to Accept | 100% |
| 4 | Other Priority Claims | Unimpaired | Deemed to Accept | 100% |

---

[3]    The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. For a more detailed description of the Plan, please refer to the Disclosure Statement. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

| Class | Claim or Interest | Status | Voting Rights | Projected Plan Recovery |
|:---:|:---|:---:|:---:|:---:|
| 5 | Unsecured Credit Facility Claims | Impaired | Entitled to Vote | 100% |
| 6 | General Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
| 7 | Intercompany Claims | Unimpaired | Deemed to Accept | 100% |
| 8 | Intercompany Interests | Unimpaired | Deemed to Accept | 100% |
| 9 | Existing Equity Interests | Unimpaired | Deemed to Accept | 100% |

## INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS IN THE PLAN

**PLEASE BE ADVISED THAT ARTICLE VII OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE VIII OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**BINDING NATURE OF THE PLAN:  IF CONFIRMED, ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS, AND EACH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT ANY SUCH HOLDER (1) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN OR (2) VOTED TO ACCEPT OR REJECT THE PLAN.**

## EXCULPATION[4]

**As of the Effective Date, except as otherwise specifically provided in the Plan or Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim other than those arising out of or relating to any act by or omission of an Exculpated Party that have been determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and**

---

[4]    "Exculpated Party" means, collectively, and in each case in its capacity as such: (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Consenting Lenders, (iv) the Agent, (v)  each Related Party with respect to each of the foregoing in clauses (i) through (v) and (vi) any other Person entitled to the protections of section 1125(e) of the Bankruptcy Code.

responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on the Plan, distribution of consideration pursuant to the Plan and, to the extent applicable, the offer, issuance and sale or purchase of securities pursuant to the Plan and, therefore, are not, and on account of such solicitation, distribution and issuance shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan, such distributions made pursuant to the Plan and issuance of securities pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth above do not release the (i) Excluded Claims, (ii) the rights of any current employee of the Debtors under any employment agreement or plan or (iii) the rights of Holders of Allowed Claims or Allowed Interests to receive treatment in accordance with the Plan.

## INJUNCTION[5]

Effective as of the Effective Date, except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Enjoined Parties are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties or the Released Parties and their respective assets and properties:  (i) commencing or continuing in any manner any action, suit or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

## RELEASES BY THE DEBTORS

Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and

---

[5]     "Enjoined Party" means all Entities who have held, hold or may hold Claims or Interests that have been released or discharged or are subject to exculpation pursuant to the Plan.

after the Effective Date, each Released Party[6] is hereby deemed to be conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by the Debtors, the Reorganized Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for or because of the foregoing Entities, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of a Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership or operation thereof), the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination or negotiation of the Restructuring Support Agreement, the Disclosure Statement, the Revolving Exit Facility, the New Senior Secured Term Loan Facility Documents, the New Second Lien Term Loan Facility Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Revolving Exit Facility, New Senior Secured Term Loan Facility, the New Second Lien Term Loan Facility, the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, to the extent applicable, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, except for claims or liabilities arising out of or relating to any act or omission by a Released Party that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release the (i) Excluded Claims or (ii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Releases, which include by reference each of the related provisions and definitions contained in the Plan, and further shall constitute

---

[6]    "Released Party" means, means, collectively, and in each case in its capacity as such:  (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Consenting Lenders, (iv) the Agent, and (v) each Related Party with respect to each of the foregoing in clauses (i) through (iv).

the Bankruptcy Court's finding that the Debtor Releases are: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Releases; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Reorganized Debtors or the Debtors' Estates asserting any Cause of Action released pursuant to the Debtor Releases.

## RELEASES BY HOLDERS OF CLAIMS AND INTERESTS[7]

Effective as of the Effective Date, except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, including any derivative claims asserted on behalf of the Debtors, that would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership or operation thereof), the subject matter of or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor any other Released Party, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor or an affiliate of a Debtor and another Debtor or affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination or negotiation of the Restructuring Support Agreement, the Revolving Exit Facility, the New Senior Secured Term Loan Facility Documents, the New Second Lien Term Loan Facility Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release, or other agreement or document relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Revolving Exit Facility, New Senior Secured Term Loan Facility, the New Second Lien Term Loan Facility, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, to the extent applicable, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event or other occurrence related or

---

[7]    "Releasing Party" means, collectively, and in each case in their capacity as such: (i) each Released Party; (ii) each Holder of Impaired Claims that are not Released Parties, except any such Holder that voted to reject, or abstained from voting on, the Plan *and* has also checked the box on the applicable ballot indicating that they opt out of granting the releases provided in the Plan (including, for the avoidance of doubt, the Holders of all Claims whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein); (iii) the Holders of all Claims or Interests that are Unimpaired under the Plan; and (iv) each Related Party with respect to each of the foregoing in clauses (i) through (iii).

**relating to any of the foregoing taking place on or before the Effective Date, except for claims or liabilities arising out of or relating to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct or gross negligence.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release the (i) Excluded Claims, (ii) the rights of any current employee of the Debtors under any employment agreement or plan or (iii) the rights of Holders of Allowed Claims or Allowed Interests to receive distributions under the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for the good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

## NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES

You or one of your affiliates may be a counterparty to one or more contracts or leases that may be an executory contract or unexpired leases with one or more of the Debtors.  Except as otherwise provided in the Plan, as of the Effective Date, the Debtors shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, without the need for any further notice or action, order or approval of the Court, unless such Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by a Debtor, pursuant to final order of the Court; (ii) previously expired or terminated pursuant to its own terms; or (iii) is the subject of a motion to reject filed on or before the Effective Date.

Entry of the Confirmation Order shall constitute a Court order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, all assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Court order but not assigned to a third party on or before the Effective Date shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms may have been modified by such order.  All assumed Executory Contracts or Unexpired Leases shall be enforceable by the Reorganized Debtors or such party such Executory Contract or Unexpired Lease was assigned to in accordance with their terms notwithstanding any provision in such contract or lease that prohibits, restricts or conditions assumption, assignment or transfer.  Any provision in any such contract or lease that permits a Person to terminate or modify such agreement or to otherwise

modify the rights of the Debtors or the Reorganized Debtors or assignee, as applicable, based on the filing of the Chapter 11 Cases or the financial condition of the Debtors or the Reorganized Debtors, as applicable, shall be unenforceable.  To the extent any provision in any Executory Contract or Unexpired Lease assumed, or assumed and assigned, pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Debtors' assumption, or assumption and assignment, of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party or parties thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  After the Effective Date, the Reorganized Debtors shall have the right to terminate, amend or modify any contracts, including intercompany contracts, leases or other agreements without approval of the Court.

**ANY COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT DID NOT TIMELY OBJECT TO THE PROPOSED ASSUMPTION OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE BY THE TREATMENT OBJECTION DEADLINE WILL BE DEEMED TO HAVE CONSENTED TO SUCH ASSUMPTION.**

**Objections to the Assumption or Rejection of Executory Contracts and Unexpired Leases:** If you believe any further amounts are due as a result of a Debtor's monetary default under an executory contract or unexpired lease or you wish to object to the assumption of an executory contract or unexpired lease under the Plan, including an objection regarding the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) (each, a "<u>Treatment Objection</u>"), you may assert a Treatment Objection against the Debtors, subject to all defenses the Debtors may have with respect to such Treatment Objection.

Your Treatment Objection must: (a) be in writing; (b) conform to the applicable Federal Rules and the Local Rules; (c) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof; and (d) be filed with the Court and served on the Notice Parties so as to be received by 12:00 p.m. (Eastern Standard Time) on November 16, 2020 (or such other date as may be established by the Court) (the "<u>Treatment Objection Deadline</u>").

Any counterparty to an assumed executory contract or unexpired lease that fails to timely file a Treatment Objection (i) shall be deemed to have assented to such proposed assumption and shall be deemed to have forever released and waived such Treatment Objection and shall be precluded from being heard at the Confirmation Hearing with respect to such objection; and (ii) shall be forever barred from imposing or charging against any Reorganized Debtor any accelerations, increases or any other fees as a result of any assumption pursuant to the Plan.

**UNLESS A RESPONSE OR AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

**Exhibit 2**

**(Publication Notice)**

**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------- x

In re:                                                          : Chapter 11
                                                                :
PENNSYLVANIA REAL ESTATE INVESTMENT : Case No. 20-_____ (___)
TRUST, *et al*.,                                                :
            Debtors.                                            : (Jointly Administered)

---------------------------------------------------------------- x

**NOTICE OF (I) COMMENCEMENT OF PREPACKAGED CHAPTER 11
BANKRUPTCY CASES, (II) COMBINED HEARING ON THE DISCLOSURE
STATEMENT, CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER
11 PLAN, AND RELATED MATTERS, AND (III) OBJECTION DEADLINE**

**NOTICE IS HEREBY GIVEN** as follows:

     1.     On _____, 2020, Pennsylvania Real Estate Investment Trust and its affiliated debtors (collectively, the "Debtors") commenced a solicitation of votes from the Holders of Specified Derivative Claims and Holders of Unsecured Credit Facility Claims pursuant to the *Joint Prepackaged Chapter 11 Plan of Reorganization of Pennsylvania Real Estate Investment Trust and Certain of Its Direct and Indirect Subsidiaries* (as may be amended, supplemented or otherwise modified from time to time, the "Plan")[1], attached as Exhibit A to the *Disclosure Statement Relating to the Joint Prepackaged Chapter 11 Plan of Reorganization of Pennsylvania Real Estate Investment Trust and Certain of Its Direct and Indirect Subsidiaries* (as may be amended, supplemented or otherwise modified from time to time, the "Disclosure Statement").

     2.     The Plan was developed in accordance with the terms of that certain Restructuring Support Agreement, dated as of October 7, 2020, among the Debtors and certain prepetition lenders (collectively, the "Consenting Lenders") (as amended from time to time, the "Restructuring Support Agreement"). Among other things, the Restructuring Support Agreement obligates the Consenting Lenders to vote to approve the Plan and support the Debtors' restructuring.

     3.     On _____ 2020 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

---

[1]     Capitalized terms used but not defined have the meanings given to them in the Plan. The summaries of the Plan and Disclosure Statement in this Notice are not precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. If there is a discrepancy between this Notice and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall control. For a more detailed description of the Plan, please refer to the Disclosure Statement. Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Solicitation Agent, at http://cases.primeclerk.com/PREIT.

"Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

4.      On the Petition Date, the Debtors filed the Plan [Docket No. [•]] and the Disclosure Statement [Docket No. [•]].  Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' notice, claims and solicitation agent, Prime Clerk LLC (the "Solicitation Agent"), at http://cases.primeclerk.com/PREIT or by contacting the Debtors' proposed counsel, DLA Piper LLP (US), 1201 N. Market Street, Suite 2100, Wilmington, Delaware 19801-1147 (Attn.: R. Craig Martin, Esq. [craig.martin@us.dlapiper.com]) and 444 West Lake Street, Suite 900, Chicago, Illinois 60606 (Attn.: Oksana Koltko Rosaluk, Esq. [oksana.koltkorosaluk@us.dlapiper.com] and Tara Nair, Esq. [tara.nair@us.dlapiper.com]).

## INFORMATION REGARDING THE PLAN AND DISCLOSURE STATEMENT

**Voting Record Date**.  The voting record date was **October 7, 2020**, which was the date for determining which Holders of Claims in Class 2 and Class 5 of the Plan were entitled to vote.

**Combined Hearing.**  A combined hearing to consider the adequacy of the Disclosure Statement, confirmation of the Plan and an objections to any of the foregoing, and any other matter that may properly come before the Court, will be held before The Honorable _____, at the Court, 824 North Market Street, __ Floor, Courtroom __, Wilmington, Delaware 19081, on November __, 2020 at _____ .m (Eastern Standard Time) (the "Combined Hearing").  The Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Combined Hearing and will be available on the electronic case filing docket and the Solicitation Agent's website at http://cases.primeclerk.com/PREIT.

**Objections to the Plan and Disclosure Statement**.  Any responses or objections (each, an "Objection") to the assumption of Executory Contracts and Unexpired Leases, the Disclosure Statement or the Plan is **12:00 p.m. (Eastern Standard Time) on November 16, 2020** (the "Objection Deadline").  Any such Objection must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such objections; and (e) be filed with the Court with proof of service thereof and served upon the Notice Parties (as defined below) so as to be **actually received** by the Objection Deadline.

Objections must be filed with the Court and served by the Objection Deadline on the following parties:  (a) proposed counsel for the Debtors, DLA Piper LLP (US), 1201 N. Market Street, Suite 2100, Wilmington, Delaware 19801-1147 (Attn.: R. Craig Martin, Esq. [craig.martin@us.dlapiper.com] and Aaron S. Applebaum, Esq. [aaron.applebaum@us.dlapiper.com]) and 444 West Lake Street, Suite 900, Chicago, Illinois 60606 (Attn.: Richard A. Chesley, Esq. [richard.chesley@us.dlapiper.com], Daniel M. Simon [daniel.simon@us.dlapiper.com], Oksana Koltko Rosaluk, Esq. [oksana.koltkorosaluk@us.dlapiper.com], David E. Avraham, Esq.

[david.avraham@us.dlapiper.com], and Tara Nair, Esq. [tara.nair@us.dlapiper.com]); (b) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, DE 19801 (Attn.: Joseph J. McMahon, Jr., Esq. [joseph.mcmahon@usdoj.gov]); (i) counsel to the agent under the Revolver/TL Credit Agreement, Seven Year Term Loan Agreement and Bridge Loan Credit Agreement and Consenting Lenders, Jones Day, 250 Vesey Street, New York, New York 10281 (Attn: Benjamin Rosenblum, Esq. [brosenblum@jonesday.com], Stacey L. Corr-Irvine, Esq. [scorrirvine@jonesday.com], and Danielle D. Donovan, Esq. [ddonovan@jonesday.com] and (ii) Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Matthew P. Ward, Esq. [matthew.ward@wbd-us.com] and (d) any other party entitled to notice under Bankruptcy Rule 2002 (the "Notice Parties").

**UNLESS A RESPONSE OR OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### SUMMARY OF PLAN TREATMENT[2]

The table below provides a summary of the classification, description, treatment, and anticipated recovery of Claims and Interests under the Plan. This information is provided in summary form below for illustrative purposes only and is qualified in its entirety by reference to the provisions of the Plan.

| Class | Claim or Interest | Status | Voting Rights | Projected Plan Recovery |
|-------|-------------------|--------|---------------|-------------------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Specified Derivatives Claims | Impaired | Entitled to Vote | 100% |
| 3 | Secured Property-Level Debt Claims | Unimpaired | Deemed to Accept | 100% |
| 4 | Other Priority Claims | Unimpaired | Deemed to Accept | 100% |
| 5 | Unsecured Credit Facility Claims | Impaired | Entitled to Vote | 100% |

---

[2]     The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. For a more detailed description of the Plan, please refer to the Disclosure Statement. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

| 6 | General Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
|---|---|---|---|---|
| 7 | Intercompany Claims | Unimpaired | Deemed to Accept | 100% |
| 8 | Intercompany Interests | Unimpaired | Deemed to Accept | 100% |
| 9 | Existing Equity Interests | Unimpaired | Deemed to Accept | 100% |

### NOTICE REGARDING INJUNCTION, EXCULPATION, AND RELEASE PROVISIONS IN THE PLAN

**PLEASE BE ADVISED THAT ARTICLE VII OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE VIII OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**BINDING NATURE OF THE PLAN:  IF CONFIRMED, ON AND AS OF THE EFFECTIVE DATE, THE PLAN WILL BE BINDING ON ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS, AND EACH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT ANY SUCH HOLDER (1) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN OR (2) VOTED TO ACCEPT OR REJECT THE PLAN.**

**Exhibit 3**

**(Class 2 Ballot)**

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.**

---------------------------------------------------------------x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| Pennsylvania Real Estate Investment Trust, *et al.*,[1] | : **IMPORTANT**: No chapter 11 cases have been |
| | : commenced as of the date of distribution of this |
| | : Ballot. This Ballot is a prepetition solicitation |
| | : of your vote on a prepackaged plan of |
| Debtors. | : reorganization. |
| | x |

---------------------------------------------------------------x

### CLASS 2 BALLOT FOR VOTING ON THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF PENNSYLVANIA REAL ESTATE INVESTMENT TRUST AND CERTAIN OF ITS DIRECT AND INDIRECT SUBSIDIARIES

If you are the Holder of a Class 2 Claim (Specified Derivative Claims) (a "<u>Class 2 Claim</u>" or collectively, "<u>Class 2 Claims</u>") as of October 7, 2020 (the "<u>Voting Record Date</u>"), please use this "<u>Ballot</u>" to cast your vote to accept or reject the *Joint Prepackaged Plan of Reorganization Of Pennsylvania Real Estate Investment Trust and Certain of its Direct and Indirect Subsidiaries* (as may be amended, modified or supplemented in accordance with its terms, the "<u>Plan</u>"), which is being proposed by Pennsylvania Real Estate Investment Trust and certain of its affiliates (collectively, the "<u>Company</u>"). The Plan is included as <u>Exhibit A</u> to the accompanying *Disclosure Statement for the Joint Prepackaged Plan of Reorganization Of Pennsylvania Real Estate Investment Trust and Certain of its Direct and Indirect Subsidiaries,* dated October 9, 2020 (as may be amended, modified or supplemented, the "<u>Disclosure Statement</u>").[2] The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if the Plan (a) is accepted by the holders of two-thirds in amount and more than one-half in number of Claims or Interests in each Class that votes on the Plan, and (b) otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code.

Please carefully read the enclosed Disclosure Statement and Plan and follow the enclosed instructions for completing this Ballot. If you have any questions regarding this Ballot, the enclosed voting instructions, the procedures for voting, or need to obtain additional solicitation materials, please contact the Company's proposed notice and solicitation agent, Prime Clerk LLC (the "<u>Solicitation Agent</u>") by: (i) emailing preitballots@primeclerk.com and reference "PREIT" in the subject line, (ii) calling the Solicitation Agent at (877) 469-6799 (domestic, toll free) or +1 (347) 897-4074 (local/international, toll), (iii) visiting the Solicitation Agent's website at https://cases.primeclerk.com/preitballots, and/or (iv) writing to the Solicitation Agent at the following address: PREIT Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165.

**Each Holder of a Class 2 Claim should submit this Ballot in order to have its vote counted in accordance with the Solicitation Procedures before the Voting Deadline.**

---

[1]     A list of the debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number, is attached hereto as **Schedule 1**. The corporate headquarters and the mailing address for the Debtors listed above is 2005 Market Street, Suite 1000, Philadelphia, PA 19103.

[2]     Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Disclosure Statement.

---

**IMPORTANT DEADLINE**

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY THE SOLICITATION AGENT ON OR BEFORE **5:00 P.M. (PREVAILING EASTERN TIME) ON OCTOBER 18, 2020 (THE "VOTING DEADLINE")**.

REVIEW THE ACCOMPANYING DISCLOSURE STATEMENT FOR THE PLAN.

This Ballot is *not* a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan.

---

## HOW TO VOTE

1. COMPLETE THE ELECTION, TO THE EXTENT APPLICABLE, AS WELL AS ITEM 1 AND ITEM 2.

2. REVIEW THE CERTIFICATIONS CONTAINED IN ITEM 4.

3. SIGN AND DATE YOUR BALLOT.  Please provide your name and mailing address in the space provided in this Ballot if it is different from that set forth on the Ballot or if no address is preprinted on this Ballot.[3]

4. RETURN THE BALLOT (i) in the enclosed pre-paid, pre-addressed return envelope; (ii) by first class mail, overnight courier, or hand delivery to the address set forth in Item 4 of this Ballot; or (iii) electronically, by accessing the E-Ballot portal found online at https://cases.primeclerk.com/preitballots and following the "Submit E-Ballot" link.

5. IF YOU HOLD A CLAIM IN MORE THAN ONE CLASS ENTITLED TO VOTE, YOU MAY RECEIVE MORE THAN ONE BALLOT FOR EACH SUCH CLAIM.  EACH BALLOT VOTES ONLY YOUR CLAIMS INDICATED ON THAT BALLOT.  ACCORDINGLY, YOU MUST COMPLETE AND RETURN EACH BALLOT YOU RECEIVE TO VOTE MULTIPLE CLAIMS.

6. YOU MUST VOTE ALL OF YOUR CLASS 2 CLAIMS EITHER TO ACCEPT OR REJECT THE PLAN, AND MAY NOT SPLIT YOUR VOTE.

## OTHER IMPORTANT INFORMATION:

1. Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan or is improperly signed and returned will NOT be counted unless the Debtors determine otherwise.

2. To vote, you <u>MUST</u> deliver your completed Ballot (whether via mail, hand delivery or electronically on the Solicitation Agent's website) so that it is ACTUALLY RECEIVED by the Solicitation Agent on or before the Voting Deadline by one of the methods described in Item 4.  **The Voting Deadline is 5:00 p.m. (prevailing Eastern Time) on October 18, 2020.**

---

[3]     If you are signing this Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, the Debtors' proposed counsel, or the Bankruptcy Court, you must submit proper evidence to the requesting party of authority to so act on behalf of such holder.

EAST\176806227.4

3. Any Ballot received by the Solicitation Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Company otherwise determines in its sole discretion. No Ballot may be withdrawn or modified after the Voting Deadline without the Company's written prior consent.

4. Delivery of a Ballot reflecting your vote to the Solicitation Agent will be deemed to have occurred only when the Solicitation Agent actually receives your Ballot. In all cases, you should allow sufficient time to assure timely delivery of your Ballot by the Voting Deadline.

5. If you deliver multiple Ballots for your Class 2 Claim to the Solicitation Agent, ONLY the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior Ballot(s).

6. If, as of the Voting Record Date, you held Claims in more than one voting Class under the Plan, you should receive a separate Ballot for each Class of Claims, coded by Class number, and a set of solicitation materials. If you hold a portion of a single Claim, you and other holders of the remaining portion of such Claim will be (a) treated as a single creditor for voting purposes and (b) required to vote every portion of such Claim collectively to either accept or reject the Plan. The Debtors reserve the right to challenge the validity of any vote that has been improperly split for voting purposes.

7. The Plan constitutes a separate plan of reorganization for each of the Debtors and notwithstanding anything herein, the Plan may be confirmed and consummated as to each of the Debtors separate from, and independent of, confirmation and consummation of the Plan as to any other Debtor.

8. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim, in the Company's Chapter 11 Cases.

9. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

10. Subject to the discretion of the Company or authority of the Bankruptcy Court, the following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan, unless such Person or Entity is the attorney, proxy or other authorized representative of the Claim holder; (c) any unsigned Ballot, *provided*, *however*, that votes submitted through E-Ballot are deemed signed; and/or (d) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

11. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth in, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

EAST\176806227.4

## IMPORTANT INFORMATION REGARDING TREATMENT UNDER THE PLAN

The Plan provides for the following treatment for Holders of Class 2 Claims (Specified Derivatives Claims).

The Reorganized Debtors shall assume the Swap Agreements, as amended by the Omnibus Swap Amendment, with any obligations of the Reorganized Debtors under the Swap Agreements so assumed secured *pari passu* with the Postpetition Senior Secured Facilities; *provided, however*, that if a Holder of an Allowed Specified Derivatives Claim is not a Consenting Lender, such Holder may elect to exercise its contractual rights to liquidate, terminate or accelerate under the applicable Swap Agreement in accordance with section 560 of the Bankruptcy Code, with such Holder receiving, on account of any resulting payment amounts or termination values due and owing by the Debtors (after offset) to such Holder, the principal amount of loans under the New Second Lien Term Loan Facility in an amount equal to the amount of its Allowed Specified Derivatives Claim.

## ELECTION

You must complete this section if you are not a Consenting Lender under the Restructuring Support Agreement as set forth in the Plan.  If you abstain from making the below election, you shall be deemed to have consented to the assumption by the applicable Debtor (or assumption and assignment to the respective Reorganized Debtor, as applicable) of the Swap Agreement under which you are the Swap Participant.

| | |
|---|---|
| ☐  As the undersigned Holder, I hereby consent to the assumption by the applicable Debtor (or assumption and assignment to the respective Reorganized Debtor, as applicable) of the Swap Agreement under which I am the Swap Participant pursuant to the terms and in accordance with the Plan and hereby waive any past or future automatic early terminations of the transactions under the Swap Agreement. | ☐   As the undersigned Holder, I hereby elect to exercise my contractual rights to liquidate, terminate or accelerate the transactions under the applicable Swap Agreement under which I am the Swap Participant in accordance with section 560 of the Bankruptcy Code. |

## VOTING – COMPLETE THIS SECTION

**ITEM 1:**

**PRINCIPAL AMOUNT OF CLASS 2 CLAIMS**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Class 2 Claims (or authorized signatory for an entity that is a Holder of such Claims) in the following aggregate principal amount, excluding, for the avoidance of doubt, accrued but unpaid interest and other amounts that may be owed to the undersigned (or the entity for whom the undersigned is signatory) (*please fill in the amount if not otherwise completed*):

| |
|---|
| Voting Amount:  $ _____ |

**ITEM 2:**

**VOTE**

You may vote to accept or reject the Plan.  You must check one of the boxes below in order to have your vote counted.

> ☐ **ACCEPT** (VOTE FOR) the Plan    ☐ **REJECT** (VOTE AGAINST) Plan

Please note that you are voting all of your Class 2 Claims either to accept or reject the Plan. You may not split your vote. If you do not indicate that you either accept or reject the Plan by checking the applicable box above, your Ballot with respect to this Item 2 will not be counted. If you indicate that you both accept and reject the Plan by checking both boxes above, your Ballot with respect to this Item 2 will not be counted.

The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor. Accordingly, your vote cast above will be applied in the same manner and in the same amount in Class 2 against each applicable Debtor.

**ITEM 3: RELEASE INFORMATION**

Section 7.3 of the Plan provides for a third-party release (the "**Third-Party Release**")

**Effective as of the Effective Date, except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership or operation thereof), the subject matter of or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor any other Released Party, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor or an affiliate of a Debtor and another Debtor or affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination or negotiation of the Restructuring Support Agreement, the DIP Facility Documents, the Revolving Exit Facility, the New Senior Secured Term Loan Facility Documents, the New Second Lien Term Loan Facility Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release, or other agreement or document relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the DIP Facility, the Disclosure Statement, the Revolving Exit Facility, New Senior Secured Term Loan Facility, the New Second Lien Term**

5

Loan Facility, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, to the extent applicable, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, except for claims or liabilities arising out of or relating to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release the (i) Excluded Claims, (ii) the rights of any current employee of the Debtors under any employment agreement or plan or (iii) the rights of Holders of Allowed Claims or Allowed Interests to receive distributions under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for the good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

**IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE:**

UNDER THE PLAN, "RELEASING PARTY" MEANS COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH: (I) EACH RELEASED PARTY; (II) EACH HOLDER OF IMPAIRED CLAIMS THAT ARE NOT RELEASED PARTIES, EXCEPT ANY SUCH HOLDER THAT VOTED TO REJECT, OR ABSTAINED FROM VOTING ON, THE PLAN *AND* HAS ALSO CHECKED THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT OUT OF GRANTING THE RELEASES PROVIDED IN THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE HOLDERS OF ALL CLAIMS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT WHO DO NOT VOTE EITHER TO ACCEPT OR REJECT THE PLAN AND DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH HEREIN); (III) THE HOLDERS OF ALL CLAIMS OR INTERESTS THAT ARE UNIMPAIRED UNDER THE

**PLAN; AND (IV) EACH RELATED PARTY WITH RESPECT TO EACH OF THE FOREGOING IN CLAUSES (I) THROUGH (III).**

**OPTIONAL OPT-OUT ELECTION**

**IF YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASES PROVISIONS SET FORTH IN ARTICLE VII OF THE PLAN AND YOU CANNOT OPT OUT OF THE THIRD-PARTY RELEASES.  IF YOU DO NOT CONSENT TO THE RELEASES, INJUNCTION, OR EXCULPATION PROVISIONS SET FORTH IN ARTICLE VII OF THE PLAN, YOU MAY ELECT NOT TO GRANT SUCH RELEASES <u>BUT ONLY IF YOU</u> (1) VOTE TO REJECT THE PLAN IN ITEM 1 ABOVE, AFFIRMATIVELY ELECT TO "OPT OUT" OF BEING A RELEASING PARTY BY CHECKING THE BOX BELOW, AND TIMELY RETURN YOUR BALLOT, OR (2) ABSTAIN FROM VOTING BY NOT CASTING A VOTE IN ITEM 1 ABOVE, AFFIRMATIVELY ELECT TO "OPT OUT" OF BEING A RELEASING PARTY BY CHECKING THE BOX BELOW, AND TIMELY RETURN YOUR BALLOT.**

**The Holder of the Claim(s) identified in Item 1 elects to:**

| ☐    **<u>OPT-OUT of the Third-Party Release</u>** |
| --- |

**ITEM 4:**

**CERTIFICATION, BALLOT COMPLETION, AND DELIVERY INSTRUCTIONS**

By signing this Ballot, the undersigned certifies to the Court and the Debtors:

(a) That, as of the Voting Record Date, either (i) the undersigned is the Holder of a Class 2 Claim as set forth in Item 1; or (ii) the undersigned is an authorized signatory for an Entity that is the Holder of a Class 2 Claim as set forth in Item 1;

(b) That the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c) That the undersigned has cast the same vote with respect to all of its Class 2 Claims in connection with the Plan; and

(d) That no other Ballots with respect to the same Class 2 Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier Ballots voting those Claims are hereby revoked.

| BALLOT COMPLETION INFORMATION – COMPLETE THIS SECTION |
|---|

Name of Holder: _____

Signature: _____

Signatory Name (if other
than the Holder)

Title: _____

Address: _____

Email Address: _____

Date Completed: _____

---

**RETURN INSTRUCTIONS**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY. THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE.   YOU MAY SUBMIT YOUR BALLOT IN THE ENCLOSED PRE-PAID, PRE-ADDRESSED RETURN ENVELOPE, VIA FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

**PREIT Ballot Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

---

**ALTERNATIVELY, YOU CAN SUBMIT YOUR BALLOT ELECTRONICALLY BY ACCESSING THE E-BALLOT PORTAL FOUND  ON THE SOLICITATION AGENT'S WEBSITE AND FOLLOWING THE 'SUBMIT E-BALLOT' LINK:**

**IF SUBMITTING ONLINE:**
https://cases.primeclerk.com/preitballots

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE SOLICITATION AGENT AT (877) 469-6799 (DOMESTIC, TOLL FREE) OR +1 (347) 897-4074 (LOCAL/INTERNATIONAL, TOLL) OR EMAIL PREITBALLOTS@PRIMECLERK.COM WITH 'PREIT' IN THE SUBJECT LINE.**

8

**Important Information Regarding Releases Under the Plan**

**The Plan includes the following release, exculpation, and injunction provisions.[4]**

**Section 7.2: Releases by the Debtor**

**Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby deemed to be conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by the Debtors, the Reorganized Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for or because of the foregoing Entities, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of a Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership or operation thereof), the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination or negotiation of the Restructuring Support Agreement, the DIP Facility Documents, the Disclosure Statement, the Revolving Exit Facility, the New Senior Secured Term Loan Facility Documents, the New Second Lien Term Loan Facility Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the DIP Facility, the Disclosure Statement, the Revolving Exit Facility, New Senior Secured Term Loan Facility, the New Second Lien Term Loan Facility, the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, to the extent applicable, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, except for claims or liabilities arising out of or relating to any act or omission by a Released Party that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct or gross negligence.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release the (i) Excluded Claims or (ii) the rights of the Debtors with respect to any confidentiality provisions**

---

[4]        The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Releases, which include by reference each of the related provisions and definitions contained in the Plan, and further shall constitute the Bankruptcy Court's finding that the Debtor Releases are:  (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Releases; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Reorganized Debtors or the Debtors' Estates asserting any Cause of Action released pursuant to the Debtor Releases.

<u>Section 7.3: Releases by Holders of Claims and Interests</u>

Effective as of the Effective Date, except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership or operation thereof), the subject matter of or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor any other Released Party, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor or an affiliate of a Debtor and another Debtor or affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination or negotiation of the Restructuring Support Agreement, the DIP Facility Documents, the Revolving Exit Facility, the New Senior Secured Term Loan Facility Documents, the New Second Lien Term Loan Facility Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release, or other agreement or document relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the DIP Facility, the Disclosure Statement, the Revolving Exit Facility, New Senior Secured Term Loan Facility, the New Second Lien Term Loan Facility, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, to the extent applicable, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, except for claims or liabilities arising out of or relating to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release the (i) Excluded Claims, (ii) the rights of any current employee of the Debtors under any employment

agreement or plan or (iii) the rights of Holders of Allowed Claims or Allowed Interests to receive distributions under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for the good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

## Section 7.5: Exculpation

As of the Effective Date, except as otherwise specifically provided in the Plan or Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim other than those arising out of or relating to any act by or omission of an Exculpated Party that have been determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on the Plan, distribution of consideration pursuant to the Plan and, to the extent applicable, the offer, issuance and sale or purchase of securities pursuant to the Plan and, therefore, are not, and on account of such solicitation, distribution and issuance shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan, such distributions made pursuant to the Plan and issuance of securities pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth above do not release the (i) Excluded Claims, (ii) the rights of any current employee of the Debtors under any employment agreement or plan or (iii) the rights of Holders of Allowed Claims or Allowed Interests to receive treatment in accordance with the Plan.

## Section 7.6: Injunction

Effective as of the Effective Date, except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Enjoined Parties are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties or the Released Parties and their respective assets and properties: (i) commencing or continuing in any manner any action, suit or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and

3

**notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

[*Remainder of Page Intentionally Left Blank*]

4

<u>**PLEASE DELIVER YOUR BALLOT PROMPTLY**</u>

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE PROCEDURE FOR VOTING ON THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT BY EMAILING PREITBALLOTS@PRIMECLERK.COM AND REFERENCE "PREIT" IN THE SUBJECT LINE, OR BY CALLING (877) 469-6799 (DOMESTIC, TOLL FREE) OR +1 (347) 897-4074 (LOCAL/INTERNATIONAL, TOLL).**

**PLEASE BE ADVISED THAT THE SOLICITATION AGENT IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL ADVICE.**

5

**Schedule 1**

| | |
|---|---|
| Pennsylvania Real Estate Investment Trust (6339) | PR CC II LLC (N/A) |
| PREIT Associates, L.P. (5032) | PR Capital City LLC (4283) |
| PREIT-RUBIN, Inc. (4920) | PR Capital City Limited Partnership (7775) |
| PR Fin Delaware, LLC (N/A) | PR CC I LLC (N/A) |
| PR Valley View OP-DSG/CEC, LLC (N/A) | PR CC Limited Partnership (2620) |
| PR Springfield Town Center LLC (9679) | PR Prince George's Plaza LLC (6377) |
| PR Moorestown Anchor-L&T, LLC (N/A) | PR Hyattsville LLC (3110) |
| PR Cumberland Outparcel LLC (N/A) | PR Plymouth Anchor-M, LLC (N/A) |
| PR Woodland Anchor-S, LLC (N/A) | PR Plymouth Anchor-M, L.P. (N/A) |
| PR Valley Anchor-S, LLC (N/A) | PR Valley Anchor-M, LLC (N/A) |
| PR Swedes Square LLC (N/A) | PR Valley Anchor-M Limited Partnership (N/A) |
| PR Magnolia LLC (5017) | PR TP LLC (N/A) |
| PR Financing II LLC (N/A) | PR TP LP (N/A) |
| PR Financing I LLC (N/A) | PR Exton LLC (N/A) |
| PR Cherry Hill Office GP, LLC (N/A) | PR Exton Limited Partnership (2620) |
| Bala Cynwyd Associates, L.P. (8913) | XGP LLC (N/A) |
| PR Valley LLC (4705) | PR Exton Square Property L.P. (7997) |
| PR Valley Limited Partnership (5123) | PR Plymouth Meeting LLC (N/A) |
| Plymouth Ground Associates LLC (N/A) | PR Plymouth Meeting Limited Partnership (8280) |
| Plymouth Ground Associates, LP (N/A) | PR Moorestown LLC (N/A) |
| PR AEKI Plymouth LLC (N/A) | PR Moorestown Limited Partnership (7661) |
| PR AEKI Plymouth, L.P. (N/A) | Moorestown Mall LLC (8051) |
| PR Gainesville LLC (N/A) | PR Moorestown Anchor-M LLC (N/A) |
| PR GV LLC (N/A) | PR PM PC Associates LLC (N/A) |
| PR GV LP (N/A) | PR PM PC Associates LP (N/A) |
| PR Gainesville Limited Partnership (N/A) | PR Plymouth Meeting Associates PC LP (N/A) |
| PR Valley View Anchor-M, LLC (N/A) | PR BVM LLC (N/A) |
| PR Valley View Anchor-M Limited Partnership (N/A) | PR Valley Solar LLC (N/A) |
| PR Exton Outparcel GP, LLC (N/A) | PREIT-RUBIN OP, Inc. (4799) |
| PR Exton Outparcel Holdings, LP (N/A) | PR Sunrise Outparcel 2, LLC (4373) |
| PR Exton Outparcel Limited Partnership (N/A) | PR Monroe Old Trail, LLC (N/A) |
| PR JK LLC (N/A) | PR Monroe Old Trail Limited Partnership (N/A) |
| PR Jacksonville LLC (4726) | PR Monroe Old Trail Holdings, LLC (N/A) |
| PR Jacksonville Limited Partnership (N/A) | PR Monroe Old Trail Holdings, L.P. (N/A) |
| PR Financing Limited Partnership (4892) | |

# Exhibit 4

**(Class 5 Ballot)**

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.**

-------------------------------------------------------------x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| Pennsylvania Real Estate Investment Trust, *et al.*,[1] | : **IMPORTANT**: No chapter 11 cases have been commenced as of the date of distribution of this Ballot.  This Ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. |
| | : |
| | : |
| | : |
| | : |
| Debtors. | : |
| | x |

-------------------------------------------------------------x

### CLASS 5 BALLOT FOR VOTING ON THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF PENNSYLVANIA REAL ESTATE INVESTMENT TRUST AND CERTAIN OF ITS DIRECT AND INDIRECT SUBSIDIARIES

If you are the Holder of a Class 5 Claim (Unsecured Credit Facility Claims) (a "Class 5 Claim" or collectively, "Class 5 Claims") as of October 7, 2020 (the "Voting Record Date"), please use this "Ballot" to cast your vote to accept or reject the *Joint Prepackaged Plan of Reorganization Of Pennsylvania Real Estate Investment Trust and Certain of its Direct and Indirect Subsidiaries* (as may be amended, modified or supplemented in accordance with its terms, the "Plan"), which is being proposed by Pennsylvania Real Estate Investment Trust and certain of its affiliates (collectively, the "Company").  The Plan is included as Exhibit A to the accompanying *Disclosure Statement for the Joint Prepackaged Plan of Reorganization Of Pennsylvania Real Estate Investment Trust and Certain of its Direct and Indirect Subsidiaries,* dated October 9, 2020 (as may be amended, modified or supplemented, the "Disclosure Statement").[2]  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if the Plan (a) is accepted by the holders of two-thirds in amount and more than one-half in number of Claims or Interests in each Class that votes on the Plan, and (b) otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code.

Please carefully read the enclosed Disclosure Statement and Plan and follow the enclosed instructions for completing this Ballot.  If you have any questions regarding this Ballot, the enclosed voting instructions, the procedures for voting, or need to obtain additional solicitation materials, please contact the Company's proposed notice and solicitation agent, Prime Clerk LLC (the "Solicitation Agent") by: (i) emailing preitballots@primeclerk.com and reference "PREIT" in the subject line, (ii) calling the Solicitation Agent at (877) 469-6799 (domestic, toll free) or +1 (347) 897-4074 (local/international, toll), (iii) visiting the Solicitation Agent's website at https://cases.primeclerk.com/preitballots, and/or (iv) writing to the Solicitation Agent at the following address: PREIT Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165.

**Each Holder of a Class 5 Claim should submit this Ballot in order to have its vote counted in accordance with the Solicitation Procedures before the Voting Deadline.**

---

[1]       A list of the debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number, is attached hereto as **Schedule 1**.  The corporate headquarters and the mailing address for the Debtors listed above is 2005 Market Street, Suite 1000, Philadelphia, PA 19103.

[2]       Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement.

---

**IMPORTANT DEADLINE**

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY THE SOLICITATION AGENT ON OR BEFORE **5:00 P.M. (PREVAILING EASTERN TIME) ON OCTOBER 18, 2020 (THE "VOTING DEADLINE")**.

REVIEW THE ACCOMPANYING DISCLOSURE STATEMENT FOR THE PLAN.

This Ballot is *not* a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan.

---

### HOW TO VOTE

1. COMPLETE THE ELECTION, TO THE EXTENT APPLICABLE, AS WELL AS ITEM 1 AND ITEM 2.

2. REVIEW THE CERTIFICATIONS CONTAINED IN ITEM 4.

3. SIGN AND DATE YOUR BALLOT.  Please provide your name and mailing address in the space provided in this Ballot if it is different from that set forth on the Ballot or if no address is preprinted on this Ballot.[3]

4. RETURN THE BALLOT (i) in the enclosed pre-paid, pre-addressed return envelope, (ii) by first class mail, overnight courier, or hand delivery to the address set forth in Item 4 of this Ballot, or (iii) electronically, by accessing the E-Ballot portal found online at https://cases.primeclerk.com/preitballots and following the "Submit E-Ballot" link.

5. IF YOU HOLD A CLAIM IN MORE THAN ONE CLASS ENTITLED TO VOTE, YOU MAY RECEIVE MORE THAN ONE BALLOT FOR EACH SUCH CLAIM.  EACH BALLOT VOTES ONLY YOUR CLAIMS INDICATED ON THAT BALLOT.  ACCORDINGLY, YOU MUST COMPLETE AND RETURN EACH BALLOT YOU RECEIVE TO VOTE MULTIPLE CLAIMS .

6. YOU MUST VOTE ALL OF YOUR CLASS 5 CLAIMS EITHER TO ACCEPT OR REJECT THE PLAN, AND MAY NOT SPLIT YOUR VOTE.

### OTHER IMPORTANT INFORMATION:

1. Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan or is improperly signed and returned will NOT be counted unless the Debtors determine otherwise.

2. To vote, you <u>MUST</u> deliver your completed Ballot (whether via mail, hand delivery, or electronically on the Solicitation Agent's website) so that it is ACTUALLY RECEIVED by the Solicitation Agent

---

[3]     If you are signing this Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, the Debtors' proposed counsel, or the Bankruptcy Court, you must submit proper evidence to the requesting party of authority to so act on behalf of such holder.

on or before the Voting Deadline by one of the methods described in Item 4. **The Voting Deadline is 5:00 p.m. (prevailing Eastern Time) on October 18, 2020.**

3.  Any Ballot received by the Solicitation Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Company otherwise determines in its sole discretion. No Ballot may be withdrawn or modified after the Voting Deadline without the Company's prior written consent.

4.  Delivery of a Ballot reflecting your vote to the Solicitation Agent will be deemed to have occurred only when the Solicitation Agent actually receives your Ballot. In all cases, you should allow sufficient time to assure timely delivery of your Ballot by the Voting Deadline.

5.  If you deliver multiple Ballots for Class 5 Claim to the Solicitation Agent, ONLY the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior Ballot(s).

6.  If, as of the Voting Record Date, you held Claims in more than one voting Class under the Plan, you should receive a separate Ballot for each Class of Claims, coded by Class number, and a set of solicitation materials. If you hold a portion of a single Claim, you and other holders of the remaining portion of such Claim will be (a) treated as a single creditor for voting purposes and (b) required to vote every portion of such Claim collectively to either accept or reject the Plan. The Debtors reserve the right to challenge the validity of any vote that has been improperly split for voting purposes.

7.  The Plan constitutes a separate plan of reorganization for each of the Debtors and notwithstanding anything herein, the Plan may be confirmed and consummated as to each of the Debtors separate from, and independent of, confirmation and consummation of the Plan as to any other Debtor.

8.  This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim, in the Company's Chapter 11 Cases.

9.  You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

10. Subject to the discretion of the Company or authority of the Bankruptcy Court, the following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan, unless such Person or Entity is the attorney, proxy or other authorized representative of the Claim holder; (c) any unsigned Ballot, *provided however*, that votes submitted through E-Ballot are deemed signed; and/or (d) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

11. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth in, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

**IMPORTANT INFORMATION REGARDING TREATMENT UNDER THE PLAN**

The Plan provides for the following treatment for Holders of Class 5 Claims (Unsecured Credit Facility Claims).

> Each Holder of an Allowed Unsecured Credit Facility Claim shall receive on a dollar-for-dollar basis on account of such Holder's Allowed Unsecured Credit Facility Claim the principal amount of loans under the New Second Lien Term Loan Facility in a principal amount equal to such Holder's Allowed Unsecured Credit Facility Claim; *provided, however,* that any Holder of an Allowed Unsecured Credit Facility Claim that exercises the Exit Facility Option shall receive: (a) a payment in Cash of such Holder's pro rata share (calculated based on such Holder's commitment of loans under the Revolving Exit Facility) of the Exit Commitment Fee; plus (b) first, on a dollar-for-dollar basis on account of such Holder's Allowed Unsecured Credit Facility Claim its pro rata share (calculated based on such Holder's commitment of loans under the Revolving Exit Facility) of the principal amount of loans under the New Senior Secured Term Loan Facility; and (c) second, on a dollar-for-dollar basis on account of such Holder's remaining Allowed Unsecured Credit Facility Claim (if any), the principal amount of loans under the New Second Lien Term Loan Facility in a principal amount equal to such Holder's remaining Allowed Unsecured Credit Facility Claim.

**ELECTION**

By making the below election you certify that you are a Holder of a Class 5 Claim and hereby elect the "Exit Facility Option" on the terms specified in and pursuant to the Plan.



☐  **YES**

**VOTING – COMPLETE THIS SECTION**

**ITEM 1:**

**PRINCIPAL AMOUNT OF CLASS 5 CLAIMS**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Class 5 Claims (or authorized signatory for an entity that is a Holder of such Claims) in the following aggregate principal amount, excluding, for the avoidance of doubt, accrued but unpaid interest and other amounts that may be owed to the undersigned (or the entity for whom the undersigned is signatory) (*please fill in the amount if not otherwise completed*):

Voting Amount:  $ _____

**ITEM 2:**

**VOTE**

You may vote to accept or reject the Plan.  You must check one of the boxes below in order to have your vote counted.

> ☐ **ACCEPT** (VOTE FOR) the Plan    ☐ **REJECT** (VOTE AGAINST) Plan

Please note that you are voting all of your Class 5 Claims either to accept or reject the Plan. You may not split your vote. If you do not indicate that you either accept or reject the Plan by checking the applicable box above, your Ballot with respect to this Item 2 will not be counted. If you indicate that you both accept and reject the Plan by checking both boxes above, your Ballot with respect to this Item 2 will not be counted.

The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor. Accordingly, your vote cast above will be applied in the same manner and in the same amount in Class 5 against each applicable Debtor.

| **ITEM 3: RELEASE INFORMATION** | Section 7.3 of the Plan provides for a third-party release (the "**Third-Party Release**") |
|---|---|
|  | **Effective as of the Effective Date, except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership or operation thereof), the subject matter of or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor any other Released Party, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor or an affiliate of a Debtor and another Debtor or affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination or negotiation of the Restructuring Support Agreement, the DIP Facility Documents, the Revolving Exit Facility, the New Senior Secured Term Loan Facility Documents, the New Second Lien Term Loan Facility Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release, or other agreement or document relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the DIP Facility, the Disclosure Statement, the Revolving Exit Facility, New Senior Secured Term Loan Facility, the New Second Lien Term Loan Facility, the Plan Supplement, before or during the Chapter 11** |

5

Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, to the extent applicable, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, except for claims or liabilities arising out of or relating to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release the (i) Excluded Claims, (ii) the rights of any current employee of the Debtors under any employment agreement or plan or (iii) the rights of Holders of Allowed Claims or Allowed Interests to receive distributions under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for the good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

<u>IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE:</u>

UNDER THE PLAN, "RELEASING PARTY" MEANS COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH: (I) EACH RELEASED PARTY; (II) EACH HOLDER OF IMPAIRED CLAIMS THAT ARE NOT RELEASED PARTIES, EXCEPT ANY SUCH HOLDER THAT VOTED TO REJECT, OR ABSTAINED FROM VOTING ON, THE PLAN *AND* HAS ALSO CHECKED THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT OUT OF GRANTING THE RELEASES PROVIDED IN THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE HOLDERS OF ALL CLAIMS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT WHO DO NOT VOTE EITHER TO ACCEPT OR TO REJECT THE PLAN AND DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH HEREIN); (III) THE HOLDERS OF ALL CLAIMS OR INTERESTS THAT ARE UNIMPAIRED UNDER THE

**PLAN; AND (IV) EACH RELATED PARTY  WITH RESPECT TO EACH OF THE FOREGOING IN CLAUSES (I) THROUGH (III).**

**OPTIONAL OPT-OUT ELECTION**

**IF YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASES SET FORTH IN ARTICLE VII OF THE PLAN.  IF YOU DO NOT CONSENT TO THE RELEASES, INJUNCTION, OR EXCULPATION PROVISIONS SET FORTH IN ARTICLE VII OF THE PLAN, YOU MAY ELECT NOT TO GRANT SUCH RELEASES BUT ONLY IF YOU (1) VOTE TO REJECT THE PLAN IN ITEM 1 ABOVE, AFFIRMATIVELY ELECT TO "OPT OUT" OF BEING A RELEASING PARTY BY CHECKING THE BOX BELOW, AND TIMELY RETURN YOUR BALLOT, OR (2) ABSTAIN FROM VOTING BY NOT CASTING A VOTE IN ITEM 1 ABOVE, AFFIRMATIVELY ELECT TO "OPT OUT" OF BEING A RELEASING PARTY BY CHECKING THE BOX BELOW, AND TIMELY RETURN YOUR BALLOT.**

**The Holder of the Claim(s) identified in Item 1 elects to:**

| ☐ **OPT-OUT of the Third-Party Release** |
|---|

**ITEM 4:**

**CERTIFICATION, BALLOT COMPLETION, AND DELIVERY INSTRUCTIONS**

By signing this Ballot, the undersigned certifies to the Court and the Debtors:

(a) That, as of the Voting Record Date, either (i) the undersigned is the Holder of a Class 5 Claim as set forth in Item 1; or (ii) the undersigned is an authorized signatory for an Entity that is the Holder of a Class 5 Claim as set forth in Item 1;

(b) That the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c) That the undersigned has cast the same vote with respect to all of its Class 5 Claims in connection with the Plan; and

(d) That no other Ballots with respect to the same Class 5 Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier Ballots voting those Claims are hereby revoked.

| BALLOT COMPLETION INFORMATION – COMPLETE THIS SECTION |
|---|

Name of Holder: _____

Signature: _____

Signatory Name (if other
than the Holder)

Title: _____

Address: _____

Email Address: _____

Date Completed: _____

---

**RETURN INSTRUCTIONS**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY. THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE.  YOU MAY SUBMIT YOUR BALLOT IN THE ENCLOSED PRE-PAID, PRE-ADDRESSED RETURN ENVELOPE, VIA FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

**PREIT Ballot Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

---

**ALTERNATIVELY, YOU CAN SUBMIT YOUR BALLOT ELECTRONICALLY BY ACCESSING THE E-BALLOT PORTAL FOUND ON THE SOLICITATION AGENT'S WEBSITE AND FOLLOWING THE 'SUBMIT E-BALLOT' LINK:**

**IF SUBMITTING ONLINE:**
https://cases.primeclerk.com/preitballots

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS JOINT BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE SOLICITATION AGENT AT (877) 469-6799 (DOMESTIC, TOLL FREE) OR +1 (347) 897-4074 (LOCAL/INTERNATIONAL, TOLL) OR EMAIL PREITBALLOTS@PRIMECLERK.COM WITH 'PREIT' IN THE SUBJECT LINE.**

**Important Information Regarding Releases Under the Plan**

**The Plan includes the following release, exculpation, and injunction provisions.[4]**

**Section 7.2: Releases by the Debtor**

**Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby deemed to be conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by the Debtors, the Reorganized Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for or because of the foregoing Entities, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of a Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership or operation thereof), the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination or negotiation of the Restructuring Support Agreement, the DIP Facility Documents, the Disclosure Statement, the Revolving Exit Facility, the New Senior Secured Term Loan Facility Documents, the New Second Lien Term Loan Facility Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the DIP Facility, the Disclosure Statement, the Revolving Exit Facility, New Senior Secured Term Loan Facility, the New Second Lien Term Loan Facility, the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, to the extent applicable, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, except for claims or liabilities arising out of or relating to any act or omission by a Released Party that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct or gross negligence.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release the (i) Excluded Claims or (ii) the rights of the Debtors with respect to any confidentiality provisions**

---

[4]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. You should read the Plan before completing this Ballot.

or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Releases, which include by reference each of the related provisions and definitions contained in the Plan, and further shall constitute the Bankruptcy Court's finding that the Debtor Releases are:  (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Releases; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Reorganized Debtors or the Debtors' Estates asserting any Cause of Action released pursuant to the Debtor Releases.

<u>Section 7.3: Releases by Holders of Claims and Interests</u>

Effective as of the Effective Date, except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership or operation thereof), the subject matter of or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor any other Released Party, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor or an affiliate of a Debtor and another Debtor or affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination or negotiation of the Restructuring Support Agreement, the DIP Facility Documents, the Revolving Exit Facility, the New Senior Secured Term Loan Facility Documents, the New Second Lien Term Loan Facility Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transactions, contract, instrument, release, or other agreement or document relating to any of the foregoing, created or entered into in connection with the Restructuring Support Agreement, the DIP Facility, the Disclosure Statement, the Revolving Exit Facility, New Senior Secured Term Loan Facility, the New Second Lien Term Loan Facility, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, to the extent applicable, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date, except for claims or liabilities arising out of or relating to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release the (i) Excluded Claims, (ii) the rights of any current employee of the Debtors under any employment

agreement or plan or (iii) the rights of Holders of Allowed Claims or Allowed Interests to receive distributions under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for the good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

## Section 7.5: Exculpation

As of the Effective Date, except as otherwise specifically provided in the Plan or Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim other than those arising out of or relating to any act by or omission of an Exculpated Party that have been determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on the Plan, distribution of consideration pursuant to the Plan and, to the extent applicable, the offer, issuance and sale or purchase of securities pursuant to the Plan and, therefore, are not, and on account of such solicitation, distribution and issuance shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan, such distributions made pursuant to the Plan and issuance of securities pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth above do not release the (i) Excluded Claims, (ii) the rights of any current employee of the Debtors under any employment agreement or plan or (iii) the rights of Holders of Allowed Claims or Allowed Interests to receive treatment in accordance with the Plan.

## Section 7.6: Injunction

Effective as of the Effective Date, except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Enjoined Parties are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties or the Released Parties and their respective assets and properties: (i) commencing or continuing in any manner any action, suit or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and

3

**notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

[*Remainder of Page Intentionally Left Blank*]

4

**<u>PLEASE DELIVER YOUR BALLOT PROMPTLY</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE PROCEDURE FOR VOTING ON THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT BY EMAILING PREITBALLOTS@PRIMECLERK.COM AND REFERENCE "PREIT" IN THE SUBJECT LINE, OR BY CALLING (877) 469-6799 (DOMESTIC, TOLL FREE) OR +1 (347) 897-4074 (LOCAL/INTERNATIONAL, TOLL).**

**PLEASE BE ADVISED THAT THE SOLICITATION AGENT IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL ADVICE.**

EAST\176803531.4

**Schedule 1**

| | |
|---|---|
| Pennsylvania Real Estate Investment Trust (6339) | PR CC II LLC (N/A) |
| PREIT Associates, L.P. (5032) | PR Capital City LLC (4283) |
| PREIT-RUBIN, Inc. (4920) | PR Capital City Limited Partnership (7775) |
| PR Fin Delaware, LLC (N/A) | PR CC I LLC (N/A) |
| PR Valley View OP-DSG/CEC, LLC (N/A) | PR CC Limited Partnership (2620) |
| PR Springfield Town Center LLC (9679) | PR Prince George's Plaza LLC (6377) |
| PR Moorestown Anchor-L&T, LLC (N/A) | PR Hyattsville LLC (3110) |
| PR Cumberland Outparcel LLC (N/A) | PR Plymouth Anchor-M, LLC (N/A) |
| PR Woodland Anchor-S, LLC (N/A) | PR Plymouth Anchor-M, L.P. (N/A) |
| PR Valley Anchor-S, LLC (N/A) | PR Valley Anchor-M, LLC (N/A) |
| PR Swedes Square LLC (N/A) | PR Valley Anchor-M Limited Partnership (N/A) |
| PR Magnolia LLC (5017) | PR TP LLC (N/A) |
| PR Financing II LLC (N/A) | PR TP LP (N/A) |
| PR Financing I LLC (N/A) | PR Exton LLC (N/A) |
| PR Cherry Hill Office GP, LLC (N/A) | PR Exton Limited Partnership (2620) |
| Bala Cynwyd Associates, L.P. (8913) | XGP LLC (N/A) |
| PR Valley LLC (4705) | PR Exton Square Property L.P. (7997) |
| PR Valley Limited Partnership (5123) | PR Plymouth Meeting LLC (N/A) |
| Plymouth Ground Associates LLC (N/A) | PR Plymouth Meeting Limited Partnership (8280) |
| Plymouth Ground Associates, LP (N/A) | PR Moorestown LLC (N/A) |
| PR AEKI Plymouth LLC (N/A) | PR Moorestown Limited Partnership (7661) |
| PR AEKI Plymouth, L.P. (N/A) | Moorestown Mall LLC (8051) |
| PR Gainesville LLC (N/A) | PR Moorestown Anchor-M LLC (N/A) |
| PR GV LLC (N/A) | PR PM PC Associates LLC (N/A) |
| PR GV LP (N/A) | PR PM PC Associates LP (N/A) |
| PR Gainesville Limited Partnership (N/A) | PR Plymouth Meeting Associates PC LP (N/A) |
| PR Valley View Anchor-M, LLC (N/A) | PR BVM LLC (N/A) |
| PR Valley View Anchor-M Limited Partnership (N/A) | PR Valley Solar LLC (N/A) |
| PR Exton Outparcel GP, LLC (N/A) | PREIT-RUBIN OP, Inc. (4799) |
| PR Exton Outparcel Holdings, LP (N/A) | PR Sunrise Outparcel 2, LLC (4373) |
| PR Exton Outparcel Limited Partnership (N/A) | PR Monroe Old Trail, LLC (N/A) |
| PR JK LLC (N/A) | PR Monroe Old Trail Limited Partnership (N/A) |
| PR Jacksonville LLC (4726) | PR Monroe Old Trail Holdings, LLC (N/A) |
| PR Jacksonville Limited Partnership (N/A) | PR Monroe Old Trail Holdings, L.P. (N/A) |
| PR Financing Limited Partnership (4892) | |