## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x
In re:                          : Chapter 11
                               :
PENNSYLVANIA REAL ESTATE INVESTMENT : Case No. 20-12737 (KBO)
TRUST, *et al.*,[1]                        :
                               : (Jointly Administered)
       Debtors.                    :
                               : **Re D.I.: 11**
------------------------------------------------------------- x

### INTERIM ORDER (I) AUTHORIZING
### THE DEBTORS' USE OF CASH COLLATERAL, (II) GRANTING
### ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY,
### (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of Pennsylvania Real Estate Investment Trust ("PREIT"),

and certain of its affiliates as debtors and debtors in possession (collectively, the "Debtors") in the

above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking entry of interim and final

orders pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b), 4001-2, and 9013-1(m) of

the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for

the District of Delaware (the "Local Rules"), requesting the following relief:

(a)      authorizing the Debtors to use "cash collateral," as such term is defined in
section 363(a) of the Bankruptcy Code, including the proceeds of Bridge Facility Collateral
(as defined herein) and any other cash in which any of the Bridge Facility Secured Parties
(as defined herein) has a lien or other interest ("Cash Collateral") as of the Petition Date,
in accordance with the Budget (as defined herein), and any permitted variances thereto,
and the terms of this interim order (this "Interim Order");

(b)      granting adequate protection to the Bridge Facility Secured Parties,
pursuant to sections 361, 362, and 363(e) of the Bankruptcy Code, for any aggregate

---

[1]      A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as **Schedule 1**.  The corporate headquarters and the mailing address for the Debtors is 2005 Market Street, Suite 1000, Philadelphia, PA 19103.

diminution in the value of their respective interests in the Bridge Facility Collateral, including Cash Collateral, as a result of, among other things, the imposition of the automatic stay, the granting of the Carve-Out (as defined herein), and the Debtors' use of Cash Collateral, in each case, as contemplated herein;

(c)    modifying the automatic stay imposed by section 362 of the Bankruptcy Code, to the extent necessary to permit the Debtors and the Bridge Facility Secured Parties to implement and effectuate the terms and provisions of this Interim Order;

(d)    subject to entry of an order granting the Motion on a final basis (the "Final Order"), waiving (i) the Debtors' ability to surcharge against the Bridge Facility Collateral or the Adequate Protection Collateral (as defined herein), pursuant to section 506(c) of the Bankruptcy Code, or any other applicable principle of equity or law, and (ii) the applicability of the "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(e)    scheduling a hearing to consider granting the Motion on a final basis (the "Final Hearing"), to be held within twenty-eight (28) days after the Petition Date; and

(f)    waiving any applicable stay, including any stay imposed by Bankruptcy Rule 6004, to provide for the immediate effectiveness of this Interim Order, as of the Petition Date;

all as more fully set forth in the Motion and the Declaration of *Mario C. Ventresca, Jr. in Support of First Day Pleadings*, filed contemporaneously with the Motion (the "First Day Declaration"); the Court having considered the Motion, the exhibits attached thereto, the First Day Declaration, and the evidence and arguments made at the hearing held on November 3, 2020 to consider the relief requested in the Motion on an interim basis (the "Interim Hearing"); due, proper, and sufficient notice of the interim relief requested in the Motion and the Interim Hearing having been given as is appropriate under the circumstances; and the Court having determined that the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties-in-interest and is a sound and prudent exercise of the Debtors' business judgment, and is essential for the continued operation of the Debtors' business; and after due deliberation, and good and sufficient cause appearing therefor:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED THAT:**

A.      **Petition Date**.  On November 1, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court").  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No statutory committee of unsecured creditors, trustee, or examiner has been appointed in the Chapter 11 Cases.

B.      **Jurisdiction and Venue**.  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 1334 and 157 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  The Motion and proceedings in connection therewith constitute a core proceeding, as defined in 28 U.S.C. §§ 157(b)(2).  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by this Court in connection with the Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      **Notice**.  Timely, adequate, and sufficient notice under the circumstances of the Motion and the Interim Hearing has been provided to the Notice Parties (as defined in the Motion) in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The aforementioned notices are good, sufficient and appropriate under the circumstances, and, except as provided herein with respect to notice of the Final Hearing and Final Order, no further notice of, or hearing on, the relief sought in the Motion is necessary.

D.    **Debtors' Stipulations**.  Without prejudice to the rights of parties in interest to the extent set forth in paragraph 20 below, the Debtors admit, stipulate, and agree (collectively, paragraphs D(1) through D(7) below are referred to herein as the "<u>Debtors' Stipulations</u>") as follows:

1.    <u>Bridge Facility</u>.  Pursuant to that certain Credit Agreement, dated as of August 11, 2020 (as amended, supplemented, or otherwise modified from time to time, the "<u>Bridge Credit Agreement</u>," and together with any other agreements and documents executed or delivered in connection therewith, each as may be amended, supplemented, or otherwise modified from time to time, the "<u>Bridge Credit Documents</u>"), by and among (a) PREIT, PREIT Associates, L.P. ("<u>PREIT Associates</u>"), and PREIT-Rubin, Inc. ("<u>PREIT-Rubin</u>"), as borrowers (the "<u>Borrowers</u>"), (b) Wells Fargo Bank, National Association, as administrative agent (in such capacity, the "<u>Bridge Agent</u>"), and (c) the lenders from time to time party thereto (the "<u>Secured Lenders</u>," and together with the Bridge Agent, in their capacity as such, the "<u>Bridge Facility Secured Parties</u>"), the Secured Lenders provided term loans and other financial accommodations to the Borrowers pursuant to the Bridge Credit Documents (the "<u>Bridge Facility</u>").

2.    <u>Bridge Facility Secured Obligations</u>.  The Bridge Facility provided the Borrowers with, among other things, term loan commitments in an aggregate principal amount of up to $55,000,000.  As of the Petition Date, the aggregate principal amount of term loans outstanding under the Bridge Facility was not less than $55,000,000 (together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees, financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Borrowers' obligations pursuant to the Bridge Credit Documents or the other grantors' obligations pursuant to the Collateral Agreement (as defined in the Bridge Credit Agreement) (together with the Borrowers, the "<u>Bridge Facility Obligors</u>"), including all "Secured Obligations," as defined in the Bridge Credit Agreement, and all interest, fees, costs, and other charges allowable under section 506(b) of the Bankruptcy Code, the "<u>Bridge Facility Secured Obligations</u>").

3.    <u>Liability for Bridge Facility Secured Obligations</u>.  The Bridge Facility Secured Obligations constitute legal, valid, binding, and non-avoidable obligations against each of the Bridge Facility Obligors and are not subject to any avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.  No payment or transfer made to or for the benefit of (or obligations incurred to or for the benefit of) the Bridge Facility Secured Parties by or on behalf of any of the Debtors prior to the Petition Date under or in connection with any of the Bridge Credit Documents is subject to avoidance,

recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action, or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.

4.     Bridge Facility Liens and Collateral. As more fully set forth in the Bridge Credit Documents, prior to the Petition Date, the Bridge Facility Obligors granted to the Bridge Agent, for its benefit and the benefit of the Secured Lenders, a security interest in and continuing lien on (the "Bridge Facility Liens") certain of their assets and property, including, without limitation, a first-priority security interest in and continuing lien on all Prepetition Collateral (including Cash Collateral) that does not constitute Excluded Property (as defined in the Bridge Credit Documents) and all proceeds and products of any of the foregoing, in each case, whether then owned or existing, thereafter acquired, or arising (collectively, the "Bridge Facility Collateral").

5.     The liens, security interests, and mortgages granted by the Bridge Facility Obligors to the Bridge Agent (for the ratable benefit of the Bridge Facility Secured Parties) to secure the Bridge Facility Secured Obligations are (a) legal, valid, binding, perfected, enforceable, first-priority liens on and security interests in the Bridge Facility Collateral to secure the Bridge Facility Secured Obligations; (b) not subject to avoidance, recharacterization, offset, or subordination pursuant to the Bankruptcy Code, applicable non-bankruptcy law, or other challenge; and (c) subject and subordinate only to any valid and unavoidable liens properly perfected prior to the Petition Date (or perfected after the Petition Date, to the extent permitted by section 546(b) of the Bankruptcy Code), solely to the extent such liens are permitted under the Bridge Credit Documents to be senior to the liens securing the Bridge Facility Secured Obligations (collectively, the "Permitted Prior Liens" and, the collateral subject to the Permitted Prior Liens, together with the Bridge Facility Collateral, the "Prepetition Collateral").

6.     Cash Collateral.  All of the Bridge Facility Obligors' cash that is Bridge Facility Collateral and all cash proceeds, rents, income, offspring, products, and profits of the Bridge Facility Collateral, including, without limitation, all such cash proceeds of such Bridge Facility Collateral held at any time in any of the Bridge Facility Obligors' banking, checking, or other deposit accounts with financial institutions, including all funds comprising the Cash Collateral Account (as defined in the Bridge Credit Agreement) and all deposits at any time contained therein (excluding, for the avoidance of doubt, the Excluded Deposit Account (as defined in the Collateral Agreement)) are and will be Cash Collateral of the Bridge Facility Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

7.     Release.  Subject to the rights of a party-in-interest other than the Debtors that are set forth in paragraph 20, the Debtors forever and irrevocably release, discharge, and acquit the Bridge Facility Secured Parties, in their capacities as such, and each of their respective former, current, and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, accountants, attorneys, affiliates, and predecessors- and successors-in-interest of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights,

assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery arising under common law, statute, or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to, the Bridge Credit Documents including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all claims and causes of action arising under the Bankruptcy Code, and (c) any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the liens or claims of the Bridge Facility Secured Parties.

E.    **Good Cause**.  Good cause has been shown for the entry of this Interim Order.  The Debtors have an immediate and critical need to use Cash Collateral on an interim basis to fund the continuation of their businesses in the ordinary course, to pay administrative and operating expenses, to prosecute the transactions contemplated under the Restructuring Support Agreement (as defined in the Motion), and otherwise to preserve and maximize their going-concern value, in each case, in a manner consistent with the Budget (and any permitted variances thereto).  Without access to, and the ability to use, Cash Collateral, the Debtors' ability to manage and administer their businesses and these Chapter 11 Cases and preserve their estates would be immediately and irreparably harmed, thereby materially impairing their respective estates and creditors and the likelihood of a successful outcome in these Chapter 11 Cases.  The Debtors do not have sufficient available sources of working capital or financing to operate their businesses or maintain their properties in the ordinary course of business without the authorized use of Cash Collateral.  The terms for the Debtors' use of Cash Collateral pursuant to this Interim Order have been the subject of extensive negotiations conducted in good faith and at arm's-length among the Debtors and the Bridge Facility Secured Parties.

F.    **Bridge Facility Secured Parties' Consent**.  The Debtors desire to use the cash, rents, income, offspring, products, proceeds, and profits that constitute Cash Collateral of the Bridge Facility Secured Parties under section 363(a) of the Bankruptcy Code, and the Bridge

Facility Secured Parties have consented to the Debtors' use of the Cash Collateral, subject to the entry of this Interim Order and the terms and conditions set forth herein.

G.   **Adequate Protection**.  The adequate protection provided to the Bridge Facility Secured Parties under this Interim Order for any Collateral Diminution (as defined below) is consistent with, and authorized by, the Bankruptcy Code and is offered by the Debtors to protect the Bridge Facility Secured Parties' respective interests in the Prepetition Collateral, including Cash Collateral, in accordance with sections 361, 362, and 363 of the Bankruptcy Code.  The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to (1) protect the Bridge Facility Secured Parties from any Collateral Diminution and (2) obtain the consents and agreements reflected herein.

H.   **Immediate Entry**.  The Debtors have requested immediate entry of this Interim Order pursuant to section 363(c)(2) of the Bankruptcy Code and Bankruptcy Rule 4001(b)(2).  The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their estates.  This Court concludes, therefore, that entry of this Interim Order is in the best interests of the Debtors', their estates and creditors, and all parties-in-interest in these Chapter 11 Cases.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**NOW, THEREFORE, IT IS HEREBY ADJUDGED AND ORDERED:**

1.   **Motion Granted**.  The Motion is granted on an interim basis, subject to the terms and conditions set forth in this Interim Order.  The Debtors are hereby authorized to use Cash Collateral on the terms and conditions set forth herein and in accordance with the Budget (and any permitted variances thereto) and shall not be permitted to use Cash Collateral except as set forth

in this Interim Order and the Budget (and any permitted variances thereto).  Any objection to the

Cash Collateral Motion with respect to the entry of this Interim Order that has not been withdrawn,

waived, settled, or otherwise resolved is hereby denied and overruled on the merits.

2.    **Use of Cash Collateral**.  Subject to the terms and conditions of this Interim Order

and in accordance with the Budget (and any permitted variances thereto), the Debtors are hereby

authorized to use Cash Collateral during the period beginning on the Petition Date and ending on

the Termination Date.

3.    **Budget**.  During the 13-week period (the "Budget Period") commencing on the

Petition Date, the Debtors are authorized to use Cash Collateral in accordance with and as set forth

in the budget (and any permitted variances thereto) attached as **Exhibit 1** to this Interim Order (the

"Initial Budget").  Beginning with the fifth week following the Petition Date and every four weeks

thereafter, as applicable (and no later than the fourth business day of such week) (the "Budget

Delivery Date"), the Debtors shall deliver an updated budget for the 13-week period following,

but including, the week in which the Budget Delivery Date has occurred (each such budget,

a "Proposed Budget") to (a) the Bridge Agent, Wells Fargo Bank, National Association, 10 South

Wacker Drive, 32nd Floor, Chicago, Illinois 60606 (Attn: Brandon Barry

(brandon.barry@wellsfargo.com); (b) counsel to the Bridge Agent, (i) Jones Day, 250 Vesey

Street, New York, New York 10281 (Attn: Benjamin Rosenblum, Esq.

(brosenblum@jonesday.com), Stacey L. Corr-Irvine, Esq. (scorrirvine@jonesday.com), and

Danielle D. Donovan, Esq. (ddonovan@jonesday.com)) and (ii) Womble Bond Dickinson (US)

LLP ("Womble Bond Dickinson"), 1313 North Market Street, Suite 1200, Wilmington, Delaware

19801 (Attn: Matthew P. Ward, Esq. (matthew.ward@wbd-us.com)); and (c) financial advisor to

the Bridge Agent, FTI Consulting, Inc. ("FTI"), 3 Times Square, 10th Floor, New York, New York

10036 (Attn: William J. Nolan (william.nolan@fticonsulting.com), Ron Greenspan (ron.greenspan@fticonsulting.com) and Cynthia Nelson (cynthia.nelson@fticonsulting.com) (collectively, the "Bridge Agent Notice Parties").  Upon approval of such Proposed Budget by the Bridge Agent, the Debtors shall file same with the Court and be authorized to use Cash Collateral in accordance with, and as set forth in, such approved Proposed Budget (as such Proposed Budget may be modified from time to time by the Debtors with the prior written consent of the Bridge Agent, subject to the permitted variances described below, and together with the Initial Budget, the "Budget").  Each Proposed Budget shall be of no force and effect unless and until it is approved by the Bridge Agent, and until such approval is provided, the prior approved Budget shall remain in effect.  Consent by email from counsel to the Bridge Agent to lead counsel to the Debtors shall be sufficient for every consent required under this paragraph.  Actual ["Net Disbursements"] as permitted in the Budget shall not exceed 20% of the forecasted budgeted amount thereof on a cumulative basis for any consecutive four-week period under the Budget (to be tested on Thursday of each week beginning with the fourth full week following the week in which the Petition Date occurs). For the avoidance of doubt, the term "Net Disbursements" refers to such line item in the Budget.

4.    **Budget Variance Reports.** On Thursday of each week (beginning with the week following the Petition Date), the Debtors shall deliver a weekly reporting package to the Bridge Agent Notice Parties, which shall be consistent with the reporting under the Bridge Credit Agreement and include a variance analysis of:  (a) forecasted Budget line items versus actual results for the previous week and (b) cumulative forecasted Budget line items versus cumulative actual results to the Petition Date and with regard to the prior four-week budget period (the "Budget Variance Report").  The Budget Variance Report shall include, among other things, mathematical

variances for the applicable weekly and cumulative periods, along with commentary regarding significant favorable and unfavorable variances.

5.    **Cash Collateral Account.**  Unless otherwise approved by the Bridge Agent in writing, the Debtors may withdraw funds from the Cash Collateral Account only in amounts that do not exceed (A) the sum of the aggregate amount set forth across from the line items in the Budget Total Cash Disbursements, Restructuring Related Amounts and Total Debt Service, in each case for the week following the proposed withdrawal date in accordance with the Budget then in effect multiplied by (B) 120%.  Notwithstanding the foregoing, the Debtors shall only be permitted to withdraw funds from the Cash Collateral Account when the Debtors' unrestricted cash and cash equivalents is equal to or less than $12,500,000.

6.    **Adequate Protection**.  The Bridge Facility Secured Parties are entitled, pursuant to sections 362, 363(c)(2), and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including Cash Collateral, to the extent of the aggregate postpetition diminution in value of such Prepetition Collateral, including Cash Collateral, from and after the Petition Date and calculated in accordance with section 506(a) of the Bankruptcy Code (the "Collateral Diminution"), and accordingly, are hereby granted, subject to the Carve-Out, the claims, liens, rights, and benefits set forth in the following paragraphs 7 through 9 as adequate protection of their interests in the Prepetition Collateral, including Cash Collateral (collectively, the "Adequate Protection Obligations").  Each dollar of cash withdrawn from the Cash Collateral Account shall be deemed to constitute Collateral Diminution for all purposes of this Interim Order, which, for the avoidance of doubt, shall entitle the Bridge Facility Secured Parties the benefits of the Adequate Protection Superpriority Claims (defined below) and Adequate Protection Liens (defined below).

7. **Adequate Protection Superpriority Claims**. Subject and subordinate only to the Carve-Out, the Bridge Facility Secured Parties are hereby granted, as of the Petition Date, allowed superpriority administrative expense claims (the "Adequate Protection Superpriority Claims") against the Debtors and their estates to the extent of any Collateral Diminution, as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors now existing or hereafter arising in these Chapter 11 Cases, including all claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c) (upon entry of a Final Order providing for such relief), 507(a), 507(b), and 726.

8. **Adequate Protection Liens**. Subject and subordinate only to (a) the Carve-Out and (b) the Permitted Prior Liens, the Bridge Agent, for its benefit and for the benefit of the Bridge Facility Secured Parties, is hereby granted, as of the Petition Date, to the extent of any Collateral Diminution, and, in each case, perfected without the necessity of the execution by the Debtors (or recordation or other filing) of any security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, or the possession or control by the Bridge Facility Secured Parties of any Adequate Protection Collateral, valid, binding, continuing, enforceable, fully-perfected, non-avoidable (a) first-priority additional and replacement liens on, and security interest in, all tangible and intangible prepetition and postpetition property in which any of the Debtors or their respective estates have an interest of any kind or nature, whether existing on or as of the Petition Date or thereafter acquired or created and wherever located that is not subject to a Permitted Prior Lien (the "Previously Unencumbered Property"); (b) first-priority additional and replacement liens on, and security interest in, the Bridge Facility Collateral; and (c) second-priority additional and replacement liens on, and security interest in, any property of

the Debtors subject to Permitted Prior Liens  (the foregoing property in the foregoing clauses (a) through (c) collectively is referred to herein as the "Adequate Protection Collateral," and the liens and security interests therein, the "Adequate Protection Liens"); provided, that, the Adequate Protection Collateral shall not include any commercial tort or avoidance actions (or the proceeds thereof) brought pursuant to chapter 5 of the Bankruptcy Code or section 724(a) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable state law equivalents, or the proceeds thereof.  The Adequate Protection Liens shall be deemed to be legal, valid, binding, enforceable, fully and properly perfected liens, not subject to subordination, recharacterization, or avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases (as defined below).  Subject and subordinate only to (a) the Carve-Out and (b) the Permitted Prior Liens, the Adequate Protection Liens shall not be (i) subject or subordinate to any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

9.    **Additional Adequate Protection**.

(a)    Milestones.  The Debtors shall comply with the milestones set forth on the schedule attached hereto as **Exhibit 2** (the "Milestones").

(b)    Payment of Fees and Expenses.  The Debtors are authorized and directed to pay, in cash, on the terms set forth in this paragraph, all reasonable and documented fees, expenses, disbursements, and other charges incurred by, and payable to, professionals retained by the Bridge Facility Secured Parties, comprising (i) counsel to the Bridge Agent, (A) Jones Day and (B) Womble Bond Dickinson; and (ii) FTI, as financial advisors to the Bridge Agent, and, in each case, whether incurred before, on, or after the Petition Date, and without further order of, or application

to, this Court. Provided that an objection is not asserted by either the Debtors or the U.S. Trustee within ten (10) calendar days (or such longer period granted by the Bridge Agent) of the delivery of a summary invoice by the applicable professional to the Debtors (with a copy of such invoice to be contemporaneously sent to the U.S. Trustee), the Debtors shall pay in cash all invoiced reasonable and documented fees, expenses, disbursements, and other charges set forth in this paragraph. The invoices shall only be required to include a summary description of services provided and the expenses incurred by the applicable professional; provided, that, such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or other applicable privilege. The Bridge Facility Secured Parties and their respective professionals shall not be required to file applications or motions with, or obtain approval of, this Court for the payment of any of their fees, expenses, disbursements, or other charges. If the Debtors or the U.S. Trustee object to the reasonableness of the fees and expenses of any professional retained by a Bridge Facility Secured Party and cannot resolve such objection within seven (7) calendar days of the assertion of such objection, then the Debtors or the U.S. Trustee, as the case may be, shall file with the Court and serve on the affected Bridge Facility Secured Party and the relevant professional, an objection (a "Fee Objection"), and any failure by such party to file a Fee Objection within such ten-day period (or such longer period granted by the Bridge Agent) (the "Fee Objection Period") shall constitute a waiver of any right to object to the applicable invoice. If a Fee Objection is filed during the Fee Objection Period, the Debtors shall only be required to pay the undisputed amount of such invoice (if any), and this Court shall have jurisdiction to resolve all Fee Objections with

respect to the disputed portion thereof (it being understood that the Debtors are authorized and directed to pay any disputed portion of such invoice promptly upon consensual resolution of such Fee Objection between the objecting party and the relevant party or professional).

(c)     Reporting.  The Debtors shall promptly provide (via email) copies to the Bridge Agent and the Bridge Agent Notice Parties of all financial and other information required to be delivered under the Bridge Credit Documents, as applicable, along with any other reports provided by the Debtors to the U.S. Trustee in these Chapter 11 Cases.

(d)     Access to Records.  In addition to, and without limiting, any rights to access that the Bridge Facility Secured Parties have under the Bridge Credit Documents, upon reasonable notice and at reasonable times during normal business hours, the Debtors shall permit representatives, agents, advisors, and employees of the Bridge Agent (i) to have access to and inspect the Debtors' properties; (ii) to examine the Debtors' books and records; and (iii) to discuss (no less than twice per calendar month) the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

(e)     Credit Bid.  Upon entry of a Final Order providing for such relief, without prejudice to the holders of any Permitted Prior Liens, and subject to the challenge rights of parties in interest in paragraph 20 of this Interim Order, in any sale of all or any portion of the Prepetition Collateral and/or Adequate Protection Collateral, including, without limitation, any sale (i) pursuant to section 363 of the Bankruptcy Code, (ii) pursuant to a plan of reorganization or liquidation under section 1123 of the Bankruptcy Code, or (iii) by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code, the Bridge Agent, on behalf of the Bridge Facility Secured Parties, shall have the right to credit bid the Bridge Facility Collateral on a dollar-

for-dollar basis (A) up to the full amount of the outstanding Bridge Facility Secured Obligations and (B) the Adequate Protection Superpriority Claim.

10. **Perfection of Adequate Protection Liens**.

(a)    The Bridge Agent is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and perfect the Adequate Protection Liens granted hereunder.  Whether or not the Bridge Agent, in its sole discretion, chooses to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, such Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, at the time and on the date of entry of this Interim Order.  If the Bridge Agent determines to file or execute any financing statements, agreements, notice of liens, or similar instruments, the Debtors will cooperate and assist in any such execution and/or filings as reasonably requested by the Bridge Agent and the automatic stay shall be modified to allow such filings.

(b)    A certified copy of this Interim Order may, in the discretion of the Bridge Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording; provided, that, notwithstanding the date of any such filing, the date of such perfection shall be the date of entry of this Interim Order.

(c)    For the avoidance of doubt, without the necessity of the filing of financing statements, security agreements, federal or state notices, pledge agreements, recordings,

mortgages, or other documents or taking possession or control of any Prepetition Collateral or Adequate Protection Collateral, this Interim Order shall be sufficient evidence of the Bridge Facility Secured Parties' Adequate Protection Liens granted hereunder in the Adequate Protection Collateral pursuant to this Interim Order.  Furthermore, notwithstanding the foregoing, the Debtors are authorized to execute and deliver such documents including, without limitation, mortgages, pledges, and Uniform Commercial Code financing statements and to use Cash Collateral to pay such costs and expenses as may be reasonably requested by the Bridge Agent to provide further evidence of the perfection of the Bridge Agent's Adequate Protection Liens in the Adequate Protection Collateral as provided for herein.  All such documents shall be deemed to have been recorded and filed as of the Petition Date.

11.    **Carve-Out**.

(a)    As used in this Interim Order, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of this Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code (in such amounts as determined in agreement with the United States Trustee or by final order of the Court) plus interest at the statutory rate (without regard to the Carve-Out Trigger Notice (as defined below)); (ii) all reasonable fees and expenses up to $25,000 incurred under section 726(b) of the Bankruptcy Code by a trustee appointed in any chapter 7 cases of the Debtors (without regard to the Carve-Out Trigger Notice); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid monthly or hourly fees and expenses on account of services performed in connection with the Chapter 11 Cases by persons or firms retained by the Debtors or a statutory committee appointed in these Chapter 11 Cases pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code (collectively, the "Estate Professionals"), incurred at any time before or on the first business

day following delivery by the Bridge Agent of a Carve-Out Trigger Notice as described below whether allowed by this Court prior to or after the delivery of a Carve-Out Trigger Notice (collectively, the "Pre-Carve-Out Trigger Notice Allowed Professional Fees"); and (iv) to the extent allowed by interim order, procedural order, or otherwise, all unpaid monthly or hourly fees and expenses on account of services performed by the Estate Professionals in connection with the Chapter 11 Cases at any time after the first business day following delivery by the Bridge Agent of a Carve-Out Trigger Notice (collectively, the "Post-Carve-Out Trigger Notice Allowed Professional Fees" and, together with the Pre-Carve-Out Trigger Notice Allowed Professional Fees, the "Allowed Professional Fees") incurred by Estate Professionals in an aggregate amount not to exceed $1,000,000 (the amounts set forth in this clause (iv) being together the "Post-Carve-Out Trigger Notice Cap"); provided, that, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described in clauses (iii) and (iv) above on any grounds.  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Bridge Agent or counsel to the Bridge Agent to the Debtors and their lead restructuring counsel, with a copy to the U.S. Trustee, following the occurrence and during the continuation of a Termination Event and stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(b)     Pre-Carve-Out Trigger Notice Reserve.  Prior to the issuance of a Carve-Out Trigger Notice, fees and expenses of Estate Professionals on account of services performed with respect to the Debtors and the Chapter 11 Cases shall be invoiced to the Debtors on a monthly basis and promptly deposited by the Debtors into a segregated escrow account (the "Pre-Carve-Out Trigger Notice Reserve") established by the Debtors.  The funds in the Pre-Carve-Out Trigger

Notice Reserve shall be held in trust to pay Pre-Carve-Out Trigger Notice Allowed Professional Fees prior to payment of all other claims.

        (c)    <u>Post-Carve-Out Trigger Notice Reserve</u>.  On the day on which a Carve-Out Trigger Notice is given by the Bridge Agent or counsel to the Bridge Agent to the Debtors and their lead restructuring counsel, with a copy to the U.S. Trustee (the "<u>Termination Declaration Date</u>"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the unpaid amounts of the Pre-Carve-Out Trigger Notice Allowed Professional Fees that have not already been funded into the Pre-Carve-Out Trigger Notice Reserve.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such unpaid Pre-Carve-Out Trigger Notice Allowed Professional Fees prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve-Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve-Out Trigger Notice Cap (the "<u>Post-Carve-Out Trigger Notice Reserve</u>" and, together with the Pre-Carve-Out Trigger Notice Reserve, the "<u>Carve-Out Reserves</u>") prior to the payment of any and all other claims.  All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above (the "<u>Pre-Carve-Out Amounts</u>"), but not, for the avoidance of doubt, the Post-Carve-Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the Bridge Agent for the benefit of the Bridge Facility Secured Parties, unless the Bridge Facility Secured Obligations and the Adequate Protection Superpriority Claims have been indefeasibly paid in full, in cash, in which case, any such excess shall be released from trust and

returned to the Debtors and their estates.  All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth above (the "Post-Carve-Out Amounts"), and then, to the extent the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the Bridge Agent for the benefit of the Bridge Facility Secured Parties, unless the Bridge Facility Secured Obligations and the Adequate Protection Superpriority Claims have been indefeasibly paid in full, in cash, in which case, any such excess shall be released from trust and returned to the Debtors and their estates. Notwithstanding anything to the contrary in the Bridge Credit Documents or this Interim Order, if either of the Carve-Out Reserves is not funded in full in the amounts set forth above, then any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve-Out Amounts and Post-Carve-Out Amounts, respectively, shall be used to fund the other Carve-Out Reserve, up to the applicable amount set forth above, prior to making any payments to the Bridge Agent for the benefit of the Bridge Facility Secured Parties or any of the Debtors' creditors, as applicable.  Notwithstanding anything to the contrary in the Bridge Credit Documents or this Interim Order, following delivery of a Carve-Out Trigger Notice, the Bridge Agent shall not sweep or foreclose on cash of the Debtors until the Carve-Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve-Out Reserves, if any.  Furthermore, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve-Out Reserves shall not increase or reduce the Bridge Facility Secured Obligations, provided, that, to the extent the Bridge Facility Secured Obligations and the Adequate Protection Superpriority Claim have not been indefeasibly paid in full, in cash, any disbursements to the Bridge Agent for the benefit of the Bridge Facility Secured Parties as expressly contemplated in this paragraph 11(c), shall reduce the Bridge Facility Secured Obligations or the Adequate

Protection Superpriority Claim, as applicable, to the extent of any such disbursements; (ii) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out or the payment obligations by the Debtors of such unpaid Allowed Professional Fees, and (iii) in no way shall the Initial Budget, the Budget, the Carve-Out, the Post-Carve-Out Trigger Notice Cap, the Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order or in any Bridge Credit Document, the Carve-Out shall be senior to all liens and claims securing the Bridge Facility Secured Obligations, including the Bridge Facility Liens, the Adequate Protection Superpriority Claims, and the Adequate Protection Liens.

(d)    No Direct Obligation To Pay Allowed Professional Fees.    None of the Bridge Facility Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Estate Professional incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the Bridge Facility Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Estate Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)    Payment of Carve-Out On or After the Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

For the avoidance of doubt and notwithstanding anything to the contrary herein or in any of the Bridge Credit Documents, the Carve-Out shall not include, apply to, or be available for any

fees or expenses incurred by any party in connection with (i) the investigation, initiation, or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the Bridge Facility Secured Parties; (ii) challenging the amount, validity, perfection, priority, or enforceability of or asserting any defense, counterclaim, or offset to, the Bridge Facility Liens, the Bridge Facility Secured Obligations, the Adequate Protection Superpriority Claims, the Adequate Protection Liens, or any other claims, liens, or security interests granted under this Interim Order or the Bridge Credit Documents, including, without limitation in each case, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; or (iii) attempts to prevent, hinder, or otherwise delay any of the Bridge Facility Secured Parties' assertion, enforcement or realization upon any Bridge Facility Collateral or Adequate Protection Collateral once a Termination Event has occurred and after the Default Notice Period.

12.    **Termination**.  Absent consent of the Bridge Facility Secured Parties, the Debtors' right to use Cash Collateral pursuant to this Interim Order shall terminate without further notice or court proceeding on the earliest to occur of (a) the date that is 28 calendar days after the Petition Date, if the Final Order has not been entered by the Court on or before such date (as such period may be extended with the consent of the Bridge Agent); (b) the effective date of a confirmed chapter 11 plan of any of the Debtors; (c) the date of the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors; and (d) the delivery of (i) a Default Notice (as defined below) via email by the Debtors to the Bridge Agent, counsel to the Bridge Agent, and the U.S. Trustee upon the occurrence of any Termination Event (as defined below), or (ii) a termination notice (a "Termination Notice") following a Termination Event by either the Bridge Agent or counsel to the Bridge Agent to the Debtors, with a copy to the U.S. Trustee, unless

such Termination Event is cured or waived by the Bridge Agent within five (5) business days (or such later date as may be agreed to in writing by the Bridge Agent) (the "Default Notice Period") following delivery of such Default Notice or Termination Notice, as applicable. Unless otherwise consented to or waived by the Bridge Agent, each of the following occurrences shall constitute a "Termination Event":

      (a)     this Interim Order shall cease to be in full force and effect for any reason or shall be modified or amended;

      (b)     the Debtors' failure to comply with or perform in any material respect the terms, provisions, covenants, agreements, obligations, and/or any of the Milestones set forth on Exhibit 2, in this Interim Order;

      (c)     the Debtors' failure to comply with the Budget (excluding amounts attributable to the fees and expenses of the Debtors' or the Bridge Facility Secured Parties' legal, financial, and other professional advisors), subject to permitted variances;

      (d)     an application, motion, or other pleading shall have been filed by any Debtor seeking to reverse, amend, stay, supplement, vacate, extend, terminate, or modify in any manner this Interim Order, or an order shall have been entered reversing, amending, supplementing, staying, extending, vacating, terminating, or otherwise materially modifying this Interim Order in a manner adverse to the Bridge Facilities Secured Parties (other than a modification or supplementation as a result of the entry of the Final Order);

      (e)     this Court shall have entered an order dismissing any of the Debtors' Chapter 11 Cases, or any Debtor shall have filed (or failed to object to) a motion or other pleading seeking such dismissal;

      (f)     this Court shall have entered an order converting any of the Debtors' Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or any Debtor shall have filed (or failed to object to) a motion or other pleading seeking such relief;

      (g)     any Debtor (or any direct or indirect non-debtor affiliate or subsidiary of a Debtor) commences (or supports) any action, including by filing any motion, application, or other pleading, against any of the Bridge Facility Secured Parties or otherwise challenging the Bridge Facility Secured Obligations (including challenging the validity, enforceability, perfection, or priority of any lien securing any such obligation), the Bridge Facility Liens and/or the Bridge Facility Collateral;

(h)     this Court shall have entered an order invalidating, avoiding, disallowing, subordinating, limiting, or recharacterizing, in any respect, any claim, lien, or interest of any Bridge Facility Secured Party arising under the Bridge Credit Documents;

(i)     this Court shall have entered an order authorizing the appointment or election of a trustee (including a chapter 11 trustee), responsible officer, examiner (other than a fee examiner), or any other representative with expanded powers relating to the operation of the Debtors' businesses in any of the Debtors' Chapter 11 Cases, or any Debtor applies for, consents to, or acquiesces in (or fails to object to), any such appointment or election (as applicable);

(j)     any Debtor shall have filed a motion or application for the approval of any superpriority claim or any lien in any of the Debtors' Chapter 11 Cases (other than such claim or lien granted or permitted pursuant to this Interim Order or a Final Order), that is *pari passu* with or senior to any of the Adequate Protection Liens, Adequate Protection Superpriority Claims, or Bridge Facility Liens;

(k)     other than with respect to the Carve-Out, any Debtor shall create or incur, or this Court enters an order granting, any claim or lien that is *pari passu* with or senior to any of the Bridge Facility Liens, Bridge Facility Secured Obligations, the Adequate Protection Liens, or Adequate Protection Superpriority Claims (other than any such claim or lien granted or permitted pursuant to this Interim Order);

(l)     the Debtors shall file (or this Court shall grant) any application, motion, or borrowing request seeking to use Cash Collateral on a nonconsensual basis;

(m)     the termination of the Restructuring Support Agreement;

(n)     any Debtor shall make any material payment (including "adequate protection" payments) with respect to any prepetition indebtedness, other than as contemplated or permitted by this Interim Order and any other "first day" orders entered by this Court; and

(o)     any Debtor shall have filed a motion for the sale or disposition of any material asset of any of the Debtors outside of the ordinary course of business.

13.     **Remedies Upon the Termination Date**.  The Debtors shall promptly (but in no event later than two (2) business days following the occurrence of such Termination Event) provide notice in writing of the occurrence of any Termination Event (a "<u>Default Notice</u>") to the Bridge Agent and counsel to the Bridge Agent, with a copy to the U.S. Trustee, and the Bridge Agent may send a Termination Notice to the Debtors and their counsel, with a copy to the U.S.

Trustee, following receipt of the Default Notice or otherwise upon becoming aware that a Termination Event has occurred, in which case the Debtors' use of Cash Collateral shall terminate at the end of the Default Notice Period (the "Termination Date") unless otherwise ordered by the Court.  During the Default Notice Period, the Debtors shall be entitled to use Cash Collateral solely to the extent necessary to (a) avoid immediate and irreparable harm to the Debtors and otherwise in a manner consistent with the Budget and this Interim Order; (b) contest whether a Termination Event has occurred and is continuing; and (c) request an expedited hearing before the Court. Subject to the immediately preceding sentence, upon the Termination Date, the Debtors shall immediately cease using Cash Collateral, other than with regard to the Carve-Out. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits, and protections provided to the Bridge Facility Secured Parties under this Interim Order shall survive the Termination Date.  Furthermore, the delay or failure to exercise rights and remedies under this Interim Order or the Bridge Credit Documents shall not constitute a waiver of the Bridge Facility Secured Parties' respective rights hereunder, thereunder, or otherwise.

14. **Limitation on Charging Expenses Against Collateral**.  Upon entry of a Final Order providing for such relief, all rights to surcharge any Bridge Facility Collateral or Adequate Protection Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties-in-interest in these Chapter 11 Cases and any Successor Cases.

15. **No Marshalling**.  Upon entry of a Final Order providing for such relief, the Bridge Facility Secured Parties shall not be subject to the equitable doctrine of "marshalling" or any other

similar doctrine with respect to any of the Bridge Facility Collateral (including Cash Collateral), the Adequate Protection Collateral, as applicable, or otherwise.

16.     **Bankruptcy Code Section 552(b).**  The Bridge Facility Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, upon entry of a Final Order providing for such relief, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Bridge Facility Secured Parties with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral.

17.     **Reservation of Rights**.  Notwithstanding any other provision hereof, the grant of adequate protection to the Bridge Facility Secured Parties pursuant to this Interim Order is without prejudice to the rights of the Bridge Facility Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection with respect to Collateral Diminution from and after the Petition Date.

18.     **Authorization to Effectuate Relief and Modification of Automatic Stay**. The Debtors are authorized to perform all acts and to make, execute, and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified and vacated to the extent necessary to permit the Debtors and each of the Bridge Facility Secured Parties to accomplish the transactions contemplated by this Interim Order and for any Bridge Facility Secured Party to take any other action in accordance with this Interim Order.

19.     **Preservation of Rights Granted Under This Interim Order**.

(a)     Notwithstanding any order dismissing any of these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time (i) the Adequate Protection Superpriority Claims, the other administrative claims granted to the Bridge Facility Secured Parties

pursuant to this Interim Order, and the Adequate Protection Liens, shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and such Adequate Protection Superpriority Claims, the other claims granted to the Bridge Facility Secured Parties pursuant to this Interim Order, and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties-in-interest); and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (i) above.

(b)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, or vacated, such reversal, modification, or vacatur shall not affect (i) the validity, priority, or enforceability of any Adequate Protection Obligations incurred or accruing prior to the actual receipt of written notice by the Bridge Facility Secured Parties of the effective date of such reversal, modification, or vacatur; or (ii) the validity, priority, or enforceability of the Adequate Protection Liens or Adequate Protection Superpriority Claims.  Notwithstanding any such reversal, modification, or vacatur, any use of the Cash Collateral or any Adequate Protection Obligations incurred or accruing hereunder prior to the actual receipt of written notice by the Bridge Agent of the effective date of such reversal, modification, or vacatur shall be governed in all respects by the original provisions of this Interim Order.

(c)    Except as expressly provided in this Interim Order, the Adequate Protection Obligations, the Adequate Protection Superpriority Claims, the Adequate Protection Liens, and all other rights and remedies of the Bridge Facility Secured Parties granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired, or discharged by the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code,

dismissing any of the Chapter 11 Cases, or confirming a plan of reorganization or liquidation in any of the Chapter 11 Cases, and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Interim Order shall continue in the Chapter 11 Cases or in any conversion of the cases to chapter 7 cases under the Bankruptcy Code (the "Successor Cases"), and the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the other administrative claims granted pursuant to this Interim Order, and all other rights and remedies of the Bridge Facility Secured Parties granted by the provisions of this Interim Order shall continue in full force and effect, including in any Successor Cases, until all Adequate Protection Obligations are indefeasibly paid in full in cash.

20.     **Effect of Stipulations**. The stipulations and admissions contained in this Interim Order, including, without limitation, the Debtors' Stipulations, shall be binding upon the Debtors and their respective representatives, successors, and assigns in all circumstances. The stipulations and admissions contained in this Interim Order, including, without limitation, the Debtors' Stipulations, also shall be binding upon the Debtors' estates and all other parties-in-interest, including any statutory committee appointed in the Chapter 11 Cases or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), for all purposes unless and to the extent (a) such party has, as appropriate, filed a motion or objection or, after obtaining standing to file an adversary proceeding (provided that any motion seeking such standing shall include any applicable adversary complaint), has commenced an adversary proceeding by no later than the earlier of (A) the date that is the deadline for objecting to confirmation of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Pennsylvania Real Estate Investment Trust and Certain of Its Direct and Indirect Subsidiaries* [Docket No. 15] and (B) with respect to a statutory committee,

if any, sixty (60) days from the date of its formation, and, with respect to any other party in interest, seventy-five (75) days from the date of entry of this Interim Order (the "Challenge Period"), (i) challenging the amount, validity, enforceability, priority, or extent of the Bridge Facility Secured Obligations or the Bridge Facility Liens, or (ii) otherwise asserting any other claims, counterclaims, causes of action, objections, contests, or defenses against any Bridge Facility Secured Party on behalf of the Debtors' estates ((i) and (ii), collectively, the "Claims and Defenses"); and (b) the Court has entered an order (which becomes final and non-appealable) in favor of such party sustaining any such challenge or claim.  Notwithstanding the foregoing, if a party in interest files a motion prior to the expiration of the Challenge Period that seeks standing to pursue an adversary complaint appended to the standing motion, then the Challenge Period for such party in interest with respect to such challenge shall be tolled during the pendency of entry of an order by the Court on the standing motion.  If no such motion, objection or adversary proceeding is timely filed prior to the expiration of the Challenge Period, without further action by any party or order of the Court (a) the stipulations and admissions contained in this Interim Order, including the Debtors' Stipulations, shall be irrevocably binding on all parties-in-interest, including any statutory committee appointed in the Chapter 11 Cases and any Trustee, and all successors and assigns of any of the foregoing; (b) the Bridge Facility Secured Obligations shall constitute allowed secured claims, not subject to counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as such term is defined in the Bankruptcy Code), impairment, subordination (whether equitable, contractual, or otherwise), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, for all purposes, including in these Chapter 11 Cases and any Successor Cases; (c) the Bridge

Facility Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, properly perfected, non-avoidable, enforceable, and of the priority set forth in this Interim Order, not subject to counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as such term is defined in the Bankruptcy Code), impairment, subordination (whether equitable, contractual, or otherwise), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (d) the Bridge Facility Secured Obligations, the Bridge Facility Liens, and the Bridge Facility Secured Parties (and their respective agents, affiliates, parents, subsidiaries, partners, controlling persons, directors, officers, employees, representatives, attorneys, professionals, and advisors) shall not be subject to any other or further challenge by any party-in-interest (and any of the successors or assigns of any of the foregoing) with respect to any Claims and Defenses, and any such party-in-interest and any of its respective successors and assigns forever shall be enjoined and barred from seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period) or taking any such action, in each case, with respect to any Claim and Defense as set forth above.  If any such motion, objection or adversary proceeding is timely filed by a party-in-interest with the requisite standing prior to the expiration of the Challenge Period, the stipulations and admissions contained in this Interim Order, including, without limitation, the Debtors' Stipulations, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any statutory committee appointed in the Chapter 11 Cases and any other person or party-in-interest, including a Trustee, except as to any such findings and admissions that were expressly and successfully challenged in

such contested matter or adversary proceeding.  Nothing in this Interim Order vests or confers on any person, including any Trustee, standing or authority to pursue any cause of action belonging to the Debtors or their estates.  In the event that there is a timely and successful challenge brought pursuant to this paragraph, this Court shall retain jurisdiction to fashion an appropriate remedy.  The stipulations and admissions contained in this Interim Order, including, without limitation, the Debtors' Stipulations, shall be binding upon the Debtors, their estates, all parties-in-interest in the Chapter 11 Cases, and their respective successors and assigns, including any Trustee or other fiduciary appointed in the Chapter 11 Cases or any Successor Cases, and shall inure to the benefit of the Bridge Facility Secured Parties and the Debtors and their respective successors and assigns, as applicable.

21.    **Limitation on Use of Cash Collateral**.  The Debtors shall use Cash Collateral solely as provided in this Interim Order and in accordance with the Budget (and any permitted variances thereto).  Notwithstanding anything in this Interim Order, no Cash Collateral or any portion of the Carve-Out may be used, directly or indirectly to (a) investigate, object to, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of the Bridge Facility Secured Obligations or the liens or claims granted under this Interim Order or the Bridge Credit Documents, including the Bridge Facility Liens; (b) investigate, assert, or prosecute any Claims and Defenses against any of the Bridge Facility Secured Parties or their respective predecessors, successors, agents, employees, affiliates, representatives, attorneys, or advisors; (c) seek to modify any of the rights granted to the Bridge Facility Secured Parties hereunder; or (d) hinder or otherwise delay the Bridge Facility Secured Parties' assertion, enforcement, or realization on the Bridge Facility Secured Obligations, Cash Collateral, the Bridge Facility Liens, the Adequate Protection Superpriority Claims, or the Adequate Protection Liens in accordance

with this Interim Order and, as applicable, other than to seek a determination that a Termination Event has not occurred or is not continuing as permitted herein.

22. **Cash Management**.   The Debtors shall maintain their cash management arrangements in a manner consistent with that described in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Continued Use of the Debtors' Cash Management System, (II) Authorizing the Continued Intercompany Transfers Among Debtor and Non-Debtor Affiliates and (III) Granting Related Relief* [Docket No. 10] (the "Cash Management Motion," and such arrangements, the "Cash Management Arrangements") and, for the avoidance of doubt, the Debtors shall not transfer any funds (including, without limitation, any Cash Collateral) to any non-Debtor affiliates during these Chapter 11 Cases, except in accordance with the Budget and the Cash Management Arrangements.

23. **Binding Effect; Successors and Assigns**.   The provisions of this Interim Order, including all findings herein, shall be binding upon all parties-in-interest in the Chapter 11 Cases and any Successor Cases, and shall inure to the benefit of the Bridge Facility Secured Parties and the Debtors and their respective successors and assigns.

24. **No Third-Party Rights**.   Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

25. **Limitation of Liability**.   Upon entry of a Final Order providing for such relief, in permitting the Debtors' use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, the Bridge Facility Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of any of the Debtors (as such terms, or

any similar terms, are used in the Internal Revenue Code, or any other federal or state statute), nor shall they owe any fiduciary duty to any of the Debtors, their creditors, or estates or constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.

26.    **Effectiveness**.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be enforceable as of the Petition Date immediately upon its entry. There shall be no stay of the effectiveness or enforceability of this Interim Order.

27.    **Proofs of Claim**.    Notwithstanding any order entered by this Court in relation to the establishment of a bar date for filing a claim (including, without limitation, administrative claims) in any of the Chapter 11 Cases or Successor Cases to the contrary, (a) the Bridge Agent, on behalf and for the benefit of the Bridge Facility Secured Parties (i) is hereby authorized and entitled, in its sole discretion, to file (and amend and/or supplement, as it deems fit) a single, master, consolidated proof of claim in respect of the Bridge Facility Secured Obligations, the Adequate Protection Obligations, and any claim granted in this Interim Order in the Debtors' lead Chapter 11 Case, *In re Pennsylvania Real Estate Investment Trust, et al.* (Case No. 20-12737 (KBO), which master proof of claim shall be deemed a valid, timely, and properly filed proof of claim against each Debtor in its Chapter 11 Case and/or its Successor Case and (ii) shall not be required to file any agreements, documents, or other instruments evidencing such Bridge Facility Secured Obligations, Adequate Protection Obligations, and/or any claim granted in this Interim Order with such master proof of claim.  Any master proof of claim filed by the Bridge Agent shall be deemed to be in addition to, and not in lieu of, any other proof of claim that may be filed by any of the other applicable Bridge Facility Secured Parties at such party's election; provided, that, no such Bridge Facility Secured Party is required to file any such proof of claim if the Bridge Agent files a master proof of claim.

28.    **Final Hearing**.  The Final Hearing on the Motion shall be held on **November 24, 2020 at 1:00 p.m. (prevailing Eastern Time)**.  The Debtors shall provide notice of this Interim Order and notice of the Final Hearing to the Notice Parties.  Any objections or responses to the relief sought at the Final Hearing shall be filed with this Court and served on the following parties on or prior to **4:00 p.m. (prevailing Eastern Time) on November 17, 2020**: (a) the Debtors, c/o PREIT Associates, L.P., 2005 Market Street, Suite 1000, Philadelphia, Pennsylvania 19103 (Attn: Lisa Most, Esq.**;** (b) counsel to the Debtors, DLA Piper LLP (US), (i) 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801 (Attn: R. Craig Martin, Esq. (craig.martin@us.dlapiper.com)) and (ii) 444 West Lake Street, Suite 900, Chicago, Illinois 60606 (Attn: Richard A. Chesley, Esq. (richard.chesley@us.dlapiper.com), Daniel M. Simon, Esq. (daniel.simon@us.dlapiper.com), and Oksana Koltko Rosaluk, Esq. (oksana.koltko@us.dlapiper.com)); (c) the Bridge Agent, Wells Fargo Bank, National Association, 10 South Wacker Drive, 32nd Floor, Chicago, Illinois 60606 (Attn: Brandon Barry (brandon.barry@wellsfargo.com)); (d) counsel to the Bridge Agent, (i) Jones Day, 250 Vesey Street, New York, New York 10281 (Attn: Benjamin Rosenblum, Esq. (brosenblum@jonesday.com), Stacey L. Corr-Irvine, Esq. (scorrirvine@jonesday.com), and Danielle D. Donovan, Esq. (ddonovan@jonesday.com)) and (ii) Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Matthew P. Ward, Esq. (matthew.ward@wbd-us.com)); and (e) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, DE 19801 (Attn.: Joseph J. McMahon, Jr., Esq. (joseph.mcmahon@usdoj.gov)).

29.     **Controlling Effect of Interim Order**.  To the extent any provision of this Interim

Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim

Order shall control.

30.     **Retention of Jurisdiction**.  This Court retains exclusive jurisdiction with respect

to all matters arising from or related to the implementation, interpretation, and enforcement of this

Interim Order.

Dated: November 3rd, 2020          KAREN B. OWENS
Wilmington, Delaware              UNITED STATES BANKRUPTCY JUDGE