**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------- x
In re:                                                          : Chapter 11
                                                                :
PENNSYLVANIA REAL ESTATE INVESTMENT                             : Case No. 20-12737
TRUST, *et al.*,[1]                                             :
                                                                : (Jointly Administered)
    Debtors.                                 :
---------------------------------------------------------------- x

**FIRST AND FINAL FEE APPLICATION OF PJT PARTNERS LP
AS INVESTMENT BANKER TO THE DEBTORS FOR ALLOWANCE (AND
FINAL APPROVAL) OF COMPENSATION FOR SERVICES RENDERED
AND FOR THE REIMBURSEMENT OF ALL ACTUAL AND NECESSARY
OUT-OF-POCKET EXPENSES INCURRED FOR THE PERIOD OF
NOVEMBER 1, 2020 THROUGH DECEMBER 10, 2020**

## SUMMARY SHEET

| | |
|---|---|
| Name of Applicant: | PJT Partners LP |
| Authorized to Provide Professional Services to: | Debtors |
| Date of Retention Order: | Order entered on November 24, 2020 approving the retention of PJT Partners LP as investment banker, effective as November 1, 2020 [Docket No. 197] |
| Period for which Compensation and Expense Reimbursement is sought: | November 1, 2020 through December 10, 2020 |
| Amount of Compensation sought as actual, reasonable, and necessary: | $4,400,000.00 |
| Amount of Expense Reimbursement requested as actual, reasonable and necessary: | $1,157.50 |
| Amount of Cash Payment sought: | $1,157.50 |

This is an: ___ monthly fee application ___ interim fee application _x_ final application

---

[1] A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as Schedule 1. The corporate headquarters and the mailing address for the Debtors is 2005 Market Street, Suite 1000, Philadelphia, PA 19103.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------------ x | | |
| In re: | : | Chapter 11 |
| | : | |
| PENNSYLVANIA REAL ESTATE INVESTMENT TRUST, *et al.*,[1] | : | Case No. 20-12737 |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| ------------------------------------------------------------ x | | |

**FIRST AND FINAL FEE APPLICATION OF PJT PARTNERS LP
AS INVESTMENT BANKER TO THE DEBTORS FOR ALLOWANCE (AND
FINAL APPROVAL) OF COMPENSATION FOR SERVICES RENDERED
AND FOR THE REIMBURSEMENT OF ALL ACTUAL AND NECESSARY
OUT-OF-POCKET EXPENSES INCURRED FOR THE PERIOD OF
NOVEMBER 1, 2020 THROUGH DECEMBER 10, 2020**

PJT Partners LP ("**PJT**") respectfully represents as follows:

**I. Background**

1. On November 1, 2020 (the "**Petition Date**"), the Debtors each filed voluntary petitions with this Court for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). Subsequent to the Petition Date, the Debtors operated their businesses as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. On November 5, 2020, the Debtors filed the *Application of the Debtors for Entry of an Order (I) Authorizing the Debtors to Retain and Employ PJT Partners LP as Investment Banker, Effective as of the Petition Date and (II) Granting Related Relief* [Docket No. 106] (the "**Retention Application**"), pursuant to which the Debtors sought authority to retain and employ PJT as its investment banker pursuant to the terms of an engagement agreement dated October

---

[1] A list of the Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, is attached hereto as Schedule 1. The corporate headquarters and the mailing address for the Debtors is 2005 Market Street, Suite 1000, Philadelphia, PA 19103.

21, 2020 (the "**Engagement Letter**"). A copy of the Engagement Letter is attached to the Retention Application.

3.  On November 24, 2020, the Bankruptcy Court entered the *Order (I) Authorizing the Debtors to Retain and Employ PJT Partners LP as Investment Banker, Effective as of the Petition Date and (II) Granting Related Relief* [Docket No. 197] (the "**Retention Order**") approving the Retention Application and authorizing the retention and employment of PJT, effective as of the Petition Date, pursuant to the terms of the Engagement Letter.

4.  On November 30, 2020, the Court entered the *Findings of Fact, Conclusions of Law, and Order Approving the Adequacy of the Debtors' Disclosure Statement for, and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization of Pennsylvania Real Estate Investment Trust and Certain of Its Direct and Indirect Subsidiaries* (the "**Plan**") [Docket No. 213]. The Debtors' Plan became effective on December 10, 2020 (the "**Effective Date**"), at which time the Debtors emerged from chapter 11 protection.

5.  PJT submits this first and final fee application (the "**First and Final Fee Application**") requesting: (i) the allowance (and final approval) of PJT's Additional Capital Raising Fee (as defined herein); and (ii) the allowance (and final approval) of PJT's Restructuring Fee (as defined herein) earned during the period of November 1, 2020 through December 10, 2020 (the "**Retention Period**").

6.  Investment banking services and out-of-pocket expenses for which compensation and reimbursement are sought were rendered and expended by PJT on behalf of the Debtors pursuant to chapter 11 of the Bankruptcy Code.

## II. **The PJT Engagement**

7. Pursuant to the Engagement Letter, PJT was retained to provide some or all of the following services to the Debtors:[2]

(a) assist in the evaluation of the Debtors' business and prospects;

(b) assist in the review of the Debtors' long-term business plan and related financial projections;

(c) assist in the development of financial data and presentations to the board of directors (or similar governing body) of each entity comprising the Debtors, various creditors, and other third parties;

(d) analyze the Debtors' financial liquidity and evaluate alternative to improve such liquidity;

(e) analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

(f) provide strategic advice with regard to restructuring or refinancing the Debtors' Obligations;

(g) evaluate the Debtors' debt capacity and alternative capital structures;

(h) participate in negotiations among the Debtors and their creditors;

(i) value securities offered by the Debtors in connection with a Restructuring;

(j) advise the Debtors and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

(k) assist in arranging financing for the Debtors, as requested;

(l) assist the Debtors in preparing documentation within PJT's area of expertise that is required in connection with a possible Transaction;

(m) assist the Debtors in identifying potential buyers or parties in interest to a Transaction and assist in the due diligence process;

(n) assist and advise the Debtors concerning the terms, conditions and impact of any proposed Transaction;

---

[2] Capitalized terms used but not defined herein shall have the meanings provided to them in the Engagement Agreement.

3

(o) attend meetings of the Debtors' board of directors and assist the Debtors' board of directors in connection with the evaluation of any matters on which PJT has been engaged to advise under the Engagement Letter;

(p) provide factual or expert testimony, as appropriate, concerning any of the subjects encompassed by the other investment banking services; and

(q) provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a transaction similar to a potential Restructuring or Transaction, as requested and mutually agreed.

8. Pursuant to the Engagement Agreement, as approved by the Retention Order, the Debtors agreed to pay PJT as follows in consideration for the investment banking services rendered:[3]

(a) **Monthly Fee.** A monthly advisory fee in the amount of $150,000; provided that PJT shall not be entitled to be paid more than $450,000 in Monthly Fees.[4]  One hundred percent (100%) of all Monthly Fees paid to PJT shall be credited against any Restructuring, Base Capital Markets Fee, Additional Capital Raising Fee, or Transaction Fee (each as defined below); provided that, no Monthly Fee or portion thereof shall be credited more than once against any fee payable under the Engagement Letter;

(b) **Base Capital Markets Fee.**  For any Capital Raise that is not arranged by PJT, but as to which the Debtors expressly request in writing that PJT provide services with respect thereto, the Debtors will pay to PJT an additional fee equal to 0.20% of the total issuance size for such Capital Raise (including, for the avoidance of doubt, amounts committed but not yet drawn), earned and payable upon closing of such Capital Raise;

(c) **Additional Capital Raising Fee.**  For any Capital Raise arranged by PJT, at the Debtors' request, the Debtors will pay to PJT an additional fee earned and payable upon receipt of a binding commitment letter in respect thereof. The Additional Capital Raise Fee will be calculated as 1.0% of the total issuance size (including, for the avoidance of doubt, amounts committed but not yet drawn) for secured debt financing, 1.5% of the total issuance size (including, for the avoidance of doubt, amounts committed but not yet drawn) for unsecured debt financing, and 2.5% of the total issuance size (including, for the avoidance of doubt, amounts committed but not yet drawn) for equity financing (including debt convertible into equity, preferred equity and common equity);

(d) **Restructuring Fee.**  An additional fee equal to $3,650,000; provided that, if the Restructuring that is consummated is not the Debtors' pre-packaged chapter 11 plan filed with the Court contemporaneously with the Debtors' filing of these Chapter 11 Cases,

---

[3] This description of PJT's compensation structure is for summary and illustrative purposes only.  The terms of the Engagement Agreement and the Retention Order shall apply to any such compensation awarded to PJT.

[4] Given that PJT was initially retained by the Debtors in May 2020, all Monthly Fees to which PJT is entitled under the Engagement Letter were earned and paid to PJT prior to the Petition Date.

4

then the Restructuring Fee shall be renegotiated in good faith between PJT and the Debtors consistent with a market-based fee for transactions of this size;

(e) **Transaction Fee.**  Upon the consummation of a Transaction, the Debtors will pay to PJT an additional fee at the closing of such Transaction directly out of the gross proceeds of the Transaction calculated at 1% of the Transaction Value.  Notwithstanding the foregoing, in no event shall PJT be entitled to both a Transaction Fee and a Restructuring Fee in connection with the same transaction.

(f) **Reimbursement of Expenses.**  PJT shall be entitled to reimbursement of all reasonable and documented out-of-pocket expenses incurred during the engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of PJT's counsel (without the requirement that the retention of such counsel be approved by the court in any bankruptcy case), and other necessary expenditures; provided, however, that the reimbursable fees and expenses of PJT's counsel shall not exceed $10,000 without prior consent of the Debtors.

### III. Services Provided during PJT's Retention

**A. Services Provided Prior to the Retention Period**

9. Leading up to the filing of the Debtors' chapter 11 cases, PJT professionals advised the Debtors on strategic alternatives, including a potential standalone restructuring. In consultation with the Debtors' Board of Directors and other advisors, PJT engaged in intensive negotiations with the Debtors' stakeholders to reach agreement on the terms of a Plan of Reorganization. It is important to recognize that, given that this was a pre-arranged chapter 11 filing, a substantial portion of PJT's work was performed during the period after PJT was retained and prior to the bankruptcy filing. So as not to unduly burden the Court, the following is a summary of the services provided by PJT on behalf of the Debtors prior to the chapter 11 filing:

(a) analyzed the Debtors' financial liquidity profile;

(b) assisted in the development of the Debtors' business plan and financial projections;

(c) evaluated the Debtors' debt capacity and potential pro forma capital structures;

(d) advised the Debtors on restructuring matters and strategic options;

(e) coordinated due diligence and discussions with creditors and creditors' advisors;

(f) evaluated and responded to restructuring proposals received from various stakeholders;

(g) contacted potential third party financing sources;

(h) raised two bridge financings from the existing creditor group;

(i) assisted in the development of weekly budget forecasts, variance reports, and related analyses;

(j) assisted in the negotiation of the Restructuring Support Agreement with creditors;

(k) assisted in the preparation of the solicitation materials for the pre-packaged chapter 11;

(l) participated in negotiations, and prepared related analyses, regarding the post-transaction credit agreement;

(m) provided updates to the Debtors' executive management team;

(n) participated in meetings with and prepared presentations for the Debtors' board of trustees to provide updates and offer strategic advice; and

(o) provided various support to Debtors' counsel, as requested.

B. **Services Provided during the Retention Period**

10. PJT has rendered professional services to the Debtors as requested and in furtherance of the interests of the Debtors' and the Debtors' estates. The variety and complexity of the issues in these chapter 11 cases and the need to act or respond to such issues on an expedited basis have required the expenditure of substantial time by PJT personnel. PJT respectfully submits that the professional services that it rendered on behalf of the Debtors were necessary and appropriate, and have directly contributed to the effective administration of these chapter 11 cases. The following summary of services rendered by PJT during the Retention Period is not intended to be an exhaustive description of the work performed; rather, it is merely an attempt to highlight certain of those areas in which PJT rendered services to the Debtors:

(a) assisted in the development of weekly budget forecasts, variance reports, and related analyses;

(b) coordinated diligence and discussions with creditors and creditors' advisors;

(c) participated in negotiations regarding post-emergence credit agreement terms;

(d) assisted in the development of the Debtors' business plan for the post-emergence credit facility;

(e) prepared for potential depositions and potential discovery;

(f) prepared internal materials in advance of mediation and participated in various discussions with the Debtors and Debtors' advisors in advance of mediation;

(g) participated in mediation along with the Debtors and Debtors' advisors;

(h) prepared a PJT declaration in support of the Plan;

(i) participated in meetings with the Debtors and Debtors' advisors in preparation for court hearings;

(j) attended court hearings;

(k) developed the final funds flow in collaboration with all stakeholders;

(l) provided updates to the Debtors' executive management team;

(m) participated in meetings with and prepared presentations for the Debtors' board of trustees to provide updates and offer strategic advice; and

(n) provided various support to Debtors' counsel, as requested.

## IV. The PJT Team

11. The investment banking services set forth above were performed primarily by: Steve Zelin, Partner; Jon Walters, Vice President; Dylan Friesner, Associate; Lukas Schwarzmann, Analyst; and other PJT professionals as needed. Details of the background and experience of these professionals are provided in **Appendix A**.

## V. PJT's Request for Allowance (and Final Approval) of Compensation and Reimbursement of Out-of-Pocket Expenses Incurred

**A. PJT's Request for Allowance (and Final Approval) of the Additional Capital Raising Fee**

12. During the Retention Period, PJT earned an Additional Capital Raising Fee pursuant to the terms of the Engagement Letter in the amount of 1% of $75 million of incremental secured debt financing raised by PJT (or $750,000.00). The $130 million Revolving Exit Facility

7

included $75 million of financing incremental to the $55 million in financing raised in two pre-petition bridge financings.[5]

13. In accordance with the Retention Order, PJT received payment of the Additional Capital Raising Fee upon the Debtors' emergence from chapter 11 on the Effective Date.[6] PJT respectfully requests the allowance (and final approval) by the Court of the Additional Capital Raising Fee.

**B. PJT's Request for Allowance (and Final Approval) of PJT's Restructuring Fee**

13. As set forth in the Engagement Letter, and as approved by the Retention Order, PJT is entitled to a Restructuring Fee in the amount of $3,650,000.00 payable upon the consummation of the Debtors' Plan. The Plan was consummated and became effective on the Effective Date, at which time the Debtors emerged from chapter 11 protection. In accordance with the Retention Order, on the Effective Date, PJT received payment of the Restructuring Fee.[7] PJT respectfully requests the allowance (and final approval) by the Court of the Restructuring Fee.

**C. PJT's Request for Reimbursement of Out-of-Pocket Expenses**

14. For the Retention Period, PJT seeks the reimbursement of out-of-pocket expenses incurred in the amount of $1,157.50.

---

[5] In respect of such pre-petition financings, PJT earned $550,000.00, or 1% of the $55 million raised in pre-petition bridge financings. Give that $450,000.00 of Monthly Fees is fully creditable against such fees, PJT was previously paid the net sum of $100,000.00 in respect of such pre-petition Additional Capital Raising Fee.

[6] The Retention Order provides, in pertinent part: "For the avoidance of doubt, to the extent not previously paid prior to the Petition Date, PJT shall be paid (a) each Base Capital Markets Fee or Additional Capital Raising Fee for any financing, as to which PJT may be entitled under the Engagement Letter as soon as such financing is approved by this Court (or, if such approval occurred prior to entry of this Order, immediately following entry of this Order) and with respect to amounts available to the Debtors, (b) the Restructuring Fee upon consummation of a Restructuring, and (c) each Transaction Fee upon consummation of the applicable Transaction, in each case subject to subsequent Court approval of any such Base Capital Markets Fee, Additional Capital Raising Fee, Restructuring Fee, or Transaction Fee pursuant to PJT's interim and final fee application."

[7] See footnote 4 above.

15. Invoices detailing the compensation earned and out-of-pocket expenses incurred during the Retention Period are attached hereto as **Appendix B**. A summary of all fees earned and out-of-pocket expenses incurred during the Retention Period is outlined below:

|  | Fees | Out-of-Pocket Expenses | Payments Received | Amounts Due |
|---|---|---|---|---|
| Additional Capital Raising Fee | $750,000.00 | $- | ($750,000.00) | $- |
| Restructuring Fee | 3,650,000.00 | - | (3,650,000.00) | - |
| Out-of-Pocket Expenses | - | 1,157.50 | - | 1,157.50 |
| **Total** | **$4,400,000.00** | **$1,157.50** | **($4,400,000.00)** | **$1,157.50** |

16. PJT respectfully submits that the compensation requested for the services rendered by PJT to the Debtors during the Retention Period is fully justified and reasonable based upon (a) the complexity of the issues presented, (b) the skill necessary to perform the financial advisory services properly, (c) the preclusion of other employment, (d) the customary fees charged to clients in non-bankruptcy situations for similar services rendered, (e) time constraints required by the exigencies of the case, and (f) the experience, reputation and ability of the professionals rendering services.

17. PJT respectfully submits that the services it has rendered to the Debtors have been necessary and in the best interests of the Debtors and the Debtors' estates. PJT respectfully submits that under the criteria normally examined in chapter 11 reorganization cases, the compensation requested by PJT is reasonable in light of the work performed by PJT in connection with these cases.

18. The amount of the compensation sought in this First and Final Fee Application and PJT's billing practices are consistent with market practices in a bankruptcy context. PJT has never billed its clients based on the number of hours expended by its professionals. Accordingly, PJT does not have hourly rates for its professionals, and PJT's professionals generally do not maintain detailed time records of the work performed for their clients. However, PJT has maintained contemporaneous time records in the Debtors' cases in one-half hour increments.

Time records of the 433.5 hours expended by PJT professionals in providing investment banking services to the Debtors during the Retention Period are provided in **Appendix C**.

19. Total hours expended by PJT professionals during the Retention Period is summarized below:

**Hours Expended By Professional During The Retention Period**

| Professional | Title | November 2020 | December 2020 | Total |
|---|---|---|---|---|
| Steven Zelin | Partner | 31.0 | 3.0 | 34.0 |
| George South | Managing Director | 6.0 | - | 6.0 |
| Gregory Patcella | Director | 3.5 | - | 3.5 |
| Jon Walters | Vice President | 77.0 | 13.5 | 90.5 |
| Dylan Friesner | Associate | 87.0 | 51.5 | 138.5 |
| Michael Norton | Associate | 3.5 | | 3.5 |
| Lukas Schwarzmann | Analyst | 105.5 | 52.0 | 157.5 |
| **Total** | | **313.5** | **120.0** | **433.5** |

20. Out-of-pocket expenses incurred by PJT are charged to a client if out-of-pocket expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client. PJT does not factor general overhead expenses into any disbursements charged to its clients in connection with chapter 11 cases. PJT has followed its general internal policies with respect to out-of-pocket expenses billed to the Debtors as set forth below, with any exceptions specifically explained.

    (a) All cross-country airfare charges are based upon coach class rates.

    (b) With respect to local travel, PJT's general policy enables employees to travel by taxi or, in certain circumstances private car service, to and from meetings while rendering services to a client on a client related matter, for which the client is charged. Further, and primarily for safety reasons, employees are permitted to charge to a client the cost of transportation home if an employee is required to work past 9:00 p.m. on weekdays on client specific matters.

    (c) PJT's general policy permits its professionals to charge dinner meals to a client after working 3 hours beyond their regularly scheduled workday if an employee is required to provide services to the client during such dinnertime, and to charge in-office meals on the weekend if an employee is required to provide services to a client on the weekend and spends at least 4 hours.

    (d) The External Research category of expenses includes charges from outside computer/electronic service companies that supply, for a fee, research and/or financial documents to PJT. The services provided by these companies primarily consist of the

      retrieval of financial documents from regulatory agencies and/or the retrieval of research that would not otherwise be available to PJT. The Internal Research category of expenses are the charges for time spent by PJT research staff in operating the computer/electronic terminals related to these computer/electronic service companies.

(e) The Document Production category of expenses includes charges from outside service companies that provide, for a fee, high volume photocopying services on an expedited basis to PJT, and charges for internal photocopying services provided by PJT.

(f) The Publishing Services category of expenses includes charges for the production of text-based publications such as research reports and presentations, and printing and binding services.

21. In accordance with the factors enumerated in section 330 of the Bankruptcy Code, PJT respectfully submits that the amount requested in this First and Final Fee Application is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title. Moreover, PJT has reviewed the requirements of Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and the undersigned certifies that he has reviewed this First and Final Fee Application and believes that it complies with Local Rule 2016-2 as modified by the Retention Order.

22. No prior application for the relief requested herein has been made.

23. All services for which PJT requests compensation were performed for and on behalf of the Debtors and not on behalf of any other person or stakeholder.

24. No agreement or understanding exists between PJT and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with these proceedings.

## VI. Requested Relief

**WHEREFORE**, PJT respectfully requests that the Court:

(a) allow and grant approval of (i) PJT's Additional Capital Raising Fee in the amount of $750,000.00; (ii) PJT's Restructuring Fee in the amount of $3,650,000.00, and (iii) the reimbursement of PJT's out-of-pocket expenses incurred in the amount of $1,157.50 for the Retention Period;

(b) authorize and direct the Debtors to pay PJT's allowed and unpaid fees and out-of-pocket expenses incurred during the Retention Period as follows:

| | |
|---|---:|
| Additional Capital Raising Fee | $750,000.00 |
| Restructuring Fee | 3,650,000.00 |
| Out-of-Pocket Expenses | 1,157.50 |
| Less: Payment Received | (4,400,000.00) |
| **Total Amount Due** | **$1,157.50** |

and

(c) grant such other and further relief as this Court deems just and proper.

Dated: January 7, 2021

PJT Partners LP
Investment Banker to the Debtors

By:   /s/ Steve Zelin
Steve Zelin
Partner
280 Park Avenue
New York, New York 10017
(212) 364-1001